IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MATTHEW DIAMANTOS, ) | |
| ) | |
| Plaintiff, ) | Case No. 08 C 2036 |
| ) | |
| v. ) | Judge Darrah |
| ) | |
| UNION PACIFIC RAILROAD COMPANY, ) | Magistrate Judge Schenkier |
| ) | |
| Defendant. ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION TO STRIKE
DEFENDANT'S AFFIRMATIVE DEFENSES NOS. 1, 4 THROUGH 10, AND 13**

Defendant UNION PACIFIC RAILROAD COMPANY ("UPRR") opposes Plaintiff's Motion to Strike Certain Affirmative Defenses ("Plaintiff's Motion to Strike"). Plaintiff's Motion should be denied because: 1) it is premature, given that the parties have yet to commence discovery; 2) UPRR has stated its affirmative defenses in compliance with the Federal Rules of Civil Procedure; 3) UPRR's affirmative defenses are legally sufficient; and 4) Plaintiff cannot show he will be prejudiced by the inclusion of UPRR's affirmative defenses at this stage of the litigation.

**I.     INTRODUCTION**

In this action, Plaintiff purports to assert claims under the Family and Medical Leave Act, 29 U.S.C. §2601 *et seq.*; the Americans With Disabilities Act, 42 U.S.C. §12101 *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*; and the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. §1988. In answering the 98 paragraphs of allegations in Plaintiff's seven-count Complaint, UPRR has asserted a total of 13 affirmative defenses. No discovery has yet been conducted in the case. Despite the early stage of this litigation, Plaintiff seeks to strike

nine of UPRR's 13 affirmative defenses, asserting that certain of them are simply restatements of UPRR's denials while others fail to plead specific elements of the particular defense.

While Plaintiff apparently presumes to know how the law ultimately will apply to the facts in this case, this presumption is outweighed by the potential unfair prejudice to UPRR in striking defenses so early in this litigation. In contrast to the harm UPRR will suffer if the Court strikes its defenses at the initial pleading stage, Plaintiff will suffer no prejudice if his motion is overruled. If, through discovery, it is determined the defenses are inapplicable, Plaintiff may of course renew his motion.

## II.    LEGAL STANDARD

Motions to strike affirmative defenses are generally disfavored for two reasons: (1) striking a portion of a pleading is a drastic remedy, and (2) because they often serve only to cause delay. *Heller Financial, Inc. v. Midwhey Powder Co.*, 833 F.2d 1286, 1294 (7th Cir. 1989); *see also Kiswani v. Phoenix Security Agency, Inc.*, 2006 U.S. Dist. LEXIS 6997 at *11 (N.D. Ill. Feb. 22, 2006) (Darrah, J.); *Imperial Const. Management Corp. v. Laborers' It'l Union, Local 96*, 818 F. Supp. 1179, 1186 (N.D. Ill. 1993). Such motions are rarely granted, generally only when the affirmative defenses are "patently defective and could not succeed under any circumstances". *Mobey v. Kelly Kean Nissan, Inc.*, 864 F. Supp. 726, 732 (N.D. Ill. 1993).

Affirmative defenses are subject to the same pleading requirements as complaints and should be stricken only if the movant proves that (i) the allegations being challenged are so unrelated to the Plaintiff's claims as to be unworthy of any consideration as a defense, *and* (ii) their presence in the pleading and throughout the proceeding will be significantly prejudicial to the moving party. *Torres v. American Airlines, Inc.*, 1986 U.S. Dist. LEXIS 27780 at *5 (N.D. Ill. Mar. 24, 1986); *see also Heller*, 883 F.2d at 1294. Mere vagueness or lack of detail does not

constitute sufficient grounds for a motion to dismiss, nor does it provide grounds to strike an affirmative defense. *See Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1984); *see also Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 2003 U.S. Dist. LEXIS 11487 at *3 (N. D. Ill. July 3, 2003) (Darrah, J.) (in reviewing a motion to dismiss, the court noted that a plaintiff is not required to plead the facts or the elements of a claim, with the exception of those specific matters identified in FRCP 9).

### III.     ARGUMENT

#### A.     Plaintiff's Motion to Strike is Premature

FRCP 8(c) *requires* a defendant to plead its affirmative defenses in the first responsive pleading to avoid waiving them. *Roe v. Sears, Roebuck & Co.*, 132 F.2d 829, 832 (7th Cir. 1943); *see also Wausau Insurance Co. v. Woods Equipment Co.*, 2002 U.S. Dist. LEXIS 4171 at *4 (N.D. Ill. Mar. 14, 2002 (Darrah, J.); *Torres*, 1986 U.S. Dist. LEXIS 27780 at *5 ("failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case"). Thus, UPRR is required to plead, *at the outset of the litigation*, all possible affirmative defenses that might become available through the development of facts during discovery or risk being barred from pursuing such defenses through dispositive motion or trial. *Shields Enterprises, Inc. v. First Chicago Corp.,* 1987 U.S. Dist. LEXIS 9378 at *14-15 (N.D. Ill. Oct. 7, 1987) (notice pleading requires that a party give notice of the substance of the claims; discovery will more effectively fill in the gaps).

It is therefore inconsistent with the federal courts' standard of notice pleading for Plaintiff to demand that UPRR plead in detail the factual support for each of its affirmative defenses or have them stricken. The Seventh Circuit has provided some guidance in this area: "[A] complaint is not required to allege all, or any, of the facts logically entailed by the claim."

*Shields*, 1987 U.S. Dist. LEXIS 9378 at *14-15 (citing *American Nurses' Ass'n v. State of Illinois*, 783 F.2d 716, 727 (7th Cir. 1986)); *see also Catalina*, 2003 U.S. Dist. LEXIS 11487 at *3 (noting that a plaintiff is generally not required to plead the facts or elements of a claim). Because affirmative defenses are subject to the same notice pleading rules as complaints, UPRR's failure to provide detailed factual allegations upon which its defenses are based is not fatal. This liberal rule holds up under the theory that factual gaps can be filled in during discovery. *Shields*, 1987 U.S. Dist. LEXIS 9378 at *15.

In seeking to hold UPRR to a heightened fact pleading standard, Plaintiff argues in several sections of his Motion to Strike that UPRR has insufficiently pled the elements of its defenses. But this is not the law. UPRR is not required to plead all facts which support its affirmative defenses in its answer. *See Shields,* 1987 U.S. Dist. LEXIS 9378 at *14-15. UPRR need only give *notice* to Plaintiff about the specific defenses upon which it intends to rely; it is not required to educate Plaintiff at the pleading stage as to the elements of each affirmative defense or the evidence that will support such defenses. If Plaintiff wishes to ascertain the factual bases for UPRR's affirmative defenses, he can conduct discovery.

### B. UPRR's Affirmative Defenses Are Legally Valid

A "legally valid" defense is one that, if proven, would be a legal defense to one or more of Plaintiff's claims, either as to liability or to damages issues. An affirmative defense should not be struck if it is sufficient as a matter of law or if it presents a question of law or fact. *Heller*, 883 F.2d at 1294.

The affirmative defenses asserted by UPRR are plainly sufficient to meet the "legally valid" standard of presenting a question of law of fact, and UPRR should be afforded the opportunity to prove facts in support of its affirmative defenses:

### Affirmative Defense 1
### All employment decisions made by Defendant concerning Plaintiff were based upon legitimate, non-discriminatory reasons.

UPRR's first affirmative defense is the defense afforded employers in a disparate treatment case under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*,[1] -- *i.e.*, after a discrimination plaintiff has made out a *prima facie* case of discrimination, the employer may rebut that showing by articulating a legitimate, non-discriminatory reason for taking the employment action it took. Plaintiff's argument against inclusion of the *McDonnell Douglas* defense, although not fully articulated, appears to be that the defense restates the denials that UPRR has already made in the Answer itself. However, the inclusion of this defense, which puts Plaintiff on notice of UPRR's intention to invoke *McDonnell Douglas*' burden-shifting approach should he establish the *prima facie* elements of his disparate treatment claims, results in no prejudice to Plaintiff and provides no basis for a Motion to Strike.

### Affirmative Defense 4
### Plaintiff's claims are barred by the doctrines of laches, waiver or estoppel and/or by Plaintiff's own actions, inactions or omissions.

Plaintiff contends that the defenses of waiver, estoppel and laches are equitable defenses that must be pled with the specific elements required to establish the defense. Plaintiff's Motion to Strike, p. 2. However, laches, waiver and estoppel are not among the limited matters enumerated in FRCP 9 as having specific pleading requirements. Moreover, in keeping with the federal courts' notice pleading standard, this court has on at least two occasions permitted the assertion of laches, waiver and estoppel defenses without requiring detailed factual allegations to support them. *See Wausau Ins. Co. v. Woods Equipment Co.*, 2002 U.S. Dist. LEXIS 4171 at *6

---

[1] 411 U.S. 792, 802 (1973) (after a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the employer to "articulate some legitimate non-discriminatory reason for the employee's rejection"); *see also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

(N.D. Ill. Mar. 14, 2002) (Darrah, J.) (also permitting affirmative defense of failure to mitigate damages, finding that "[t]his affirmative defense sufficiently puts Wausau on notice that one of Wood's affirmative defenses is Wausau's failure to mitigate damages"); *International Ins. Co. v. Caja Nacional de Ahorro y Seguro*, 2001 U.S. Dist. LEXIS 34655 at *10 (N.D. Ill. Mar. 23, 2001) (Darrah, J.).  Plaintiff does not cite either *Wausau* or *International Insurance* and therefore provides no argument as to why the court should deviate from its prior rulings permitting notice pleading of these affirmative defenses.

### Affirmative Defense 5
**Defendant took reasonable care to prevent and correct promptly any harassing behavior and Plaintiff unreasonably failed to take advantage of preventative or corrective opportunities provided by Defendant or to avoid harm otherwise.**

Plaintiff challenges UPRR's Fifth Affirmative Defense on the grounds that it is an impermissible conclusory statement and that the matters challenged in the defense have already been put at issue through UPRR's denials in its Answer such that UPRR "not only need not but cannot raise these matters again via an affirmative defense".  Plaintiff's Motion to Strike, p. 3 (citations omitted).  Plaintiff's argument to the contrary notwithstanding, UPRR's Fifth Affirmative Defense is a proper affirmative defense – the United States Supreme Court has said so.  Specifically, UPRR's Fifth Affirmative Defense is an iteration of the affirmative defense recognized by the Supreme Court in *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998), and *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), to relieve an employer of liability and/or damages in a hostile environment harassment case where no tangible employment action occurs.  As stated by the Court in *Ellerth* and *Faragher*, the defense comprises two elements: "(1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff unreasonably failed to take advantage of any

preventive or corrective opportunities provided by the employer or to avoid harm otherwise". *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 807.  UPRR is compelled to plead the *Ellerth/Faragher* affirmative defense or risk being barred from pursuing it on summary judgment or at trial.

> **Affirmative Defense 6**
> **Even if the trier of fact were to determine that a discriminatory motive or reason played any part in the employment decisions or actions regarding the Plaintiff, which Defendant denies, such decisions or actions would have been taken in any event for legitimate, non-discriminatory reasons.**

UPRR's Sixth Affirmative Defense is a statement of the mixed-motive defense articulated by the Supreme Court in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).  In that case, the Court held that even if the plaintiff can prove discriminatory intent, the employer is not liable if it can show that the same employment action would have occurred even absent discriminatory intent.  Although the impact of *Price Waterhouse* was curtailed by the Civil Rights Act of 1991's amendments to Title VII (those amendments provide that an unlawful employment practice occurs whenever a protected characteristic is a motivating factor, even though the practice may have been based on legitimate non-discriminatory factors, *see* 42 U.S.C. §2000e-2(m)), if the employer can show that the same outcome would have been had absent the alleged discriminatory motivation, the plaintiff's avenues for recovery are limited to declaratory relief and attorney's fees.  42 U.S.C. §2000e-5(g)(2)(B).  Accordingly, the *Price Waterhouse* mixed motive defense is relevant in this case insofar as Plaintiff's Title VII and ADA claims include demands for back pay, front pay, and compensatory and punitive damages.  *See* Complaint, Counts III, IV, V, VI and VII.

More importantly, the *Price Waterhouse* mixed motive defense is relevant to Counts VI and VII of the Complaint which allege claims of retaliation, and these claims are not affected by

- 8 -

the Civil Rights Act of 1991's amendments to Title VII discussed above. Indeed, the Seventh Circuit has held that discrimination based on retaliation is conspicuously absent from the list of protected categories in 2000e-2(m). Thus, an employer's showing that it would have taken the same action even absent an unlawful motive is a complete bar to a plaintiff's recovery on a claim of retaliation. *McNutt v. Board of Trustees of the Univ. of Ill.*, 141 F.3d 706 (7th Cir. 1998); *Speedy v. Rexnord Corp.*, 243 F.3d 397 (7th Cir. 2001). As such, it is properly pled as an affirmative defense.

> **Affirmative Defense 7**
> **Defendant's actions concerning Plaintiff's employment were taken in the good faith belief, based upon reasonable grounds, that they did not violate any provisions of Title VII or ADA.**
>
> **Affirmative Defense 8**
> **Plaintiff has failed to state a claim against Defendant that would warrant an award of punitive damages.**

Plaintiff argues that UPRR's good faith is not relevant in this case because good faith is only relevant to a Section 1983 action, and this is not a Section 1983 case. Plaintiff's Motion to Strike, p. 4. Good faith is indeed relevant to Plaintiff's demand for punitive damages in this case, because under the Civil Rights Act of 1991, punitive damages are available only when an employer acts with "malice or reckless indifference to the federally protected rights of an aggrieved individual". 42 U.S.C. §1981a(b)(1). In considering the circumstances under which a Title VII plaintiff can recover punitive damages from his employer, the Supreme Court in *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 545 (1999), held that an employer "may not be vicariously liable for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's 'good faith efforts to comply with Title VII'". (Quotation omitted.) Thus, in *Renalds v. S.R.G. Restaurant Group, Chicago, LLC*, 119 F. Supp.

2d 800, 806 (N.D. Ill. 2000) (Alesia, J.), the court applied *Kolstad* and recognized the availability of employer good faith as an affirmative defense to punitive damages liability.

> **Affirmative Defense 9**
> **Plaintiff's compensatory and punitive damages claims are subject to the limitations imposed by 42 U.S.C. § 1981a(b)(3).**

In challenging UPRR's Ninth Affirmative Defense, Plaintiff contends that he "has not brought or advanced any claims of discrimination pursuant to 42 U.S.C. §1981", and "since the limitations imposed only apply to claims brought under 42 U.S.C. §1981," the Ninth Affirmative Defense is inapplicable. Plaintiff's Motion to Strike, p. 4. 42 U.S.C. §1981a(b)(3) is part of the Civil Rights Act of 1991, and subsection (b)(3) specifies the statutory "caps" on compensatory and punitive damages available to an employment discrimination plaintiff, the applicable cap being dependent upon the employer's size. Given that Plaintiff seeks both compensatory and punitive damages in this case, the statutory caps set forth in subsection (b)(3) will come into play should a jury award damages exceeding the applicable statutory cap.

> **Affirmative Defense 10**
> **Punitive damages may not be awarded because any actions arguably justifying punitive damages were not authorized or ratified by Defendant and were committed, if at all, outside the scope of the agency or employment of the actor; further any such conduct warranting punitive damages, which is denied, was contrary to Defendant's personnel policies, compliance efforts, and effective solutions to employee EEO concerns.**

In his Motion, Plaintiff alleges that UPRR has taken the position in its Tenth Affirmative Defense that "punitive damages are not recoverable". *See* Plaintiff's Motion to Strike, p. 5. But that is not all that UPRR's Tenth Affirmative Defense says. Rather, in the Tenth Affirmative Defense, UPRR maintains that punitive damages are not available *in this case* because any alleged discriminatory actions upon which Plaintiff's demand for punitive damages is based were not authorized or ratified by UPRR and were contrary to UPRR's policies and practices. As with

the Seventh and Eighth Affirmative Defenses, the Tenth Affirmative Defense is a proper assertion of the Supreme Court's holding in *Kolstad* and for that reason should not be stricken.

> **Affirmative Defense 13**
> **Some or all of Plaintiff's claims may be preempted by the Railway Labor Act and fall within the exclusive jurisdiction of the National Railway Adjustment Board.**

Plaintiff seeks to strike the Thirteenth Affirmative Defense because it "fails to meet federal pleading requirements and fails to put Plaintiff on notice and [sic] to which claims may be preempted and to what extent if any" and because the "Railway Labor Act is inapplicable to the present matter." Plaintiff's Motion to Strike p. 5. Plaintiff's authority for his claim is three district court decisions in Texas, California and Missouri from 1969, 1974, and 1980. Yet, Plaintiff overlooks the Seventh Circuit's decision on May 5th of this month in *Miller v. American Airlines, Inc.*, __ F.3d __ (7th Cir. 2008)(Case No. 07-1518) which upholds the applicability of the Railway Labor Act in the present matter.

In *Miller*, the plaintiffs sued for age discrimination claiming that defendant had discriminated against them in the terms and conditions of their employment by failing to provide them with comparable pay as required by the collective bargaining agreement. At arbitration, an arbitrator interpreted the relevant provision of the collective bargaining agreement and found that the agreement did not guarantee positions of comparable pay to the plaintiffs after a certain age. The district court deferred to the arbitrator's interpretation of the collective bargaining agreement and found that the resolution of the plaintiffs' ADEA claim was dependent upon the interpretation of the collective bargaining agreement and therefore governed by the arbitration provisions of the Railway Labor Act. The Seventh Circuit upheld the district court's grant of summary judgment in the defendant's favor on this basis.

Here, Plaintiff was a member of a bargaining unit represented by a union and the terms and conditions of his employment were governed by a collective bargaining agreement as well. Plaintiff's Complaint makes general allegations of discrimination in the terms and conditions of employment (*See e.g.* Complaint ¶¶9, 74). In addition, Plaintiff alleges in paragraphs 9 and 77 that his hours were cut and that he was denied hours/pay granted to others. Plaintiff's complaint also makes vague allegations of being denied equivalent treatment (Complaint ¶56) and negative job actions (Complaint ¶61). UPRR will clarify through the discovery process the exact nature of these claims but, given that the terms and conditions of Plaintiff's employment are closely governed by a collective bargaining agreement, it is likely that they are dependent upon the interpretation of the collective bargaining agreement.

Thus, UPRR has preserved its right through the Thirteenth Affirmative Defense, to assert preemption under the Railway Labor Act (RLA). Contrary to Plaintiff's unsupported assertion, the RLA is applicable to the present case, at least according to the Seventh Circuit's pronouncement earlier this month. UPRR's inability to supply any more facts to support this affirmative defense, is due to the vague and conclusory allegations of Plaintiff's Complaint which lack a factual foundation, not any pleading deficiency of UPRR.

In sum, each of the asserted affirmative defenses is legally valid for purposes of withstanding the Motion to Strike.

### C. **Plaintiff Is Not Prejudiced by the Inclusion of UPRR's Affirmative Defenses**

Plaintiff cannot show that he will be prejudiced if the defenses remain in UPRR's Answer. *Laborers' Pension Fund v. Litgen Concrete Cutting or Coring Co.,* 128 F.R.D. 96, 98 (N.D. Ill. 1989) (court found two defenses were so unrelated to the claims as to be unworthy of consideration, but did not strike them because plaintiff had not demonstrated how raising these

defenses prejudiced them). The fact is that Plaintiff will suffer no prejudice if his motion is denied at this early stage in the litigation. But the same is not true for UPRR – rather, it stands as the only party to be harmed if these defenses are stricken before discovery has commenced. Thus, Plaintiff cannot establish the requisite showing of prejudice to him.

It is clear to see that UPRR has narrowly tailored its defenses to address Plaintiff's particular claims; UPRR's 13 affirmative defenses to Plaintiff's seven substantive counts are neither tenuous nor so numerous as to suggest frivolous pleadings or require Plaintiff to engage in unfair and extraordinary efforts to gather evidence to refute the defenses. Indeed, the defenses are customary defenses as to motive or damages as exist in most every employment case. UPRR is entitled to pursue these various defenses and to frame potential discovery to the extent they require evidentiary support. UPRR is not required to set forth its entire case in the initial pleading, nor is it required to limit its affirmative defenses to facts already known, without considering what it in good faith believes will be revealed in the course of discovery.

### IV.   CONCLUSION

Plaintiff has not met his burden under FRCP 12(f) of showing that UPRR's affirmative defenses are insufficient as a matter of law. Accordingly, UPRR respectfully requests that this Court deny Plaintiff's Motion to Strike. Alternatively, should this Court be inclined to grant any part of Plaintiff's Motion to Strike, UPRR respectfully requests leave to amend its Answer to address any pleading deficiencies.

> Respectfully submitted,
>
> UNION PACIFIC RAILROAD COMPANY
>
> By: s/        Carol A. Poplawski
>         One of Its Attorneys

- 13 -

Carol A. Poplawski (#6192132)
OGLETREE, DEAKINS, NASH,
　SMOAK & STEWART, P.C.
Two First National Plaza
Twenty-Fifth Floor
20 South Clark Street
Chicago, Illinois 60603-1891
(312) 558-1220

Dated: May 20, 2008

**6321433_1.DOC**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on this 20th day of May, 2008, she electronically filed the foregoing **DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES NOS. 1, 4 THROUGH 10, AND 13** with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

>   Charles Siedlecki
>   CHARLES SIEDLECKI AND ASSOCIATES, P.C.
>   10540 South Western Avenue, Suite 405
>   Chicago, IL 60643

>   s/Carol A. Poplawski

6321433.1