**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MATTHEW DIAMANTOS, | ) | |
| | ) | **Case No. 08 C 2036** |
| Plaintiff, | ) | |
| | ) | Honorable Judge John W. Darrah |
| vs. | ) | Presiding Judge |
| | ) | |
| UNION PACIFIC RAILROAD COMPANY, | ) | Magistrate Judge Schenkier |
| | ) | |
| Defendant. | ) | **JURY DEMANDED** |

<u>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO STRIKE
DEFENDANT'S AFFIRMATIVE DEFENSES No(s) 1, 4 Through 10, and 13**</u>

Plaintiff, by and through his attorney, Charles Siedlecki, replies in support of Plaintiff's

Motion to Strike Defendant's Affirmative Defenses, 1, 4 - 10 and 13.  In support of which

Plaintiff states as follows:

*HISTORY*

1.     Plaintiff has pending a seven-count Complaint against the Defendant Union Pacific

Railroad, alleging violations of The Family Medical Leave Act: The Americans with

Disabilities Act; Title VII of the Civil Rights Act of 1964 as amended.

2.     On May 5, 2008, Defendant filed its Answer and thirteen (13) Affirmative Defenses.

Plaintiff timely filed a motion to strike certain affirmative defenses that were redundant,

inapplicable or insufficient under the  Federal Rules of Civil Procedure.

3.     On May 20, 2008, Defendant filed a response to Plaintiff's motion.

4.     Plaintiff herein replies to the Defendant's response brief.

-1-

***ARGUMENT***

Defendant argues in its response that Plaintiff's Motion to Strike is premature as they have not had an opportunity to engage in discovery. Such an argument is without merit. Rule 8(c) requires Defendant to give the Plaintiff notice of an affirmative defense and a chance to rebut it. Williams v. Lampe, 399 F.3d 867, 870-71 (7th Cir 2005).

Rule 12 (f) governs motions to strike and pursuant to that Rule, the Court can strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." When a motion to strike will "remove unnecessary clutter from the case, [motions to strike] serve to expedite, not delay. Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989).

**I.    Defendant's Affirmative Defenses**

<u>Affirmative. Defense 1:</u>    All employment decisions made by the defendant concerning Plaintiff were based upon legitimate, non-discriminatory reasons.

As set forth in Plaintiff's initiating motion, conclusory restatements of denial already putting the matter at issue are improper affirmative defenses which must be stricken. (See, Plt's Compl. ¶ 29): Winding v. Pier Management Service, 1997 U.S. Dist. LEXIS 1012, No. 96 C 7461, 1997 WL 51475, at *2 (N.D. Ill. Feb. 4, 1997) (holding that affirmative defense that defendant terminated plaintiff's employment for "legitimate, non-discriminatory" reason is stricken as both unnecessary and inappropriate because this assertion was already put in issue by the defendant's denial in its answer)[1]. Defendant ***offers no law*** indicating otherwise.

---

[1]    Case law cited to by reference to electronic database is attached hereto as exhibits for the convenience of the Court.

Affirmative Defense 4          Plaintiff's claims are barred by the doctrine of laches, waiver or estoppel and/or by Plaintiff's own actions or inactions or omissions.

Waiver, estoppel, and laches are equitable defenses that must be pled with specific elements required to establish the defense. Bartashnik v. Bridgeview Bancorp Inc., 2005 U.S. Dist. LEXIS 33657, * 14 (N.D. Ill. 2005) (J. Moran); Fluor Corp. v. Ill. Power Co. 326 F. 2d 374, 377-78 (7th Cir 1964); Bobbitt v. Victorian House, Inc. 532 F. Supp. 734, 738-39 (N.D. Ill. 1982). Courts have consistently struck these defenses when, as here, they are insufficiently pled. Yash Raj Films Inc. v. Atl. Video, 2004 U.S. Dist. LEXIS 9739, * 9 (N.D. Ill. 2004)(J. Filip)., Defendant has not provided sufficient allegations to establish the elements necessary to these defenses, therefore they must be stricken. .Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989)(."bare bones conclusory allegations" must be stricken).

Once again Defendant offers no applicable law which argues otherwise.  Defendant cites to the holding by this Court in Wausau Ins., Co. V. Woods Equipment Co., 2002 U.S. Dist. LEXIS 4171 at *6 (N.D. Ill. Mar 14, 2002) and Caja Nacional de Ahorro y Seguro, 2001 U.S. Dist. LEXIS 34655 at *10 (N.D. Ill. Mar, 23, 2001), noting Plaintiff did not cite to either and that is true.  Plaintiff has not moved to strike Defendant's affirmative defense of failure to mitigate damages - which would have made these cases relevant.  ***These cases are not applicable to the Plaintiff's motion to strike the affirmative defenses at issue***.

Affirmative Defense 5          Defendant took reasonable care to prevent and correct promptly any harassing behavior and Plaintiff unreasonably failed to take advantage of preventative or corrective opportunities provided by the Defendant or to avoid harm otherwise.

Affirmative Defense 6.          Even if the trier of fact were to determine that a discriminatory motive or reason played any part in the employment decisions or actions regarding the Plaintiff, which Defendant denies, such action or actions would have been taken in any event for legitimate, non-discriminatory reasons.

.       These two asserted defenses are not enumerated affirmative defenses, they are clutter and redundant. ***Defendant has already put these matters in issue*** by denying certain allegations in its answer, and defendant not only need not but cannot raise these matters again via an affirmative defense. (Plt's Complaint ¶ 29, 30, 34, 43, 44, 49, 61, 73, 77) *See* <u>Menchaca v. Am. Med. Response of Illinois</u>, Inc., 6 F. Supp. 2d 971, 973 (N.D. Ill. 1998) (holding that where plaintiff employee alleged discriminatory and retaliatory reasons for her firing and defendant employer put those matters in issue by denials of those allegations,  employer could not put those matters in issue again via an affirmative defense asserting that it "terminated Plaintiff's employment for legitimate business reasons"); <u>Winding v. Pier Management Service</u>, 1997 U.S. Dist. LEXIS 1012, No. 96 C 7461, 1997 WL 51475, at *2 (N.D. Ill. Feb. 4, 1997) (holding that affirmative defense that defendant terminated plaintiff's employment for "legitimate, non-discriminatory" reason is stricken as both unnecessary and inappropriate because this assertion was already put in issue by the defendant's denial in its answer).  Therefore these affirmative defenses are improper and must be stricken.


      <u>Affirmative Defense 7</u>.        Defendants actions concerning Plaintiff's employment were taken in the good faith belief, based upon reasonable grounds, that they did not violate any provisions of Title VII or the ADA.

7.       While good faith is an affirmative defense which must be pleaded by the defendants in a 42 U.S.C.  1983 action, this is not a  § 1983 case. *See e.g.*, <u>Gomez v. Toledo</u>, 446 U.S. 635, 639-40, 64 L. Ed. 2d 572, 100 S. Ct. 1920 (1980) (holding that defendants must plead good faith as an affirmative defense in a  § 1983 action); *accord* <u>Chavis v. Rowe</u>, 643 F.2d 1281, 1288 (7th Cir. 1981); *accord* <u>Pape v. Lerman</u>, 1982 U.S. Dist. LEXIS 12365, No. 73 C 380, 1982 WL 228, at *9 (W.D. Wis. Feb. 17, 1982).  Therefore affirmative defense seven must be stricken.


      <u>Affirmative Defense 8</u>.        Plaintiff has failed to state a claim against Defendant that would warrant an award of punitive damages.

8.    Defendants' 8th affirmative defenses allege that punitive damages are not recoverable. Assertions that punitive damages are not recoverable or constitutional do not constitute affirmative defenses under Section 8(c). <u>Kiswani v. Phoenix Sec. Agency, Inc</u>., 2006 U.S. Dist. LEXIS 6997 (N.D. Ill. Feb. 22, 2006) Darrah, J. Further, Defendant does not set forth a defense that statutory caps would apply to punitive damages awarded - as they now argue in their response brief - instead they clearly state that Plaintiff has failed to state a claim which would warrant an award of punitive damages.  As such it is an improper affirmative defense which must be stricken. <u>Id.</u>

> <u>Affirmative Defense 9</u>.        Plaintiff's compensatory and punitive damages claims are subject to the limitations imposed by 42 U.S.C. § 1981a(b)(3).

9.    Plaintiff has not brought or advanced any claims of discrimination pursuant to 42 U.S.C. § 1981, since the limitations imposed only apply to claims brought under 42 U.S.C. § 1981, this defense is not applicable and therefore must be stricken.

> <u>Affirmative Defense 10.</u>        Punitive damages may not be awarded because any actions arguably justifying punitive damages were not authorized or ratified by Defendant and were committed, if at all, outside the scope of agency or employment of the actor; further any such conduct warranting punitive damages, which is denied, was contrary to Defendant's personnel policies, compliance efforts, and effective solutions to employee EEO concerns.

10.    Defendants' 10th affirmative defenses allege that punitive damages are not recoverable. Assertions that punitive damages are not recoverable or constitutional do not constitute affirmative defenses under Section 8(c). <u>Kiswani v. Phoenix Sec. Agency, Inc</u>., 2006 U.S. Dist. LEXIS 6997 (N.D. Ill. Feb. 22, 2006) (Darrah, J). *See also*,  <u>Instituto Nacional De Comercializacion Agricola (Indeca) v. Cont'l Ill. Nat'l Bank and Trust Co.</u>, 576 F. Supp. 985, 991 (N.D. Ill. 1983)(Shadur J.); <u>Northwestern Corp. v. Gabriel Mfg. Co., Inc.</u>, 1996

-5-

U.S. Dist. LEXIS 19275, 1996 WL 732519, (N.D. Ill. Dec. 18, 1996) (Anderson, J.).
Also, these matters are already at issue by denials made by Defendant in its' Answer.
(Plt's Complaint ¶ 29, 30, 34, 43, 44, 49, 61, 73, 77) .  This asserted defense in
insufficient, redundant clutter and should be stricken.

Affirmative Defense 13        Some or all of Plaintiff's claims may be preempted by the
                              Railway Labor Act and fall within the jurisdiction of the
                              National Railway Adjustment Board..

Defendants reliance on <u>Miller v. Am. Airlines, Inc</u>., 2008 U.S. App. LEXIS 9631 (7th
Cir. Ill. May 5, 2008), is misplaced and inapplicable.  The Miller Court addressed a salary
dispute covered by the collective bargaining agreement.  The Plaintiff's filed an Age
Discrimination claim the "sole issue" of which was "salary" which was governed by the
collective bargaining agreement. The district court stayed the matter pending an arbitration
decision, the Seventh Circuit held they were bound by an arbitrators decision as to the terms of
the bargaining agreement regarding salaries.  The present matter involves issues well beyond the
scope of <u>Miller</u>. <u>Id.</u>

Defendant's Affirmative Defense 13,  fails to meet federal pleading requirements and
fails to put Plaintiff on notice and to which claims my be preempted and to what extent if any.
The Railway Labor Act is applicable to the present matter.  The Railway Labor Act applies if the
claim is primarily "a question of interpretation of the collective bargaining agreement or a minor
contract dispute," <u>Johnson v. American Airlines, Inc</u>., 487 F. Supp. 1343, 1346 (N.D. Tex. 1980).
When the claim is essentially based on a federal statutory right, the plaintiff has an independent
remedy which allows him to proceed directly to federal court. <u>Id.</u> <u>accord</u>, <u>Piva v. Xerox Corp</u>.,
376 F. Supp. 242, 246 (N.D. Cal. 1974) <u>Bremer v. St. Louis Southwestern Railroad Co</u>., 310 F.
Supp. 1333 (E.D. Mo. 1969). Even if collateral interpretation of the collective bargaining
agreement is involved, exhaustion is unnecessary when the thrust of the complaint is
discrimination rather than contract. <u>Johnson</u>, 487 F. Supp. at 1346. If Defendant truly believes
that such a defense precludes this litigation then it should be brought as a motion saving this

Court and Plaintiff time and money.

## *CONCLUSION*

Pursuant to Federal Rule of Civil Procedure 8(c) ("Rule 8(c)"), a party must to set forth

affirmative defenses in a responsive pleading. FED. R. CIV. P. 8(c). Under Federal Rule of Civil

Procedure 12(f) ("Rule 12(f)"), "the court may order stricken from any pleading any insufficient

defense." FED. R. CIV. P. 12(f). Courts should strike affirmative defenses where they create

unnecessary clutter, where they are mistitled or redundant, for example if they raise matters

already raised in the defendant's denial. Household Fin. Serv., Inc. v. Northeastern Mortgage Inv.

Corp., 2000 U.S. Dist. LEXIS 8975, No. 00 C 0667, 2000 WL 816795, at *1 (N.D. Ill. June 22,

2000) (*citing* Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989);

Sanwa Bus. Credit Corp. v. Harris, 1991 U.S. Dist. LEXIS 10960, No. 91 C 0204, 1991 WL

156116, [**3] at *1 (N.D. Ill. Aug. 6, 1991). Affirmative defenses are pleadings and, as such, are

subject to the pleading requirements of the Federal Rules of Civil Procedure. *See Heller*, 883

F.2d at 1294; Flasza v. TNT Holland Motor Express, Inc., 155 F.R.D. 612, 613 (N.D. Ill. 1994).

Accordingly, affirmative defenses must set forth a "short and plain statement." FED. R. CIV. P.

8(a). However, even under the liberal notice pleading standard of the Federal Rules of Civil

Procedure, an allegation must include either direct or inferential allegations respecting all

material elements of the claim asserted. United States v. Hartz Constr. Co., Inc., 2000 U.S. Dist.

LEXIS 12405, No. 98 C 4785, 2000 WL 12220919 at *7 (N.D. Ill. Aug. 18, 2000) (quoting

MAN Roland v. Quantum Color Corp., 57 F. Supp. 2d 576, 578 (N.D. Ill. 1999). Bare legal

conclusions attached to narrated facts will not suffice. *See* Heller, 883 F.2d 1286, 1294 (granting

motion to strike affirmative defenses in which defendants omitted any short and plain statement of facts and failed to allege necessary elements of claims); <u>Strauss v. City of Chicago</u>, 760 F.2d 765, 768 (7th Cir. 1985). [**4]. And even under the notice pleading regime that is embodied in the Rules, something more is demanded of the pleader than a mere skeletal recitation of the legal label attached to such a defense--as <u>Keller Financial</u>, 883 F.2d at 1295 put it: "The remaining defenses are equally meritless. They are nothing but bare bones conclusory allegations. [Defendant] omitted any short and plain statement of facts and failed totally to allege the necessary elements of the alleged claims." How is an opposing party to respond if otherwise allowed?

Defendant has not shown that the asserted defenses sought to be stricken meet federal pleading requirements of Rule 8, are not immaterial, redundant, conclusory clutter, this Court must strike said defenses in an effort to expedite this matter and avoid delay.

**WHEREFORE**, Plaintiff respectfully requests this Honorable Court grant Plaintiff's Motion to Strike in its entirety.

Respectfully Submitted,

/s/  Charles Siedlecki

Charles Siedlecki & Associates, P.C.
10540 S. Western Ave. - Suite 405
Chicago, Illinois 60643
773/881-2535

LEXSEE 1997 U.S. DIST LEXIS 1012



Analysis
As of: May 20, 2008

**UNDRAE R. WINDING, Plaintiff, v. PIER MANAGEMENT SERVICE, etc., Defendant.**

**No. 96 C 7461**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*1997 U.S. Dist. LEXIS 1012*

**February 3, 1997, Decided**
**February 4, 1997, date docketed**

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Denials*
[HN1] Courts require pleaders to employ one of the three alternatives that are permitted by *Fed. R. Civ. P. 8(b)* in response to all allegations about the contents of documents.

**COUNSEL:** [*1] For UNDRAE R WINDING, plaintiff: Gerald A. Goldman, Arthur R. Ehrlich, Jonathan C. Goldman, Goldman & Ehrlich, Chicago, IL.

For PIER MANAGEMENT SERVICE, a Division of Bismarck Enterprises, Inc., An Illinois Corporation, defendant: David S. Americus, Eugene E. Gozdecki, Joseph R. Ziccardi, Gozdecki and DelGiudice, Chicago, IL.

**JUDGES:** Milton I. Shadur, Senior United States District Judge

**OPINION BY:** Milton I. Shadur

**OPINION**

*MEMORANDUM OPINION AND ORDER*

This Court has already been compelled to issue one sua sponte opinion (dated January 21, 1997) in order to direct counsel for Pier Management Services Company ("Pier Management") to conform to the plain dictates of federal pleading rather than to counsel's own misperception of those fundamentals. Now Pier Management's counsel have filed its Answer to the employment discrimination claim brought against it by its ex-employee Undrae Winding, and some aspects of that filing are just as ill-conceived as Pier Management's motion to dismiss that this Court was compelled to dispatch earlier.

In part the problem lies in counsel's rote repetition of this assertion in Answer PP1, 2 and 5, something that is both needless and uncalled-for by the allegations [*2] of Winding's Complaint:

Answering further, defendant denies that it violated the Act and denies that plaintiff states a claim against it for a violation of the Act.

Instead the proper response to Winding's straightforward

allegations that identify the nature of his claim (Complaint P1), the source of federal jurisdiction (Complaint P2) and the basis for venue in this district (Complaint P5) is a simple *admission* of each of those allegations. Nothing in Winding's averments in those paragraphs calls for the added volunteered assertions that Pier Management has advanced--and as if that were not enough, it is simply not true that Winding has failed to state a claim when, as must be done in testing a complaint, his allegations are accepted as true.

Next, it is the height of absurdity for Pier Management's counsel to respond to Complaint P3 (which reads simply "The Plaintiff demands a trial by jury") by stating:

> Defendant is without knowledge or information sufficient to form a belief as to the truth or accuracy of the allegations of this paragraph 3.

It is really an understatement to label that nonsensical response as frivolous in both the literal and [*3] legal sense of that word.

As the next item, Answer P4 responds to Winding's simple allegation as to his having received a right-to-sue letter from EEOC (a condition precedent to his filing this lawsuit) by saying "which letter speaks for itself and controls over any of the summarizing allegations contained in the plaintiff's Complaint." To begin with, this Court has been attempting to listen to such written materials for years in the forlorn hope that one will indeed give voice--but until some such writing does break its silence by "speaking for itself," this [HN1] Court will continue to require pleaders to employ one of the three alternatives that *are* permitted by *Fed. R. Civ. P. ("Rule") 8(b)* in response to all allegations about the contents of documents. Moreover, there are *no* "summarizing allegations" about the EEOC letter in Winding's Complaint, so that response too is no better than a straw man.

Finally, Pier Management has concluded its response by submitting what it labels as an Affirmative Defense ("AD"):

For its Affirmative Defense, defendant states that plaintiff fails to state a claim against it because it terminated the employment of the plaintiff for legitimate, [*4] non-discriminatory reasons.

That AD concept, embodied in *Rule 8(c)*, is essentially akin to the common law plea in confession and avoidance: It *admits* all of the allegations of a complaint, but then goes on to advance a reason why defendant is not liable to plaintiff anyway (or, as in the case of comparative negligence, may be liable to plaintiff for less than plaintiff claims). See this Court's discussion of *Rule 8(c)* in *Bobbitt v. Victorian House, Inc., 532 F. Supp. 734, 736-37 (N.D. Ill. 1982)*, a decision approved in *Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989)*.

In this instance Pier Management's assertion is directly at odds with the allegations of Complaint PP9 and 10 that Winding's firing was "because of his race (black)." That characterization has been put directly into issue by Pier Management's denial of that allegation, so that the purported AD is both unnecessary and inappropriate.

For all of these reasons, the entire Answer is stricken, with leave to file an appropriate Amended Answer on or before February 14, 1997. Moreover, there appears to be no reason that Pier Management should pay for the blunders that have [*5] been exhibited by its counsel in preparing and submitting both its original proposed motion to dismiss and the current Answer. Accordingly its counsel are ordered (1) to transmit copies of this Court's January 21, 1997 memorandum opinion and order and of this memorandum opinion and order to their client, (2) to advise the client that no charge will be made for the time spent or for any out-of-pocket charges incurred in preparing either of the stricken documents and (3) to transmit a letter to this Court confirming counsel's compliance with the directives contained in this sentence.

Milton I. Shadur

Senior United States District Judge

Date: February 3, 1997

LEXSEE 2005 U.S. DIST LEXIS 33657



Caution
As of: May 20, 2008

**MARINA BARTASHNIK, individually and on behalf of all others similarly situated, Plaintiff, vs. BRIDGEVIEW BANCORP, INC., d/b/a BRIDGEVIEW BANK, and MEIRTRAN, INCORPORATED, Defendants.**

**No. 05 C 2731**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2005 U.S. Dist. LEXIS 33657*

**December 15, 2005, Decided
December 15, 2005, Filed**

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
[HN1] Affirmative defenses are pleadings that must comply with the Federal Rules of Civil Procedure by including a short and plain statement of the basis for the defense.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike*
[HN2] *Fed. R. Civ. P. 12(f)* allows the court to strike from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike*
[HN3] Generally, courts disfavor motions to strike because of their potential to cause delay. Yet, striking affirmative defenses may also increase efficiency if those pleadings provide only "unnecessary clutter." Courts

have applied a three-part test when assessing the sufficiency of an affirmative defense. Under that test the matter must be properly pleaded as an affirmative defense; it must comply with *Fed. R. Civ. P. 8* and *Fed. R. Civ. P.9*; and it must withstand a *Fed. R. Civ. P. 12(b)(6)* challenge.

*Banking Law > Bank Activities > Electronic Banking > Fund Transfers*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
[HN4] An affirmative defense must contain all the necessary elements, and providing proper notice in compliance with *15 U.S.C.S. § 1693b(d)(3)(B)(i)* is an element of the *15 U.S.C.S. § 1693h(d)* exception.

*Banking Law > Bank Activities > Electronic Banking > Fund Transfers*
[HN5] *15 U.S.C.S. § 1693m* allows for actual damages, and failure to mitigate actual damages may be a viable defense.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*

2005 U.S. Dist. LEXIS 33657, *

[HN6] Failure to join a party is grounds for dismissal under *Fed. R. Civ. P. 12(b)(7)*.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN7] Payment, release, and accord and satisfaction, are defenses listed in *Fed. R. Civ. P. 8(c)*. However, courts have consistently held that stringing together a list of affirmative defenses fails to satisfy the *Fed. R. Civ. P. 8(a)* short and plain statement requirement.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
[HN8] It has been observed that set-off is not an affirmative defense because it does not destroy a plaintiff's right of action. Both set-off and recoupment involve counter demands.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections*
[HN9] Waiver, estoppel and laches are equitable defenses that must be pled with the specific elements required to establish the defense. Courts have "consistently struck" these defenses when they are insufficiently pled.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
[HN10] Affirmative defenses are more than simple denials and should not merely negative elements that a plaintiff must prove.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
[HN11] The proper challenge to venue is a denial in the answer or a *Fed. R. Civ. P. 12(b)(3)* motion.

**COUNSEL:** [*1] For Marina Bartashnik individually and on behalf of all others similarly situated, Plaintiff: Lance A. Raphael, Allison Amy Krumhorn, Stacy Michelle Bardo, Consumer Advocacy Center, Chicago, IL.

For Bridgeview Bancorp, Inc. doing business as Bridgeview Bank, Meirtran Incorporated, Defendants: Denean K. Sturino, Fagel Haber LCC, Chicago, IL;

Adam C Toosley, Fagel & Haber, Chicago, IL.

**JUDGES:** JAMES B. MORAN, Senior Judge, U. S. District Court.

**OPINION BY:** JAMES B. MORAN

**OPINION**

MEMORANDUM OPINION AND ORDER

Plaintiff Marina Bartashnik brought this action individually and on behalf of others similarly situated, against defendants Bridgeview Bancorp, Inc., (Bridgeview Bank) and Meirtran Inc. (Meirtran) (collectively defendants), alleging violations of the Electronic Funds Transfer Act (EFTA), *15 U.S.C. §§ 1693-1693r*, and accompanying regulations, after defendants charged her and others transaction fees at automated teller machines (ATMs) without posting notice of those fees outside of the ATMs. [1] Each defendant has filed nine affirmative defenses. Plaintiff now moves under *FED. R. CIV. P 12(f)* to strike all of Bridgeview Bank's [*2] affirmative defenses and Meirtran's affirmative defenses 3 through 9. For the following reasons, plaintiff's motion is granted in part and denied in part.

> 1    Specifically, plaintiff seeks relief under *15 U.S.C. § 1693(d)(3)(B)(i)*, and its implementing regulation, *12 C.F.R. § 205.16*. Provisions in *section 1693*, including *section 1693b(d)(3)*, were amended by the ATM Reform Act of 1999, Pub. L. No. 106-102, §§ 701-05, 113 Stat. 1463 (1999). *See Burns v. First. Am. Bank, 2005 U.S. Dist. LEXIS 9485, *4-5, 2005 WL 1126904 (N.D. Ill. 2005)*.

[HN1] Affirmative defenses are pleadings that must comply with the Federal Rules of Civil Procedure by including a short and plain statement of the basis for the defense. *Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989)*.[HN2] *Rule 12(f)* allows the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. [*3] " *See also Van Schouwen v. Connaught Corp., 782 F. Supp. 1240, 1245 (N.D. Ill. 1991)* (staring that a *Rule 12(f)* motion may be used to strike any "impertinent or redundant matter in any pleading and is the primary procedure for objecting to an

insufficient defense."). [HN3] Generally, courts disfavor motions to strike because of their potential to cause delay. Yet, striking affirmative defenses may also increase efficiency if those pleadings provide only "unnecessary clutter." *Heller, 883 F.2d at 1294*. Courts in this district have applied a three-part test when assessing the sufficiency of an affirmative defense. Under that test the matter must be properly pleaded as an affirmative defense; it must comply with *Rules 8* and *9*; and it must withstand a *Rule 12(b)(6)* challenge. *See Bobbit v. Victorian House, Inc., 532 F. Supp. 734, 737 (N.D. Ill. 1982)*; *Yash Raj Films Inc. v. Atl. Video, 2004 U.S. Dist. LEXIS 9739, *7, 2004 WL 1200184 (N.D. Ill. 2004)*; *Builders Bank v. First Bank & Trust Co., 2004 U.S. Dist. LEXIS 5016, *6, 2004 WL 626827 (N.D. Ill. 2004)*; *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc., 2003 U.S. Dist. LEXIS 4964,* [*4] *8-9, 2003 WL 1720073 (N.D. Ill. 2003)*. By alleging that the affirmative defenses are facially insufficient, plaintiff focuses on the second Bobbit factor.

Plaintiff argues that all of Bridgeview Bank's affirmative defenses, and Meirtran's defenses 3 through 9, are nothing more than conclusory allegations that lack short and plain statements of fact. Meirtran's defenses 3 through 9 arc identical to Bridgeview Bank's defenses 3 through 9. The affirmative defenses state as follows:

1. No act or omission of Defendant was a substantial cause of the occurrence referred to in the Complaint, or any injury, damage, or loss to Plaintiff, nor was any act or omission of Defendant a contributing cause thereof, and any act or omission of Defendant was superseded by the acts or omissions of other persons, and those acts or omissions were the independent, superseding, intervening and proximate cause of the accident and damage alleged in this action, and/or the damages alleged were the result of an act or acts of God.

2. Plaintiff's claims are barred, in whole or in part, because Plaintiff's alleged damage, if any, was proximately caused by the negligence or wrongful conduct [*5] of others, who were outside the control of Defendant, and not by Defendant.

3. Plaintiff's claims are barred, in whole or in part, because of a failure to mitigate damages.

4. Plaintiff's claims should be dismissed because she has failed to join necessary and indispensable parties.

5. Plaintiff's claims are barred, in whole or in part, by payment, release and/or accord and satisfaction.

6. Plaintiff's claims are barred, in whole or in part, by set-off and/or recoupment.

7. Plaintiff's claims are barred, in whole or in part, by waiver, estoppel, and/or laches.

8. This Court is not the proper venue for Plaintiff's claims and Plaintiff's claims should be dismissed or transferred to a more appropriate venue.

9. Plaintiff's cause of action against Defendant was brought in bad faith or for purposes of harassment, so pursuant to *15 U.S.C. § 1693m(f)*. Defendants . are entitled to its [sic] reasonable attorneys' fees for its [sic] of this action.

Plaintiff claims that defendants have failed to provide any factual basis or similar grounds to support the defenses, and that they do not provide plaintiff with adequate notice of those defenses. Bridgeview [*6] Bank counters, arguing that the EFTA specifically authorizes affirmative defenses 1, 2 and 9. As to affirmative defenses 3 through 8, Bridgeview Bank asserts that plaintiff cannot state she is unaware of the claims.

Plaintiff argues that the first two affirmative defenses are conclusory allegations that fail to provide notice of necessary facts. However, in her reply memoranda, plaintiff accurately encapsulates the gist of the first two affirmative defenses. She writes that those defenses "state that Defendant was not the cause of Plaintiff's injury or any actions it may or may not have taken were superseded by the actions or negligence of others." Still, she claims lack of notice. In the first and second

affirmative defenses Bridgeview Bank essentially claims that another party or event was responsible for the fact that the ATM in question lacked the required notice of transaction fees. Granted, the second affirmative defense presents this claim in more certain terms, but the gist is also apparent in the first defense. Defendant is entitled to assert these defenses under *15 U.S.C. § 1693h(d)*, which specifically excuse from liability ATM operators who properly [*7] post notice required by *§ 1693b(d)(3)(B)(i)* when the notice "is subsequently removed, damaged, or altered by any person other than the [ATM operator]."

Further, the fact that plaintiff responded to Meirtran's first and second affirmative defenses is inconsistent with her claim that Bridgeview Bank's first two affirmative defenses fail to provide notice. Meirtran's and Bridgeview Bank's affirmative defenses are substantially similar. The only difference between the two pleadings is that Meirtan includes in its first two affirmative defenses several paragraphs stating that proper notice was posted outside of the ATM in question. This difference is minor, but it justifies striking Bridgeview Bank's first two affirmative defenses. [HN4] An affirmative defense must contain all the necessary elements, and providing proper notice in compliance with *section 1693b(d)(3)(B)(i)* is an element of the *section 1693h(d)* exception. Bridgeview Bank's affirmative defenses, unlike those pleaded by Meirtran, fail to include this element. Bridgeview Bank's first two affirmative defenses are stricken without prejudice.

Plaintiff argues that the "failure to mitigate damages" defense should be struck because [*8] it is conclusory and fails to include necessary facts. She augments this argument in her reply memoranda and presents new authority supporting her contention that the failure to mitigate defense is improper because EFTA is a strict liability statute. We would generally overlook this supplemental argument (*see aaiPharma, Inc. v. Kremers Urban Dev. Co., 361 F. Supp. 2d 770, 774 (N.D. Ill. 2005)*), but since *Rule 12(f)* allows the court to strike any insufficient defense "upon the court's initiative at any time," we view it within the scope of our inquiry.

Plaintiff cites no authority to support her claim that EFTA is a strict liability statute, and in light of the exception in *section 1693h(d)* it is difficult to agree with plaintiff's assessment. *See also section 1693m(c)*. [2] Moreover, we construe the affirmative defense to challenge the extent of liability, and not the existence of

liability, because it states that plaintiffs claim is barred "in part" by her failure to mitigate damages. Even if defendants face strict liability, a failure to mitigate defense could impact the degree of their liability. *See Ring v. Bd. of Educ. Cmty. Sch. Dist. No. 60, 2004 U.S. Dist. LEXIS 14321,* * 15-16, 2004 WL 1687009 (N.D. Ill. 2004)* [*9] ("Failure to mitigate damages, as opposed to liability, is an appropriate affirmative defense under *Fed. R. Civ. P. 8(c)*."); *Yash Raj Films Inc. v. Atl. Video, 2004 U.S. Dist. LEXIS 9739,* * 11-12 (N.D. Ill. 2004); *Nat'l Accident Ins. Underwriters, Inc. v. Citibank F.S.B., 243 F. Supp. 2d 769, 771 (N.D. Ill. 2003)* ("all 'strict liability' means is liability without fault.'... There is nothing to suggest that it means an absence or elimination of any possible affirmative defenses.").[HN5] *Section 1693m* allows for actual damages, which plaintiff seeks in addition to statutory damages, and failure to mitigate actual damages may be a viable defense.

> 2     This subsection is entitled, "unintentional violations; bona fide error," and provides that a person is not liable if he "shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." The fact that the statute provides exceptions for liability is inconsistent with strict liability.

[*10] In *Ivanhoe Fin., Inc. v. Highland Banc Corp., 2004 U.S. Dist. LEXIS 18521, 2004 WL 2091997 (N.D. Ill. 2004)*, the plaintiff brought a fraud action against defendant arising from fraudulent mortgage loan packages. The defendant filed several affirmative defenses, including a failure to mitigate damages defense. The plaintiff moved to strike that defense, arguing that the defendant neglected to indicate what damages plaintiff failed to mitigate. Noting that it was unclear whether the failure to mitigate damages affirmative defense alleged that the plaintiff failed to verify the loan information (which it had no duty to do), or if it alleged another act or omission (which could state a viable defense), the court struck the defense but granted leave to replead. Unlike the plaintiff in *Ivanhoe*, plaintiff has not alleged that the failure to mitigate affirmative defense is insufficient because it has no duty to mitigate. Rather, plaintiff merely claims that the defense is conclusory and bereft of necessary facts. At this stage it is unreasonable to expect defendants to have specific information about mitigation. *Yash Raj Films, 2004 U.S. Dist. LEXIS 9739,*

[*11]  *12; *Chronister v. Superior Air/Ground Ambulance Serv., 2005 U.S. Dist. LEXIS 27252, *10-11, 2005 WL 3019408 (N.D. Ill. 2005); Tome Engenharia E. Transportes v. Malki, 1996 U.S. Dist. LEXIS 4585, 1996 WL172286 (N.D. Ill. 1996); Am. Top. English v. Lexicon Mktg. (USA), Inc., 2004 U.S. Dist. LEXIS 23640, *35, 2004 WL 2271838 (N.D. Ill. 2004)* ("the standard for pleading mitigation is generally liberal"). The third affirmative defense specifically notifies plaintiff of the issue raised, and the motion to strike it is denied. *See Mobley v. Kelly Kean Nissan, Inc., 864 F. Supp. 726, 732 (N.D. Ill. 1993)*.

In the fourth affirmative defense defendants assert that plaintiff's case must be dismissed because she failed to join necessary and indispensable parties. Plaintiff argues that the defense must be stricken because it is conclusory and facially deficient. [HN6] Failure to join a party is grounds for dismissal under *Rule 12(b)(7)*. The fourth affirmative defense is silent as to exactly who plaintiff has failed to include in the complaint, and why this party is necessary to her action. The second defense [*12] in Form 20 of the Appendix to the Federal Rules, which is deemed sufficient by *Rule 84*, sets forth a defense that resembles the failure to join defense. The sample defense specifically mentions the party to be joined, why such joinder is necessary, and how the joinder will not adversely affect jurisdiction and venue. [3] These details are not present in the fourth affirmative defense, which is accordingly stricken.

Plaintiff seeks to dismiss the fifth affirmative defense because it does not present any factual basis. [HN7] Payment, release, and accord and satisfaction, are defenses listed in *Rule 8(c)*. However, courts have consistently held that stringing together a list of affirmative defenses fails to satisfy the *Rule 8(a)* short and plain statement requirement. *See Am. Top. English, 2004 U.S. Dist. LEXIS 23640, *34; Yash Raj Films, 2004 U.S. Dist. LEXIS 9739, *9; Builders Bank, 2004 U.S. Dist. LEXIS 5016, *17*. Defendants fail to set forth any elements of the defenses. Plaintiff does not argue that the defenses presented in the fifth affirmative defense are unavailable under the EFTA, and they are therefore stricken without prejudice. [*13] In the sixth affirmative defense, defendant asserts that plaintiff's claims are barred by "set-off and/or recoupment." These defenses are not listed in *Rule 8(c)*.[HN8] It has been observed that set-off is not an affirmative defense "because it does not destroy . . . plaintiff's right of action." *See Am. Top.*

*English, 2004 U.S. Dist. LEXIS 23640, *36*. Both set-off and recoupment involve counter demands. *See* BLACK'S LAW DICTIONARY 1372 (6th ed. 1990) (defining set-off as a "counter-claim demand which defendant holds against plaintiff, arising out of a transaction extrinsic of plaintiff's cause of action"); *id.* at 1275 (defining the allegation of recoupment in a pleading as "setting forth a claim against the plaintiff when an action is brought against one as a defendant"). Defendants do not claim that any counter demand has been made and the sixth affirmative defense is stricken. *See Minalga v. Fid. Invs. Institutional Operations Co., 2002 U.S. Dist. LEXIS 22038, *4, 2002 WL 31527251 (N.D. Ill. 2002)*.

3   The second defense in Form 20 states:

> If defendant is indebted to plaintiffs for the goods mentioned in the complaint, [*14] he is indebted to them jointly with G. H. G. H. is alive; is a citizen of the State of New York and a resident of this district, is subject to the jurisdiction of this court, as to both service of process and venue; can be made a party without depriving this court of jurisdiction of the present parties, and has not been made a party.

[HN9] Waiver, estoppel and laches "are equitable defenses that must be pled with the specific elements required to establish the defense." *Yash Raj Films, 2004 U.S. Dist. LEXIS 9739, *8-9* (citing cases). Courts have "consistently struck" these defenses when they are insufficiently pled. *Id.* Here, defendants fail to set forth any allegations beyond bare-bones legal conclusions. The seventh affirmative defense is therefore stricken without prejudice.

In the eighth affirmative defense, defendants challenge venue and posit that the claims should be dismissed or transferred to a more appropriate venue. This affirmative defense is improper because affirmative defenses should raise matters outside the scope of a plaintiff's prima facie case. *Ring, 2004 U.S. Dist. LEXIS 14321, *6*. [HN10] Affirmative defenses are more than simple denials [*15] and should not merely negative elements that a plaintiff must prove. Here, plaintiff must

show venue is proper, and the affirmative defense challenging venue is stricken with prejudice. [HN11] The proper challenge to venue is a denial in the answer or a *12(b)(3)* motion. *See Beveridge v. Mid-West Mgmt., Inc., 1999 U.S. Dist. LEXIS 20564, *4, 1999 WL 1295115 (N.D. Ill. 1999).*

Lastly, in the ninth affirmative defense defendants claim that plaintiff has brought the action in bad faith or for purposes of harassment, which entitles them to fees and costs under *section 1693m(f)*. Unlike the defense challenging venue, this defense addresses issues external to the pleadings. It does not appear that this defense is a species of fraud, which would require particular pleading under *Rule 9(b)*. As written, the defense provides adequate notice to plaintiff that defendant claims she acted in bad faith by filing this action.

CONCLUSION

For the foregoing reasons, plaintiff's motion to strike is granted in part and denied in part. The following affirmative defenses are stricken without prejudice: Bridgeview Bank's first and second affirmative defenses, and the fourth, [*16] fifth, sixth and seventh defenses. The motion to strike the third and ninth affirmative defense is denied. The eighth affirmative defense is stricken with prejudice.

December 15, 2005.

JAMES B. MORAN

Senior Judge, U. S. District Court

LEXSEE 2004 U.S. DIST LEXIS 9739



Positive
As of: May 20, 2008

**YASH RAJ FILMS (USA) INC., Plaintiff, v. ATLANTIC VIDEO, et al., Defendants.
RAJESH BANSAL, Defendant-Third Party Plaintiff, v. INDIA EMPORIUM, INC.,
AND SHARAD SHAH, Third-Party Defendants.**

**Case No. 03 C 7069**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2004 U.S. Dist. LEXIS 9739; 58 Fed. R. Serv. 3d (Callaghan) 864; Copy. L. Rep. (CCH)
P28,806*

**May 27, 2004, Decided
May 28, 2004, Docketed**

**DISPOSITION:** [*1] Defendant-Third Party Plaintiff Rajesh Bansal's motion to strike all of Third-Party Defendant Sharad Shah's affirmative defenses granted in part and denied in part.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*
[HN1] *Fed. R. Civ. P. 12(f)* gives unrestricted authority to the district court to strike insufficient defenses.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN2] The purpose of *Fed. R. Civ. P. 8(c)* is to give the opposing party notice of the affirmative defense and a chance to rebut it. *Rule 8(c)* provides that a party must set

forth affirmative defenses in a responsive pleading. These pleadings are subject to all pleading requirements of the Federal Rules of Civil Procedure. The court may strike from any pleading any insufficient defense. *Fed. R. Civ. P. 12(f)*. Affirmative defenses must set forth a "short and plain statement" of the basis for the defense. *Fed. R. Civ. P. 8(a)*. However, an allegation must include either direct or inferential allegations respecting all material elements of the defense asserted. Simply naming a legal theory without indicating how it is connected to the case at hand is not sufficient to withstand a motion to strike.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*
[HN3] Courts generally disfavor motions to strike affirmative defenses because they potentially serve only to cause delay. However, the courts should strike affirmative defenses where they are mistitled, or redundant or where they create unnecessary clutter. The Northern District of Illinois has followed a three-part test in examining affirmative defenses subject to a motion to strike, requiring that: (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of *Fed. R.*

2004 U.S. Dist. LEXIS 9739, *1; 58 Fed. R. Serv. 3d (Callaghan) 864;
Copy. L. Rep. (CCH) P28,806

*Civ. P. 8* and *9*; and (3) the matter must withstand a *Fed. R. Civ. P. 12(b)(6)* challenge.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses***
***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview***
***Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements***
[HN4] Defenses which are bare bones legal conclusions are not sufficient to survive a motion to strike.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses***
***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Waiver & Preservation***
***Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements***
[HN5] Affirmative defenses of ratification, waiver, estoppel, laches, and unclean hands, are equitable defenses that must be pled with the specific elements required to establish the defense. These defenses require at least some direct or inferential allegations as to each element of the defense asserted. Courts have set forth specific pleading standards for the defenses of waiver, estoppel, and laches and have consistently struck these defenses where they are insufficiently pled. In addition, stringing together a list of legal defenses is not sufficient to satisfy *Fed. R. Civ. P. 8(a)*.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses***
***Torts > Negligence > Defenses > Comparative Negligence > Intentional & Reckless Conduct***
[HN6] Under federal law, affirmative defenses generally admit the matters in a complaint but nevertheless assert facts that would defeat recovery.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses***
***Torts > Negligence > Defenses > Comparative Negligence > General Overview***
[HN7] Matters that clearly are not affirmative defenses should be stricken. If the matter is put into issue by a denial, there is no need to insert a putative affirmative defense.

***Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses***
[HN8] A declaratory request for declaratory relief is not a matter which constitutes an avoidance or affirmative defense as set forth by *Fed. R. Civ. P. 8(c)*.

**COUNSEL:** For YASH RAJ FILMS (USA) INC., plaintiff: Daksha Amin, Law Offices of Daksha Amin, Chicago, IL. William Michael Poppe, Megha Bhouraskar, Poppe & Bhouraskar, LLP, New York, NY.

For RAJESH BANSAL, Individually dba Star Video, PRETTI BANSAL, individually dba Star Video, VIJAY JOHN DOE "VIJAY" BANSAL, individually dba Star Video, defendants: John William Moore, John C. Spieske, Moore & Spieske, P.C., Chicago, IL.

For USMANIA EXPRESS dba New Sabah Video, MOHAMMED I AMIN, individually dba New Sabah Video, RABNAWZ IQBAL, individually dba New Sabah, defendants: Gerald L. Berlin, Law Offices of Gerald L. Berlin, Chicago, IL.

For RAJESH BANSAL dba Star Video, third-party plaintiff: John William Moore, John C. Spieske, Moore & Spieske, P.C., Chicago, IL.

SHARAD SHAH, third-party defendant, Pro se, Diamond Bar, CA.

**JUDGES:** Mark Filip, United States [*2] District Judge.

**OPINION BY:** Mark Filip

**OPINION**

MEMORANDUM OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT-THIRD PARTY PLAINTIFF'S MOTION TO STRIKE

Before the Court is Defendant-Third Party Plaintiff Rajesh Bansal's ("Bansal") motion to strike all of Third-Party Defendant Sharad Shah's ("Shah") affirmative defenses. Bansal variously alleges that the affirmative defenses do not meet the pleading requirements of *Fed. R. Civ. P. 8(a)* ("Rule 8(a)"), that they are conclusory allegations, and that they are not affirmative defenses under *Fed. R. Civ. P. 8(c)* ("Rule 8(c)"). [1] As explained below, the Court grants the motion to strike affirmative defenses one through six, eight

through eleven, and thirteen. The Court denies the motion to strike affirmative defenses seven and twelve.

   1   It appears that Bansal's motion to strike may not have been timely under *Fed. R. Civ. P. 12(f)* ("*Rule 12(f)*"). However, "*Rule 12(f)* [HN1] 'gives unrestricted authority to the district court to strike insufficient defenses.'" *Go-Tane Serv. Stations, Inc. v. Ashland Oil, Inc., 508 F. Supp. 200, 201-02 (N.D. Ill. 1981)* (quoting *United States v. 416.81 Acres of Land, 514 F.2d 627, 630 n.3 (7th Cir. 1975)).*

[*3]  BACKGROUND

   Plaintiff, Yash Raj Films (USA), Inc., alleges in its first amended complaint that it is the owner of the copyrights and/or exclusive license rights of certain Indian films. [2] (D.E. 9, P49.) Plaintiff alleges that Defendant-Third Party Plaintiff, Bansal, has made, copied, purchased, sold, rented and/or distributed unauthorized "pirate" copies of Plaintiff's films, in some cases using Plaintiff's name or logo on the package. (*Id.* P65.) The complaint further alleges that Bansal has not obtained any assignment, license, authorization, permission or consent to any rights to Plaintiff's films. (*Id.* P71.)

   2   Yash Raj filed a second amended complaint after the motion addressed in this decision; however, the amended complaint does not impact the analysis of the Court.

   Bansal alleges in the Third Party Complaint that Shah is in the business of selling DVDs of Indian films and music and that Bansal has purchased DVDs of Indian films and music from Shah. (D.E. 17, P8, 9.) Bansal purchased from Shah [*4] items which Plaintiff, Yash Raj Films, alleges infringe its copyrights and trademarks. (*Id.* P9). Bansal alleges that every sale by Shah contained an implied warranty of non-infringement under section *312 of article two of the Uniform Commercial Code* ("U.C.C."), which is incorporated into Illinois law as *810 ILCS 5/2-312*. (*Id.* P10.) In addition, Bansal alleges that, upon specific inquiry, Shah represented that the goods sold by Shah were non-infringing. (*Id.* P11.) Bansal contends that this constituted an express warranty by Shah under *section 313 of article two of the U.C.C.* , which is incorporated into Illinois law as *810 ILCS 5/2-313*. (*Id.*) Bansal further alleges that pursuant to *sections 312 of article two of the U.C.C.and 313* , Shah

has a duty to defend and indemnify Bansal against some or all of the claims of Plaintiff. (*Id.* P12.)

   Shah generally denies the allegations of the Third-Party Complaint and sets forth thirteen affirmative defenses. (D.E. 19.) Shah asserts failure to state a cause of action, declaratory relief, ratification, waiver, estoppel, laches, failure to mitigate damages, unclean hands, statute of limitations, intentional conduct, apportionment [*5] of fault, set off, and *Fed. R.Civ. P. 11* ("*Rule 11*") as affirmative defenses, respectively. (*Id.* at 3-7.)

DISCUSSION

   Bansal objects to affirmative defenses one and three through twelve (failure to state a claim, ratification, waiver, estoppel, laches, failure to mitigate damages, unclean hands, statute of limitations, intentional conduct, apportionment of fault, and set off) based on a contention that they are conclusory allegations that fail to provide fair notice of the defense. (D.E. 22, P8-43.) Bansal objects to affirmative defenses two, declaratory relief, and thirteen, *Rule 11*, based on the contention that they are not matters which constitute an avoidance or affirmative defense as set forth in *Rule 8(c)*. (*Id.* P11, 45.) Bansal further objects to affirmative defense thirteen (generically asserting an undefined *Fed. R. Civ. P. 11* violation), contending that it does not comply with *Rule 11(c)(1)(A)* in that it is not presented in a separate motion and does not describe the specific conduct alleged to violate *Rule 11(b)*. (*Id.* P46.) The Court agrees that affirmative defenses one through six, [*6] eight through eleven, and thirteen are inadequate, as further explained below.

   [HN2] The purpose of *Rule 8(c)* is to give the opposing party notice of the affirmative defense and a chance to rebut it. *See Servpro Indus. Inc. v. Schmidt, 905 F. Supp. 475, 483 (N.D. Ill. 1995)* (collecting authorities). *Rule 8(c)* provides that a party must set forth affirmative defenses in a responsive pleading. These pleadings are subject to all pleading requirements of the Federal Rules of Civil Procedure. *See Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989).* The Court may strike from any pleading any insufficient defense. *See Fed. R. Civ. P. 12(f).* Affirmative defenses must set forth a "short and plain statement" of the basis for the defense. *Fed. R. Civ. P. 8(a); accord Heller, 883 F.2d at 1294.* However, an allegation must include either direct or inferential allegations respecting all material elements of the defense asserted. *See, e.g., Renalds v.*

*S.R.G. Rest. Group, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000)* (collecting authorities). [*7] Simply naming a legal theory without indicating how it is connected to the case at hand is not sufficient to withstand a motion to strike. *Id. at 803.*

[HN3] Courts generally disfavor motions to strike affirmative defenses because they potentially serve only to cause delay. *See Heller, 883 F.2d at 1294.* However, the courts should strike affirmative defenses where they are mistitled, or redundant--*see, e.g., Renalds, 119 F. Supp. 2d at 802*--or where they create unnecessary clutter. *See, e.g., Heller, 883 F.2d at 1294.* This district has followed a three-part test in examining affirmative defenses subject to a motion to strike, requiring that: (1) the matter must be properly pleaded as an affirmative defense; (2) the matter must be adequately pleaded under the requirements of *Federal Rules of Civil Procedure 8and 9*; and (3) the matter must withstand a *Rule 12(b)(6)* challenge. *See, e.g., Renalds, 119 F. Supp. 2d at 802-3* (collecting authorities).

A. First and Ninth Affirmative Defenses

Affirmative defense one, failure to state a [*8] claim, requires a short and plain statement of the basis for the defense as is set forth in *Rule 8(a).* [HN4] Defenses which are bare bones legal conclusions are not sufficient to survive a motion to strike. *See Heller, 883 F.2d at 1295*; *Builder's Bank v. First Bank & Trust Co., 2004 U.S. Dist. LEXIS 5016, No. 03-4959, 2004 WL 626827, at *3 (N.D. Ill. Mar. 25, 2004)* (collecting cases). Shah's first affirmative defense is a boilerplate legal conclusion and does not specify reasons why Bansal failed to state a claim. Similarly, affirmative defense nine, relating generically to statute of limitations issues, fails to state the statute of limitation period relied on or any other information regarding how the statute of limitations bars the claim. It is not even clear what state's law Shah purports to invoke when he offers incomplete citations to the "Code of Civil Procedure" in Shah's otherwise conclusory averment. These two defenses are impermissible conclusory statements. The Court grants the motion to strike affirmative defenses one and nine without prejudice.

B. Third through Sixth and Eighth Affirmative Defenses

[HN5] Affirmative defenses three through six and eight, (ratification, [*9] waiver, estoppel, laches, and unclean hands, respectively) are equitable defenses that must be pled with the specific elements required to establish the defense. *See, e.g., Fluor Corp. v. Ill Power Co. 326 F.2d 374, 377-78 (7th Cir. 1964)*; *Bobbitt v. Victorian House, Inc., 532 F. Supp. 734, 738-39 (N.D. Ill. 1982)*. These defenses require at least some direct or inferential allegations as to each element of the defense asserted. *See Builder's Bank, 2004 U.S. Dist. LEXIS 5016, 2004 WL 626827, at *5.* Courts have set forth specific pleading standards for the defenses of waiver, estoppel, and laches and have "consistently struck these defenses where they are insufficiently pled." *Id., at *6.* In addition, stringing together a list of legal defenses is not sufficient to satisfy *Rule 8(a).Id.* Shah has not provided the sufficient elements or allegations to establish these affirmative defenses. The Court grants the motion to strike affirmative defenses three through six and eight without prejudice.

C. Tenth and Eleventh Affirmative Defenses

Affirmative defense ten, intentional conduct, and eleven, apportionment of fault, in addition to being legal conclusions, [*10] are defenses which need not be plead to be proved. [HN6] Under federal law, affirmative defenses generally admit the matters in a complaint but nevertheless assert facts that would defeat recovery. *See, e.g., Bobbitt, 532 F. Supp. at 736.* Affirmative defense ten, intentional conduct, operates to reduce liability on a comparative fault basis or operates as a denial of liability altogether, and as such, does not qualify as an affirmative defense. *See Fed. Deposit Ins. Corp. v. Haines, 3 F. Supp. 2d 155, 166 (D. Conn. 1997).* Causation is necessarily an element of the Plaintiff's case in chief. *Id.* Likewise, affirmative defense eleven, apportionment of fault, is a denial and claim that others are responsible. [HN7] Matters that clearly are not affirmative defenses should be stricken. *See, e.g., Bobbitt, 532 F. Supp. at 737.* If the matter is put into issue by a denial, there is no need to insert a putative affirmative defense. *Id.* The Court grants the motion to strike affirmative defenses ten and eleven with prejudice.

D. Second and Thirteenth Affirmative Defenses

Affirmative defense two, declaratory relief, and thirteen, *Rule 11*, do not [*11] qualify as affirmative defenses. Affirmative defense two is a denial of responsibility and request for relief without details or allegations explaining why declaratory relief for Shah is warranted. [HN8] A declaratory request for declaratory relief is not a matter which constitutes an avoidance or

2004 U.S. Dist. LEXIS 9739, *11; 58 Fed. R. Serv. 3d (Callaghan) 864;
Copy. L. Rep. (CCH) P28,806

affirmative defense as set forth by *Rule 8(c)*. This affirmative defense is both unnecessary and inappropriate because the assertion is already put into issue by the denial in Shah's answer. *See, e.g., Renalds, 119 F. Supp. 2d. at 804* (collecting cases). Affirmative defense thirteen, alleging an unspecified violation of *Rule 11*, is improper and does not qualify as an affirmative defense. *Rule 11* requires that this allegation be brought as a separate motion at the appropriate time. *See Fed. R. Civ. P. 11(c)(1)(A)*. The Court grants the motion to strike affirmative defenses two and thirteen with prejudice.

E. Seventh and Twelfth Affirmative Defenses

Affirmative defense seven, failure to mitigate damages, may be a partial defense pled affirmatively. *See generally* 5 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure [*12] § 1273 (2d ed. 1990). The pleading sufficiently informs Bansal of the issue raised and it would be unreasonable to expect Shah to have detailed information about mitigation at this early stage of litigation. *See Cohn v. Taco Bell Corp., 1995 U.S. Dist. LEXIS 5532, No. 92-5852, 1995 WL 247996, at *5 (N.D. Ill. Apr. 24, 1995)*. Shah may be able to prove facts to support this defense. Likewise, affirmative defense twelve, set off, withstands the motion to strike. Shah may be able to prove facts to support this defense but, at this point in the litigation, Shah does not have access to information that would enable Shah to state such a defense with more particularity. In addition, set off raises an issue not raised in Shah's answer and places Bansal on notice of the potential defense. The Court denies the motion to strike affirmative defenses seven and twelve.

CONCLUSION

For the foregoing reasons, the motion to strike affirmative defenses one through six, eight through eleven and thirteen is granted. Affirmative defenses one, three through six, and eight through nine are stricken without prejudice. Affirmative defenses two, ten, eleven, and thirteen are stricken with prejudice. The motion to strike affirmative [*13] defenses seven and twelve is denied.

So Ordered.

Mark Filip

United States District Judge

Northern District of Illinois

Dated: May 27, 2004

LEXSEE 2002 US DIST LEXIS 4171



Cited
As of: May 20, 2008

**WAUSAU INSURANCE COMPANY, Plaintiff, v. WOODS EQUIPMENT
COMPANY a/k/a WOODS HOLDING CORPORATION, Defendants.**

**No. 01 C 8009**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION**

*2002 U.S. Dist. LEXIS 4171*

**March 13, 2002, Decided
March 14, 2002, Docketed**

**DISPOSITION:**      [*1]  Plaintiff's motion to strike
portions of defendant's answer granted. Plaintiff's motion
to strike affirmative defenses granted in part and denied
in part. Plaintiff's motion to dismiss counts III through VI
of defendant's counterclaim denied.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses,
Demurrers, & Objections > Denials*
*Civil Procedure > Pleading & Practice > Pleadings >
Cross-Claims > General Overview*
[HN1] When providing answers to a complaint a, party
shall state in short and plain terms and shall admit or
deny the averments upon which the adverse party relies.
*Fed. R. Civ. P. 8(b)*. Denials shall fairly meet the
substance of the averments denied. When a pleader
intends to deny only part or a qualification of an
averment, the pleader shall specify so much of it as is true
and material and shall deny only the remainder. *Fed. R.
Civ. P. 8(b)*.

*Civil Procedure > Pleading & Practice > Defenses,
Demurrers, & Objections > Affirmative Defenses*

[HN2] *Fed. R. Civ. P. 8(c)* requires a party to set forth
affirmative defenses in a responsive pleading.

*Civil Procedure > Pleading & Practice > Defenses,
Demurrers, & Objections > Defects of Form*
*Civil Procedure > Pleading & Practice > Defenses,
Demurrers, & Objections > Motions to Strike > General
Overview*
[HN3] Under *Fed. R. Civ. P. 12(f)*, the court may order
stricken from any pleading any insufficient defense.
Generally, motions to strike affirmative defenses are
disfavored because they potentially serve only to cause
delay. Such motions are generally granted only when the
affirmative defenses are patently defective and could not
succeed under any circumstances.

*Civil Procedure > Pleading & Practice > Defenses,
Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Pleadings >
Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings >
Rule Application & Interpretation*
[HN4] Affirmative defenses, as pleadings, are subject to
the pleading requirements of the Federal Rules of Civil
Procedure. Therefore, affirmative defenses must set forth
a "short and plain statement." *Fed. R. Civ. P. 8(a)*. The

allegations must include either direct or inferential allegations respecting all material elements of the defense asserted. Narrated facts with bare legal conclusions are not sufficient.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*
[HN5] While the Federal Rules of Civil Procedure allow liberal pleadings, they do not allow a claimant to merely recite the standard for a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
[HN6] The right to amend one's affirmative defenses is not listed in *Fed. R. Civ. P. 8(c)* as an affirmative defense; and, pursuant to *Fed. R. Civ. P. 15(a)*, only the courts may grant leave to amend pleadings.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Failures to State Claims*
[HN7] In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. Dismissal is warranted only if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief.

*Governments > Fiduciary Responsibilities*
*Insurance Law > Claims & Contracts > Fiduciary Responsibilities*
[HN8] Generally, in Illinois, there is no fiduciary relationship between an insurer and an insured. However, a fiduciary duty may arise as a result of special circumstances of the parties' relationship. For example, where one party places trust in another so that the latter party gains influence and superiority over the former party or where a dominant party agrees to exercise its judgment on behalf of the servient party.

*Civil Procedure > Remedies > Equitable Accountings > General Overview*
*Governments > Fiduciary Responsibilities*
*Torts > Intentional Torts > Breach of Fiduciary Duty > General Overview*
[HN9] Generally, to sustain an action for an accounting under Illinois law, the complaint must allege the absence of an adequate remedy at law and at least on of the following: (1) a breach of a fiduciary relationship between the parties, (2) fraud, (3) a need for discovery, or (4) the existence of mutual accounts which are complex in nature. However, if an accounting is sought based on a breach of a fiduciary duty, the complaint need not allege an inadequate remedy at law.

**COUNSEL:** For WAUSAU INSURANCE COMPANY, plaintiff: James T. Barnes, Theodore Beloyeannis Bell, Ronald B Kowalczyk, Barnes, P.C., Chicago, IL.

For WOODS EQUIPMENT COMPANY, defendant: Carrie A. Durkin, Anne Lori Blume, James Gregory Argionis, Meckler, Bulger & Tilson, Chicago, IL.

For WOODS EQUIPMENT COMPANY, defendant: L James D'Agostino, Reed Smith LLp, Falls Church, VA.

For WOODS EQUIPMENT COMPANY, counter-claimant: Carrie A. Durkin, Anne Lori Blume, James Gregory Argionis, Meckler, Bulger & Tilson, Chicago, IL.

For WOODS EQUIPMENT COMPANY, counter-claimant: L James D'Agostino, Reed Smith LLp, Falls Church, VA.

For WAUSAU INSURANCE COMPANY, counter-defendant: James T. Barnes, Theodore Beloyeannis Bell, Ronald B Kowalczyk, Barnes, P.C., Chicago, IL.

**JUDGES:** JOHN W. DARRAH, United States District Judge.

**OPINION BY:** JOHN W. DARRAH

**OPINION**

**MEMORANDUM OPINION AND ORDER**

    Plaintiff, Wausau Insurance Company ("Wausau"),

brought suit against [*2] defendant, Woods Equipment Company ("Woods"), alleging Woods breached two insurance policies by failing to pay the premiums. Woods filed an answer, including eleven affirmative defenses and a counterclaim, alleging breach of contract, breach of fiduciary duty, and accounting regarding the same two insurance policies. Presently before this Court is Wausau's Motion to Strike Portions of Defendant's Answer and Affirmative Defenses and Motion to Dismiss Counts III Through VI of the Defendant's Counterclaims.

A. Motion to Strike Defendant's Answer

[HN1] When providing answers to a complaint a, "party shall state in short and plain terms ... and shall admit or deny the averments upon which the adverse party relies." *Fed. R. Civ. P. 8(b)*. "Denials shall fairly meet the substance of the averments denied. When a pleader intends ... to deny only part or a qualification of an averment, the pleader shall specify so much of it as is true and material and shall deny only the remainder." *Fed. R. Civ. P. 8(b)*.

In the instant case, Woods did not admit or deny Wausau's jurisdiction statement, answering that the paragraph contained "only legal conclusions to which no answer is required". Woods also [*3] answered paragraphs 8-14 and 16 of Wausau's complaint with the same general answer of:

> Woods admits that Wausau issued various policies of workers' compensation insurance from time to time and that said polices are written contracts that must be interpreted according to the terms and conditions contained therein. Woods further admits, on information and belief, that the insured was obligated to pay premiums on said policies and that the premiums were required to be calculated based upon the terms and conditions contained in said policies. Woods denies all of the allegations remaining in paragraph [paragraphs 9-14 and 16]....

Wausau argues that Woods' answer should be stricken because the above "form" answer does not properly admit or deny the allegations and Wausau is unable to determine what Wood is denying and admitting. Woods argues that the answers are sufficient

and that it was required to provide the "form" answer because Wausau did not attach a copy of the insurance policies to the complaint or quote the policy terms in the complaint. Because Wausau alleged conclusions and over-broad characterizations of the policies, Woods was required to be precise in its answers [*4] via the "form" answer.

A review of the complaint, as a whole, demonstrates that Wausau did identify the two insurance policies at issue. Furthermore, Woods is aware of the policies and their contents as demonstrated by Wausau's reliance on the same policies in its counterclaim and the attachment of said polices to its response to Wausau's Motion to Dismiss. Therefore, it was possible for Woods to answer the complaint without the continued use of its "form" response. The inclusion of the "form" response and the general denial of the remainder of each of the paragraphs does not clearly set forth what is denied and what is admitted. Accordingly, Wausau's Motion to Strike Woods Answer is granted. Woods is give twenty days from the date of this order to file an amended answer consistent with this order.

B. Motion to Strike Affirmative Defenses

[HN2] *Federal Rules of Civil Procedure 8(c)* requires a party to set forth affirmative defenses in a responsive pleading. *Fed. R. Civ. P. 8(c)*. [HN3] Under *Rule 12(f)*, "the court may order stricken from any pleading any insufficient defense." *Fed. R. Civ. P. 12(f)*. Generally, motions to strike affirmative defenses are disfavored because they potentially [*5] serve only to cause delay. *See Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989) (Heller)*. Such motions are generally granted only when the affirmative defenses are "patently defective and could not succeed under any circumstances." *Mobley v. Kelly Kean Nissan, Inc., 864 F. Supp. 726, 732 (N.D. Ill. 1993)*.

[HN4] Affirmative defenses, as pleadings, are subject to the pleading requirements of the Federal Rules of Civil Procedure. *See Heller, 883 F.2d at 1294*. Therefore, affirmative defenses must set forth a "short and plain statement." *Fed. R. Civ. Proc. 8(a)*. The allegations must include either direct or inferential allegations respecting all material elements of the defense asserted. Narrated facts with bare legal conclusions are not sufficient. *Renalds v. S.R.G. Restaurant Group, 119 F. Supp. 2d 800, 802 (N.D. Ill. 2000) (Renalds)*.

Woods' first affirmative defense states, "Wausau fails to state a claim and/or fails to state facts upon which the relief requested can be granted." This first defense is a recitation of the standard for a motion to dismiss under *Federal Rules of Civil Procedure* [*6] *12(b)(6)*. The defense identifies the legal theory without indicating how it is connected to the present case. [HN5] While the Federal Rules of Civil Procedure allow liberal pleadings, they do not allow a claimant to merely recite the standard for a motion to dismiss under *Rule 12(b)(6)*. *See Murphy v. White Hen Pantry Co., 691 F.2d 350, 353 (7th Cir. 1982)*; *Renalds, 119 F. Supp. 2d at 803-04*. Accordingly, Woods' first affirmative defense is stricken.

Woods' second and third affirmative defenses both claim that Wausau's claims are barred because of Wausau's breach of contract. Woods' counterclaim already addresses these issues. Therefore, these affirmative defenses are redundant of the existing counterclaims and are stricken. *See Trustees of the Will County Local 174 Carpenters Pension Fund v. F.V.E. & Assoc., Inc.*, 2001 WL 1298803 (N.D. Ill. Oct. 24, 2001) (striking affirmative defenses that were redundant to third-party complaint).

Woods' fourth, fifth, sixth, and seventh affirmative defenses over that Wausau's claims are barred by unclean hands, laches, estoppel, and failure of consideration, respectively. These defenses are proper affirmative [*7] defenses pursuant to *Rule 8(c)* and sufficiently place Wausau on notice of the defense. Accordingly, Plaintiff's Motion to Strike these affirmative defenses is denied. *See International Ins. Co. v. Caja Nacional De Ahorro Y Seguro*, 2001 WL 322005 (N.D. Ill. April 2, 2001).

Woods' eighth affirmative defense states, "The damages alleged in the complaint were caused by the sole, direct and active negligence, breach of duty, and acts or omissions of persons over which Woods had no control and for whom Woods is not responsible in law." This defense also is redundant of Woods' counterclaim and is, therefore, stricken.

Woods' ninth affirmative defense alleges that Wausau failed to mitigate its damages. This affirmative defense sufficiently puts Wausau on notice that one of Woods' affirmative defenses is Wausau's failure to mitigate damages and is not stricken. *See Tome Engenharia E. Transportes v. Malki, 1996 U.S. Dist. LEXIS 4585, 1996 WL 172286 (N.D. Ill. April 11, 1996)* (finding affirmative defense that "plaintiff has failed to

mitigate its damages" was sufficiently pled).

Woods' tenth affirmative defense alleges that Wausau's claims are barred by Wausau's failure to perform the [*8] conditions precedent of the contracts. This defense also is redundant of Woods' counterclaim and is stricken.

Woods' eleventh affirmative defense states, "Woods expressly reserves its [HN6] right to amend its affirmative defenses to add at any time any affirmative defense not expressly stated herein." This is an improper affirmative defense. It is not listed in *Rule 8(c)* as an affirmative defense; and, pursuant to *Rule 15(a)*, only the courts may grant leave to amend pleadings. Accordingly, this affirmative defense is stricken.

Based on the above, Woods' first, second, third, eighth, tenth, and eleventh affirmative defenses are stricken.

C. Motion to Dismiss

[HN7] In reviewing a motion to dismiss, the court reviews all facts alleged in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326 (7th Cir.2000)*. Dismissal is warranted only if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *See Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)*.

A reading of Woods' counterclaim supports the following [*9] summary of the alleged conduct of the parties.

Wausau issued a policy of workers' compensation insurance to Woods, policy number 0716-00-063046, that was in effect for the period of April 30, 1995 through April 30, 1996. Wausau also issued a policy of workers' compensation insurance to Woods, policy number 0176-00-063046, that was in effect from April 30, 1996 through April 30, 1997.

Pursuant to these policies, Wausau was obligated to pay claims made by any workers' compensation claimant covered by the terms and conditions of the workers' compensation policies. The amounts paid and held in reserve by Wausau were an element in the calculation of Woods' workers' compensation premiums for each of the

policies. For every dollar Wausau reserved under the policies, the retroactive premium it charged to Woods would increase significantly. Wausau was contractually obligated to handle Woods' workers' compensation claims in such a manner as to minimize the amount of said payments. Wausau breached this duty in the handling of two claims by two of Woods' employees which resulted in excessive and unreasonable charges to Woods for retroactive workers' compensation premiums.

Counts III and IV [*10] of Woods' counterclaim allege that Wausau breached its fiduciary duty to Woods and each of the insurance policies. Wausau seeks to dismiss these claims, arguing that no fiduciary relationship exists between an insured and insurer in Illinois. Both parties agree that Illinois is the correct law to apply to the claims.

[HN8] Generally, in Illinois, there is no fiduciary relationship between an insurer and an insured. *See Overbey v. Illinois Farmers Ins. Co., 170 Ill. App. 3d 594, 605, 121 Ill. Dec. 769, 525 N.E.2d 1076 (1988)*; *Robacki v. Allstate Ins. Co., 127 Ill. App. 3d 294, 296-97, 82 Ill. Dec. 471, 468 N.E.2d 1251 (1984)*. However, a fiduciary duty may arise as a result of special circumstances of the parties' relationship. For example, where one party places trust in another so that the latter party gains influence and superiority over the former party or where a dominant party agrees to exercise its judgment on behalf of the servient party. *See Ransom v. A.B. Dick Co., 289 Ill. App. 3d 663, 672, 224 Ill. Dec. 753, 682 N.E.2d 314 (1997)*; *see also Douglas v. Allied American Ins., 312 Ill. App. 3d 535, 543, 245 Ill. Dec. 123, 727 N.E.2d 376 (2000)* ("An insurance company has a fiduciary duty to defend its insured and to consider the insured's interest.").

[*11] As set forth above, Woods alleges that an element of the calculation of its premiums paid to Wausau was the amount paid and held in reserve by Wausau and could increase the premium significantly. Wausau also alleged that the mishandling of two workers' compensation claims resulted in excessive and unreasonable charges to Woods for the workers'

compensation so increased premiums were paid to Wausau.

The above allegations sufficiently plead a fiduciary relationship at this stage of the litigation.

Counts V and VI of Woods' counterclaim seek an accounting. Wausau argues that these counts should be dismissed because Woods has failed to allege that no adequate remedy at law exists.

[HN9] Generally, to sustain an action for an accounting under Illinois law, the complaint must allege the absence of an adequate remedy at law and at least on of the following: (1) a breach of a fiduciary relationship between the parties, (2) fraud, (3) a need for discovery, or (4) the existence of mutual accounts which are complex in nature. *Hartigan v. Candy Club, 149 Ill. App. 3d 498, 501, 103 Ill. Dec. 167, 501 N.E.2d 188 (1986) (Hartigan); Homestead Ins. Co. v. Chicago Transit Authority, 1997 U.S. Dist. LEXIS 716, 1997 WL 43232* (N.D. [*12] Ill. Jan. 23, 1997) *(Homestead)*. However, if an accounting is sought based on a breach of a fiduciary duty, the complaint need not allege an inadequate remedy at law. *Hartigan, 149 Ill. App. 3d at 501; Homestead, 1997 U.S. Dist. LEXIS 716, 1997 WL 43232* at *2.

Here, Woods seeks an accounting based on the alleged breach of a fiduciary duty. Accordingly, the accounting claims are sufficiently pled.

For the foregoing reasons, Wausau's Motion to Strike Portions of Defendant's Answer is granted; Wausau's Motion to Strike Affirmative Defenses is granted in part and denied in part; and Wausau's Motion to Dismiss Counts III Through VI of the Defendant's Counterclaim is denied.

Dated: March 13, 2002

JOHN W. DARRAH

United States District Judge

4 of 100 DOCUMENTS



Caution
As of: May 20, 2008

**INTERNATIONAL INSURANCE COMPANY, Plaintiff, v. CAJA NACIONAL DE AHORRO Y SEGURO, Defendant.**

**No. 00 C 6703**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2001 U.S. Dist. LEXIS 3465*

**March 22, 2001, Decided
March 23, 2001, Docketed**

**LexisNexis(R) Headnotes**

*Business & Corporate Law > Foreign Businesses > General Overview*
*Civil Procedure > Judgments > General Overview*
*International Law > Immunity > General Overview*
[HN1] Under Illinois insurance law, a foreign or alien company is required to file a pre-judgment security with the court that is sufficient to secure the payment of any final judgment that may be rendered prior to filing any pleadings with the court. *215 Ill. Comp. Stat. 5/123(5)*. However, the Foreign Sovereign Immunities Act, 28 U.S.C.S. 1600 et seq., provides foreign states immunity from filing pre-judgment security. *28 U.S.C.S. § 1609*.

*International Law > Immunity > Foreign Sovereign Immunities Act > General Overview*
[HN2] See *28 U.S.C.S. § 1609*.

*Civil Procedure > Alternative Dispute Resolution > General Overview*
*International Law > Dispute Resolution > Arbitration & Mediation > General Overview*
*International Trade Law > Dispute Resolution >*

*Convention on the Recognition & Enforcement of Foreign Arbitral Awards*
[HN3] In September 1970, the United States acceded to The Convention on the Recognition and Enforcement of Foreign Arbitration Awards, commonly known as the New York Convention, and incorporated into law by *9 U.S.C.S. § 201 et seq.*

*Civil Procedure > Alternative Dispute Resolution > General Overview*
*Contracts Law > Contract Conditions & Provisions > Arbitration Clauses*
*International Law > Dispute Resolution > Arbitration & Mediation > Agreements*
[HN4] The purpose of the Convention on the Recognition and Enforcement of Foreign Arbitration Awards (the New York Convention) (incorporated into law by *9 U.S.C.S. § 201 et seq.*) was to effectuate arbitration proceedings and their enforcement in international contracts and to unify the standards by which arbitration agreements are observed and arbitration awards are enforced. Article VI of the New York Convention allows the court to order a party denying enforcement of an award to give suitable security if an application for the setting aside or suspension of the award has been made. *9 U.S.C.S. § 201*.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Defects of Form*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*
[HN5] *Fed. R. Civ. P. 8(c)* requires a party to set forth affirmative defenses in a responsive pleading. Under *Fed. R. Civ. P. 12(f)*, the court may order stricken from any pleading any insufficient defense. Generally, motions to strike affirmative defenses are disfavored because they potentially serve only to cause delay. Such motions are generally granted only when the affirmative defenses are patently defective and could not succeed under any circumstances.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN6] Affirmative defenses, as pleadings, are subject to the pleading requirements of the Federal Rules of Civil Procedure. Therefore, affirmative defenses must set forth a short and plain statement. *Fed. R. Civ. P. 8(a)*. The allegation must include either direct or inferential allegations respecting all material elements of the defense asserted. Narrated facts with bare legal conclusions are not sufficient.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Foreign Arbitral Awards*
*Civil Procedure > Alternative Dispute Resolution > Validity of ADR Methods*
*Contracts Law > Defenses > General Overview*
[HN7] Under the Convention on the Recognition and Enforcement of Foreign Arbitration Awards (incorporated into law by *9 U.S.C.S. § 201 et seq.*), an award may be vacated if: (1) the parties to the agreement were under some incapacity or the agreement was not valid under the applicable law; (2) the party to whom the award is invoked was not given proper notice of the arbitration proceedings; (3) the award deals with a difference not contemplated by the parties or not falling within the terms of the arbitration; (4) the arbitration panel was not in accordance with the agreement or applicable laws; (5) the award is not yet binding on the parties or has been set aside; (6) the subject matter of the difference is not capable of settlement by arbitration

under the applicable law; or (7) the recognition or enforcement of the award would be contrary to public policy of that country. *9 U.S.C.S. § 201, art. 5.*

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > Foreign Arbitral Awards*
*International Law > Dispute Resolution > Arbitration & Mediation > Awards*
*International Trade Law > Dispute Resolution > Convention on the Recognition & Enforcement of Foreign Arbitral Awards*
[HN8] The grounds for vacating an arbitration award under the Inter-American Convention on International Commercial Arbitration are essentially the same as those for the Convention on the Recognition and Enforcement of Foreign Arbitration Awards (incorporated into law by *9 U.S.C.S. § 201 et seq.*). *9 U.S.C.S. § 301*, art. 5.

*Civil Procedure > Alternative Dispute Resolution > Arbitrations > General Overview*
*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
*Criminal Law & Procedure > Defenses > General Overview*
[HN9] Pursuant to the Federal Arbitration Act (FAA), an arbitration award may be vacated if: (1) the award was procured by corruption, fraud, or undue means; (2) there was evidence of partiality or corruption in the arbitrators; (3) the arbitrators were guilty of certain types of misconduct; or (4) the arbitrators exceeded their powers. *9 U.S.C.S. § 10(a)(1)-(5)*. An arbitration award may be modified under the FAA if: (1) there is evidence of material miscalculation or mistake in the description of any person, thing, or property referred to in the award; or (2) the arbitrators awarded on a subject not before them; or (3) the award is imperfect in matter of form not affecting the merits of the controversy. *9 U.S.C.S. § 11(a)-(c)*.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
[HN10] While the Federal Rules of Civil Procedure allow liberal pleadings, they do not allow a claimant to merely recite the standard for a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)* as an affirmative defense.

*Civil Procedure > Alternative Dispute Resolution >*

*Arbitrations > General Overview*
*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
*Insurance Law > Claims & Contracts > Arbitration*
[HN11] Defenses related to coverage under insurance policies do not fall within any of the categories for the vacation or modification of an arbitration award.

*Civil Procedure > Alternative Dispute Resolution > Judicial Review*
*Governments > Legislation > Statutes of Limitations > Waivers*
[HN12] The defenses of the statute of limitations, laches, waiver, estoppel, and unclean hands, may not fall within grounds for vacating an arbitration award, but they may be defenses to the plaintiff's suit for enforcement.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > Leave of Court*
*Civil Procedure > Pleading & Practice > Pleadings > Answers*
[HN13] *Fed. R. Civ. P. 15(a)* allows the courts to grant leave to amend pleadings. This rule applies to answers and affirmative defenses as well as complaints.

**COUNSEL:**    [*1]    For INTERNATIONAL INSURANCE COMPANY, plaintiff: James I. Rubin, Renton Douglass Bond, Randi L. Ellias, Butler, Rubin, Saltarelli & Boyd, Chicago, IL.

For CAJA NACIONAL DE AHORRO Y SEGURO, defendant: Richard M. Clark, Richard J. Rettberg, McKenna, Storer, Rowe, White & Farrug, Chicago, IL.

For CAJA NACIONAL DE AHORRO Y SEGURO, defendant: Jorge W. Moreira, Jorge W. Moreira, Esq. Law Offices, New York, NY.

**JUDGES:** JOHN W. DARRAH, United States District Judge.

**OPINION BY:** JOHN W. DARRAH

**OPINION**

**MEMORANDUM OPINION AND ORDER**

  In October, 2000, an arbitration panel awarded plaintiff, International Insurance Company, an award of $ 4,702,428.12 against defendant, Caja Nacional De Ahorro Y Seguro. Later that month, plaintiff filed a petition for confirmation of the arbitration award, and defendant subsequently filed an answer to such petition. Before the Court is plaintiff's motion for an order requiring defendant to post a pre-judgment security and to strike defendant's answer and affirmative defenses.

  Plaintiff is a domestic insurance company that purchased reinsurance from defendant, an alien insurance and reinsurance company headquartered in Argentina. Pursuant to two reinsurance contracts [*2] between the parties, plaintiff initiated an arbitration due to defendant's failure to pay plaintiff over $ 2 million in indemnity obligations. Defendant failed to appear at the arbitration, and the arbitration panel entered a final default award against defendant.

  Plaintiff argues that defendant's answer to the petition for confirmation of the arbitration award should be stricken because defendant failed to post a security prior to filing the answer as required by Illinois Insurance Code. Defendant argues that, as an instrumentality of a foreign government, it is not required to post a security pursuant to the Foreign Sovereign Immunities Act, 28 U.S.C. 1600 *et seq.* (FSIA).

  [HN1] Under Illinois insurance law, a foreign or alien company is required to file a pre-judgment security with the court that is sufficient to secure the payment of any final judgment that may be rendered prior to filing any pleadings with the court. *215 ILCS 5/123(5).* However, the FSIA provides foreign states immunity from filing pre-judgment security. *See 28 U.S.C. § 1609*; *Stephens v. National Distillers & Chemical Corp., 69 F.3d 1226, 1230 (2nd Cir. 1995)* [*3] *(Stephens).* Section *1609* of the FSIA provides that:

> [HN2] Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property of the United States or a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of the chapter.

Defendant, relying on *Stephens*, alleges that as an

instrumentality of a foreign state, it is not required to post a security under the Illinois Insurance Code because the posting of such security is considered a pre-judgment attachment. *See Stephens, 69 F.3d at 1229* (finding the posting of a security bond under New York insurance law constituted a pre-judgment attachment for purposes of the FSIA).

*Section 1609* of the FSIA specifically states that the provision is "subject to existing international agreements." [HN3] In September, 1970, the United States acceded to The Convention on the Recognition and Enforcement of Foreign Arbitration Awards, commonly known as the New York Convention, and incorporated into law by *9 U.S.C. § 201 et seq. See Publicis Communication v. True North Communications Inc., 206 F.3d 725, 728 (7th Cir. 2000).* [*4] The FSIA was enacted in October of 1976; therefore, the New York Convention was an existing international agreement at the time the FSIA was enacted. Both the United States and Argentina are signatories of the New York Convention.

[HN4] The purpose of the New York Convention was to effectuate arbitration proceedings and their enforcement in international contracts and to unify the standards by which arbitration agreements are observed and arbitration awards are enforced. *See Scherk v. Alberto-Culver Co., 417 U.S. 506, 520, 41 L. Ed. 2d 270, 94 S. Ct. 2449 (1974).* Article VI of the New York Convention allows this Court to order a party denying enforcement of an award to "give suitable security" if an application for the setting aside or suspension of the award has been made. *See 9 U.S.C. § 201; Skandia America Reinsurance Corp. v. Caja Nacional De Ahorro Y Segoro, 1997 U.S. Dist. LEXIS 7221, 1997 WL 278054,* No. 96 C 2301 (S.D.N.Y. May 23, 1997) (*Skandia*). Importantly, *Stephens*, relied upon by the defendant as discussed above, did not involve an arbitration award; and the *Stephens* court specifically stated that there was no relevant treaty that predated [*5] the FSIA or that would preempt the provision of the FSIA. *Stephens, 69 F.3d at 1229.*

Here, plaintiff filed a petition for the confirmation of the arbitration award, and defendant filed an answer indicating that it lacked knowledge and information to form a belief as to any of the allegations made against it. Defendant also filed 26 affirmative defenses, alleging, in part, that coverage is barred for numerous reasons and that plaintiff's claims are barred by several doctrines, *i.e.*, waiver, estoppel, and unclean hands. Defendant has also failed to pay the arbitration award. Therefore, the Court finds that defendant has in effect moved to suspend or set aside the award, and Article VI of the New York Convention applies to the present case. *See Skandia, 1997 U.S. Dist. LEXIS 7221, 1997 WL 278054* at *5 (finding respondents in effect moved to suspend the award based on respondent's failure to pay the award and responsive pleadings).

Accordingly, pursuant to the New York Convention, defendant is not immune from the posting requirement of the Illinois Insurance Law. Defendant's answer and affirmative defenses are stricken. Plaintiff is ordered to post adequate security in an [*6] amount no less than $ 4,702,428.12 before filing a new answer and any affirmative defenses pursuant to the Illinois Insurance Code.

Plaintiff also seeks to strike all of defendant's affirmative defenses because they do not constitute grounds to vacate the arbitration award under the applicable statutes and/or treaties. While the security issue addressed above is dispositive, in the interest of judicial economy, the issue regarding defendant's affirmative defenses will be addressed to aid defendant in the event security and a valid answer are filed.

[HN5] *Federal Rules of Civil Procedure 8(c)* requires a party to set forth affirmative defenses in a responsive pleading. *Fed. R. Civ. P. 8(c)*. Under *Rule 12(f)*, "the court may order stricken from any pleading any insufficient defense." *Fed. R. Civ. P. 12(f)*. Generally, motions to strike affirmative defenses are disfavored because they potentially serve only to cause delay. *See Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989)* (*Heller*). Such motions are generally granted only when the affirmative defenses are "patently defective and could not succeed under any circumstances." *Mobley v. Kelly Kean Nissan, Inc., 864 F. Supp. 726, 732 (N.D.Ill. 1993).* [*7]

[HN6] Affirmative defenses, as pleadings, are subject to the pleading requirements of the Federal Rules of Civil Procedure. *See Heller, 883 F.2d at 1294.* Therefore, affirmative defenses must set forth a "short and plain statement." *Fed. R. Civ. Proc. 8(a).* The allegation must include either direct or inferential allegations respecting all material elements of the defense asserted. Narrated facts with bare legal conclusions are

not sufficient. *Renalds v. S.R.G. Restaurant Group, 119 F. Supp. 2d 800, 802 (N.D.Ill. 2000)* (*Renalds*).

In the present case, plaintiff seeks enforcement of an arbitration award. Therefore, defendant's affirmative defenses must be related to the modification or vacation of an arbitration award. [HN7] Under the New York Convention, an award may be vacated if: (1) the parties to the agreement were under some incapacity or the agreement was not valid under the applicable law; (2) the party to whom the award is invoked was not given proper notice of the arbitration proceedings; (3) the award deals with a difference not contemplated by the parties or not falling within the terms of the arbitration; (4) the arbitration panel was not in accordance [*8] with the agreement or applicable laws; (5) the award is not yet binding on the parties or has been set aside; (6) the subject matter of the difference is not capable of settlement by arbitration under the applicable law; or (7) the recognition or enforcement of the award would be contrary to public policy of that country. *9 U.S.C. § 201*, art. 5. [HN8] The grounds for vacating an arbitration award under the Inter-American Convention on International Commercial Arbitration are essentially the same as those stated above for the New York Convention. *See 9 U.S.C. § 301*, art. 5.

[HN9] Pursuant to the Federal Arbitration Act (FAA), an arbitration award may be vacated if: (1) the award was procured by corruption, fraud, or undue means; (2) there was evidence of partiality or corruption in the arbitrators; (3) the arbitrators were guilty of certain types of misconduct; or (4) the arbitrators exceeded their powers. *9 U.S.C. § 10 (a)(1)-(5)*. An arbitration award may be modified under the FAA if: (1) there is evidence of material miscalculation or mistake in the description of any person, thing, or property referred to in the award; (2) [*9] or the arbitrators awarded on a subject not before them; or (3) the award is imperfect in matter of form not affecting the merits of the controversy. *9 U.S.C. § 11 (a)-(c)*.

I. Affirmative Defense No. 1.

Defendant's first affirmative defense states, "The petition fails to state facts sufficient to allege claims against Caja upon which relief may be granted." This first defense is a recitation of the standard for a motion to dismiss under *Federal Rules of Civil Procedure 12(b)(6)*. The defense identifies the legal theory without indicating how it is connected to the present case. [HN10] While the

Federal Rules of Civil Procedure allow liberal pleadings, they do not allow a claimant to merely recite the standard for a motion to dismiss under *Rule 12(b)(6)*. *See Murphy v. White Hen Pantry Co., 691 F.2d 350, 353 (7th Cir. 1982)*; *Renalds, 119 F. Supp. 2d at 803-04*. Accordingly, defendant's first affirmative defense is stricken.

II. Affirmative Defenses Nos. 2-7 and 10-19

Defendant's affirmative defenses numbered 2-7 and 10-19 can be categorized as [HN11] defenses related to coverage under the policies. As written, and interpreted broadly, [*10] these defenses do not fall within any of the categories for the vacation or modification of an award. Defendant cannot make arguments related to the coverage of the policies. The affirmative defenses to the applicable coverage should have been made at the time of arbitration, not during proceedings for the enforcement of the arbitration award. Accordingly, affirmative defenses 2-7 and 10-19 are stricken.

III. Affirmative Defenses Nos. 8 and 9

Defendant's affirmative defenses numbered 8 and 9 argue that liability is barred for public policy reasons. These grounds are included in the applicable statutes and are not stricken. *See 9 U.S.C. § 201*, art. 5(2)(b); *9 U.S.C. § 301*, art. 5(2)(b).

IV. Affirmative Defenses Nos. 20-25

Defendant's affirmative defenses numbered 20-25 aver that plaintiff's claims are barred by the statute of limitations, laches, waiver, estoppel, and unclean hands. While [HN12] these defenses may not fall within grounds for vacating the arbitration, they may be defenses to plaintiff's suit for enforcement. Accordingly, affirmative defenses 20-25 are not stricken.

V. Affirmative Defense No. 26

Defendant's 26th [*11] affirmative defense reserves the right to amend its answer to assert any additional affirmative defenses as may become apparent through discovery. This is a proper affirmative defense under [HN13] *Rule 15(a)*, which allows the courts to grant leave to amend pleadings. This Rule applies to answers and affirmative defenses as well as complaints. *See Renalds, 119 F. Supp. 2d at 803*. Accordingly, affirmative defense 26 is not stricken.

Dated: 3-22-01

JOHN W. DARRAH

United States District Judge

**JUDGMENT IN A CIVIL CASE**

IT IS HEREBY ORDERED AND ADJUDGED that Defendant's 26th affirmative defense reserves the right to amend its answer to assert any additional affirmative defenses as may become apparent through discovery.

This is a proper affirmative defense under *Rule 15(a)*, which allows the courts to grant leave to amend pleadings. This Rule applies to answers and affirmative defenses as well as complaints. See *Renalds, 119 F. Supp. 2d at 803*. Accordingly, affirmative defense 26 is not stricken.

Date: 3/22/2001

LEXSEE 2006 U.S. DIST LEXIS 6997



Analysis
As of: May 20, 2008

**IBRIHAM KISWANI, Plaintiff, v. PHOENIX SECURITY AGENCY, INC.; MARCELINO RENTARIA, individually and as agent of PHOENIX SECURITY AGENCY, INC.; OFFICER AARON CUNNINGHAM; OFFICER ANGEL CAHUE; OFFICER DOE No.1; OFFICER DOE No. 2; and the CITY OF CHICAGO, Defendants.**

**05 C 4559**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

*2006 U.S. Dist. LEXIS 6997*

**February 22, 2006, Decided**

**SUBSEQUENT HISTORY:** Partial summary judgment granted by, Motion to strike granted by, in part *Kiswani v. Phoenix Sec. Agency, Inc., 2008 U.S. Dist. LEXIS 235 (N.D. Ill., Jan. 2, 2008)*

**COUNSEL:** [*1] For Ibrihim Kiswani, Plaintiff: John Thomas Moran, Erron Fisher, John T. Moran & Associates, Chicago, IL.

For Phoenix Security Agency, Inc., Marcelino Renteria, individually and as agent of Phoenix Secuirty Agency, Inc., Defendants: Patrick John Ruberry, Dowd & Dowd, Ltd, Chicago, IL.; Matthew R Link, Attorney at Law, Chicago, IL.

For Officer Aaron Cunningham, Badge No. 15522, individually, Officer Angel Cahue, individually, # 1 Officer Doe, Star 42, individually, Lt. Edward Flynn, Captain Fred Konet, Sgt. McKendrick, Police Officer L. Rameriz, Defendants: Jonathan Clark Green, Chicago Corporation Counsel, Chicago, IL.

# 2 Officer Doe, Star 366, individually, Defendant, Pro se.

For The City of Chicago, an Illinois Municipal corporation, Defendant: Diane S. Cohen, City of Chicago, Law Department, Corporation Counsel, Chicago, IL.; Mara Stacy Georges, City of Chicago Department of law, Chicago, IL.; Penelope George, City of Chicago Law Department, Chicago, IL.

**JUDGES:** JOHN W. DARRAH, United States District Court Judge.

**OPINION BY:** JOHN W. DARRAH

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Ibriham Kiswani, filed suit, against Defendants, alleging civil conspiracy against [*2] the City of Chicago (Count I), civil conspiracy against Officer Angel Cahue (Count II), civil conspiracy against Marcelino Rentaria (Count III), malicious prosecution against Rentaria (Count IV), malicious prosecution against Phoenix Security Agency (Count V), malicious prosecution against the City (Count VI), malicious prosecution against Aaron Cunningham (Count VII), false arrest against the City (Count VIII), false arrest

against Rentaria (Count IX), false arrest against Phoenix (Count X), violation of due process against the City (Count XI), liability against the City pursuant to *745 ILCS 10/9-102* (Count XII), and deprivation of property against the City (Count XIII). Currently before the Court is the City's Motion to Dismiss Counts I, VI, VIII, XI, and XIII and Plaintiff's Motion to Strike Affirmative Defenses From the Answer of Defendants Phoenix Security Agency and Rentaria.

## BACKGROUND

A reading of Plaintiff's First Amended Complaint supports the following summary of the alleged conduct of the parties.

On July 17, 1997, Abdul Kiswani, Plaintiff's brother, and James Travis incorporated Phoenix Security Agency. From that date and into 2003, Plaintiff was employed by Phoenix. [*3] On December 1, 2001, Phoenix was subject to involuntary dissolution. At all times after this involuntary dissolution, Phoenix continued operating as if dissolution had not occurred.

On June 9, 2003, without Plaintiff's knowledge, Travis reincorporated Phoenix, using the same name but excluding Abdul. Sometime in 2003, Travis terminated Plaintiff's and Abdul's employment with Phoenix. At that time, Travis falsely accused Plaintiff and Abdul of stealing from Phoenix.

On April 5, 2002, Plaintiff filed articles of incorporation for "501 Kedzie Corporation." The purpose of 501 Kedzie was to own and operate a nightclub/bar at 2501 South Kedzie, Chicago, Illinois. The name of the nightclub was "Faran Nightclub." On September 9, 2003, the City issued licenses to 501 Kedzie. These licenses permitted the sale of alcohol for consumption on the premises. The licenses identify Plaintiff as the President of 501 Kedzie. The licenses were renewed and given an expiration date of August 15, 2005.

In July 2004, Plaintiff was employed by National Security Agency, a business providing security services to commercial, residential, and industrial clients. Plaintiff is currently the President of National. [*4] In July 2004, Plaintiff was in possession of a valid Firearm Owner Identification Card and a valid security contractor's license, which authorized him to carry a weapon.

Approximately three weeks prior to July 29, 2004,

Rentaria expressed to Leon Davilo his desire to have Plaintiff arrested. Rentaria told Davilo that he had some friends from his neighborhood that were Chicago Police Officers and that they were going to assist him in setting up Plaintiff for arrest. Rentaria is a Chicago Police Officer and a personal friend of Officer Cahue.

On or about July 28, 2004, a Phoenix employee was arrested by the Chicago Police Department at a McDonald's at the intersection of Warren and Western Avenue. The Phoenix employee, who did not have a card or any other documentation enabling him to lawfully carry a weapon, was arrested for carrying a concealed weapon without a permit. Travis and Phoenix mistakenly believed that Plaintiff had alerted the City of this violation.

Prior to July 31, 2004, Officer Cahue repeatedly entered Faran Nightclub at the request of Travis or Rentaria to arrest or harass Plaintiff for unknown violations. Plaintiff was not present during these visits.

On July 31, 2004, Plaintiff [*5] was scheduled to work as a licensed security guard from 10:00 p.m. to 4:00 a.m. the following morning at Hilliard Towers at 2030 South Street, Chicago, Illinois. Plaintiff was required to be armed. Shortly before 9:00 p.m., Plaintiff received a phone call from Amelia Lopex, a bar manager at Faran. Lopez told Plaintiff that she would be arriving at work soon so Plaintiff could report to work at Hilliard Towers. In preparation for his security assignment, Plaintiff went to his office at Faran and put on his weapon, handcuffs, uniform, and ammunition magazines.

At some point in the evening of July 31, 2004, Rentaria telephoned Officer Cahue to alert Officer Cahue that Plaintiff had arrived at Faran. After speaking with Rentaria, Officer Cahue telephoned Officer Cunningham, who was off duty. Officer Cahue informed Officer Cunningham that Plaintiff was at Faran and that Rentaria was waiting on the corner to identify Plaintiff. Officer Cunningham proceeded to Faran and met Rentaria outside the nightclub. After meeting with Rentaria, Cunningham went to the door of Faran where Plaintiff was seated in a chair on the doorstep. Cunningham approached Plaintiff and told Plaintiff that he was under [*6] arrest. Plaintiff surrendered his weapon, which he was authorized to carry, without incident.

As part of his investigation, Officer Cunningham entered Faran to check the liquor license. Officer

Cunningham was presented with a valid license that identified Plaintiff as President and Secretary of the license. Officer Doe No. 1 signed an arrest report, giving approval to a finding of probable cause. Officer Doe No. 2 signed the arrest report, approving charges against Plaintiff. Officers Doe No. 1 and Doe No. 2 are employed by the City. Officer Cunningham also searched Plaintiff's vehicle and removed a ring from Plaintiff's vehicle without Plaintiff's permission.

Following his arrest, several Defendants presented false statements in support of a finding of probable cause for the arrest and detention of Plaintiff. On March 10, 2005, the criminal case against Plaintiff was terminated in Plaintiff's favor.

Subsequently, Plaintiff filed the instant suit. In their Answer to Plaintiff's Second Amended Complaint, Phoenix and Rentaria, raised the following affirmative defenses:

1. That Plaintiff's complaint fails to state a cause of action for civil conspiracy, malicious prosecution, [*7] and false arrest.

2. Punitive damages are not recoverable for the state law claims of civil conspiracy, malicious prosecution, and false arrest.

3. Plaintiff's request for punitive damages would deprive defendants of due process of law in violation of the *Fifth* and *Fourteenth Amendments of the United States Constitution* in that: (a) Liability for punitive damages would not be proven beyond a reasonable doubt or at least by clear and convincing evidence; (b) An award of punitive damages is disproportionate to actual damages.

4. Any award of punitive damages would constitute an excessive fine violation of the *Eighth Amendment's* prohibition of excessive fines and penalties.

5. Any injuries of damages claimed by the Plaintiff against Defendants were caused, in whole or in part, by his

negligent, willful and wanton conduct. Even if Defendants are found liable in damages, the total amount of damages to which the Plaintiff would otherwise be entitled must be reduced by the application of principles of comparative fault in proportion to the amount of willful, wanton, intentional and negligent conduct of the Plaintiff that was the proximate cause of his alleged injuries. [*8]

6. Plaintiff failed to mitigate his damages.

## ANALYSIS

### Motion to Dismiss

In reviewing a motion to dismiss, the court reviews all allegations in the complaint and any inferences reasonably drawn therefrom in the light most favorable to the plaintiff. *Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326 (7th Cir. 2000)*. A plaintiff is not required to plead the facts or the elements of a claim, with the exceptions found in *Federal Rules of Civil Procedure 9. See Swierkiewicz v. Sorema, 534 U.S. 506, 511, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002) (Swierkiewicz); Walker v. Thompson, 288 F.3d 1005, 1010 (7th Cir. 2002)*. A filing under the Federal Rule of Civil Procedure need not contain all the facts that will be necessary to prevail. It should be "short and plain," and it suffices if it notifies the defendant of the principal events. *See Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003)*. Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of its claims that would entitle it to relief." *Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)*. [*9] The "suit should not be dismissed if it is possible to hypothesize the facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill., 58 F.3d 295, 297 (7th Cir. 1995)*. The simplified notice pleading relies upon liberal discovery and summary of motions to define disputed issues and facts and to dispose of unmeritorious claims. *See Swierkiewicz, 534 U.S. at 513*.

The City argues that Plaintiff's *Section 1983* claims -- Counts I, VI, VIII, XI, and XIII -- should be dismissed because Plaintiff failed to plead a custom, policy practice

as required by *Monell v. Department of Social Serv., 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) (Monell)*.

A local governmental entity is liable for damages under *Section 1983* only if a plaintiff can show that the alleged constitutional deprivation occurred as a result of an official policy, custom, or practice. *See Monell, 436 U.S. at 692*. Unconstitutional policies or customs generally take three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express [*10] municipal policy, is so permanent and well settled as to constitute a usage or custom with the force of law; or (3) a constitutional injury was caused by a person with final policy-making authority. *Brokaw v. Mercer County, 235 F.3d 1000, 1013 (7th Cir.2000)*. A municipality may also be found liable under *Section 1983* if the municipality fails to provide adequate training where this failure to train amounts to a deliberate indifference to the rights of the persons with whom the police come into contact. *See City of Canton v. Harris, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); Dunn v. City of Elgin, 347 F.3d 641, 646 (7th Cir. 2003); Atchinson v. District of Columbia, 315 U.S. App. D.C. 318, 73 F.3d 418, 423 (D.C. 1996)*.

Here, Plaintiff's Second Amended Complaint alleges that the City failed to adequately train, supervise or control the police officers named in the Complaint, resulting in the injuries to Plaintiff. The City claims that a municipality must be the "moving force" directly causing the alleged injury before the municipality may be held liable. *See Hulbert v. Wilhelm, 120 F.3d 648, 656 (7th Cir. 1997)*. However, ultimate liability [*11] of the City is not now the issue. Plaintiff sufficiently pleads a *Section 1983* cause of action to withstand dismissal at this stage of the proceedings. *See Swierkiewicz, 534 U.S. at 511* (plaintiff need not plead facts or elements of the claim); *Johnson v. Sheahan, 2005 U.S. Dist. LEXIS 25226, 2005 WL 2739183 (N.D. Ill. Oct. 24, 2005)* (denying dismissal of *Section 1983* claim for failure to plead *Monell* elements).

Based on the above, the City's Motion to Dismiss is denied.

**Motion to Strike Affirmative Defenses**

*Federal Rule of Civil Procedure 8(c)* requires a party to set forth affirmative defenses in a responsive pleading. *Fed. R. Civ. P. 8(c)*. Under *Rule 12(f)*, "the court may order stricken from any pleading any insufficient defense." *Fed. R. Civ. P. 12(f)*. Generally, motions to strike affirmative defenses are disfavored because they potentially serve only to cause delay. *See Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989) (Heller)*. Such motions are generally granted only when the affirmative defenses [*12] are "patently defective and could not succeed under any circumstances." *Mobey v. Kelly Kean Nissan, Inc., 864 F.Supp. 726, 732 (N.D.Ill. 1993)*. Affirmative defenses, as pleadings, are subject to the pleading requirements of the Federal Rules of Civil Procedure. *See Heller, 883 F.2d at 1294*.

Defendants' first affirmative defense is a recitation of the standard for a motion to dismiss under *Federal Rule of Civil Procedure 12(b)(6)*. While the Federal Rules of Civil Procedure allow liberal pleadings, they do not allow a claimant to merely recite the standard for a motion to dismiss under *Rule 12(b)(6)*. *See Murphy v. White Hen Pantry Co., 691 F.2d 350, 353 (7th Cir. 1982); Renalds v. S.R.G. Restaurant Group, 119 F. Supp. 2d 800, 803-04 (N.D. Ill. 2000)*. Accordingly, the first affirmative defense is stricken.

Defendants' second through fourth affirmative defenses allege that punitive damages are not recoverable. Assertions that punitive damages are not recoverable or constitutional do not constitute affirmative defenses under *Section 8(c)*. Accordingly, Defendants' second, third, [*13] and fourth affirmative defenses are stricken.

Defendants' fifth affirmative defense alleges that Plaintiff's injuries were caused in whole or in part by Plaintiff's own negligence, or Plaintiff's own willful and wanton conduct. Contributory negligence is an affirmative defense identified in *Rule 8(c)*, and Plaintiff has alleged state law claims against these Defendants. Accordingly, the motion to strike Defendants' fifth affirmative defense is denied.

Defendants' sixth affirmative defense alleges that Plaintiff failed to mitigate his damages. The defense of failure to mitigate damages is not limited to contractual claims. *See Fleming v. County of Kane, 898 F.2d 553, 560 (7th Cir. 1990)*. Accordingly, the motion to strike Defendants' sixth affirmative defense is denied.

2006 U.S. Dist. LEXIS 6997, *13

**CONCLUSION**

For the foregoing reasons, the City's Motion to Dismiss is denied. Plaintiff's Motion to Strike Affirmative Defenses From the Answer of Defendants Phoenix Security and Rentaria is granted in part and denied in part. Defendants' affirmative defenses one

through four are stricken.

Dated: February 22, 2006

JOHN W. DARRAH

United States District Court [*14] Judge

LEXSEE 1996 U.S DIST LEXIS 19275



Positive
As of: May 20, 2008

THE NORTHWESTERN CORPORATION, Plaintiff, v. GABRIEL
MANUFACTURING CO., INC., ASHLAND CORPORATION OF DELAWARE
and G.V. NATIONAL, INC., Defendants; GABRIEL MANUFACTURING CO.,
INC., ASHLAND CORPORATION OF DELAWARE and G.V. NATIONAL, INC.,
Counterclaim Plaintiffs, v. THE NORTHWESTERN CORPORATION and
RICHARD K. BOLEN, Counterclaim Defendants.

Case No. 95 C 2004

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
ILLINOIS, EASTERN DIVISION

*1996 U.S. Dist. LEXIS 19275*

December 10, 1996, Decided
December 18, 1996, DOCKETED

**DISPOSITION:** [*1] Motions granted in part and denied in part.

**LexisNexis(R) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*
*Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview*
[HN1] The relevant standard for a motion to dismiss a counterclaim is identical to the standard for a motion to dismiss a complaint. *Fed. R. Civ. P. 12(b).* In deciding a motion to dismiss, the court must assume the truth of all facts alleged in the counterclaim, construing the allegations liberally and viewing them in the light most favorable to the defendant/counter-plaintiff. Dismissal is properly granted if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.

*Civil Procedure > Pretrial Judgments > Judgment on the Pleadings*
*Civil Procedure > Judgments > General Overview*
*Evidence > Judicial Notice > General Overview*
[HN2] A *Fed. R. Civ. P. 12(c)* motion for judgment on the pleadings is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice. A motion under *Rule 12(c)* is subject to the same standard as a *Fed. R. Civ. P. 12(b)(6)* motion to dismiss. The motion should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief. The court must also view the facts in a light most favorable to the non-moving party.

*Trademark Law > Infringement Actions > Burdens of Proof*
*Trademark Law > Protection of Rights > Registration > Incontestability > General Overview*
*Trademark Law > U.S. Trademark Trial & Appeal Board Proceedings > Cancellations > General Overview*

[HN3] Functionality is a traditional affirmative defense to an action for trademark infringement on which the defendant bears the burden of proof.

***Trademark Law > Protection of Rights > Registration > Federal Registration***
***Trademark Law > Protection of Rights > Registration > Fraudulent Registration***
[HN4] There must be a deliberate attempt to mislead the United States Patent and Trademark Office (PTO) into registering the mark to find fraud which involves a willful withholding from the PTO by an applicant or registrant of material information or fact which, if disclosed to the PTO, would have resulted in the disallowance of the registration sought or to be maintained.

***Trademark Law > Federal Unfair Competition Law > General Overview***
***Trademark Law > Infringement Actions > Defenses > General Overview***
[HN5] Functionality is a traditional public policy defense to an action for trademark infringement.

***Trademark Law > Protection of Rights > Priority > General Overview***
***Trademark Law > Protection of Rights > Registration > Federal Registration***
[HN6] In order to obtain a federal registration, a trademark owner must file with the United States Patent and Trademark Office a verification that the mark is in use in commerce. *15 U.S.C.S. § 1051(a)(1)(A).*

***Trademark Law > Protection of Rights > Priority > General Overview***
[HN7] A mark shall be deemed to be in use in commerce when it is placed on the goods or their containers or the displays associated therewith and the goods are sold or transported in commerce.

***Antitrust & Trade Law > Industry Regulation > Energy & Utilities > State Regulation***
***Patent Law > Originality > General Overview***
***Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > Causes of Action***
[HN8] The keystone of patent law is originality. In exchange for making public an innovation in utility or

design, the patent laws grant the innovator a temporary monopoly, after which the innovation passes into the public domain.

***Civil Procedure > Pleading & Practice > Pleadings > Counterclaims > General Overview***
***Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > General Overview***
***Trademark Law > Protection of Rights > Registration > Federal Registration***
[HN9] It is not unlawful to obtain federal trademark registration for a product configuration which is the subject of an expired design patent.

***Trademark Law > Conveyances > Franchises***
***Trademark Law > Conveyances > Licenses***
[HN10] Trademark licensing is permitted under the Lanham Act so long as the licensor maintains adequate control over the nature and quality of goods and services sold under the mark by the licensee.

***Trademark Law > Conveyances > Franchises***
***Trademark Law > Conveyances > Licenses***
***Trademark Law > Subject Matter > Names > General Overview***
[HN11] Under the Lanham Act, the function of a trademark is to identify a single, albeit anonymous, source of the goods. *15 U.S.C.S. § 1127.* The public need not know the name of the trademark owner so long as consumers associate the mark with a single, anonymous source. Thus, there is no requirement that a trademark be used in association with the name of the trademark owner. Licensed uses may properly contain only the licensed mark and the name of the licensee.

***Business & Corporate Law > Corporations > Directors & Officers > Management Duties & Liabilities > Causes of Action > General Overview***
***Business & Corporate Law > Corporations > Formation > Corporate Existence, Powers & Purpose > Powers > Distinct & Separate Principle***
***Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview***
[HN12] Under most circumstances, a corporation is a legal entity that exists separate and apart from its shareholders, directors, and officers, who are not

generally liable for the corporation's debts and obligations. One of the primary purposes of doing business as a corporation is to insulate shareholders from unlimited liability for corporate activity. In certain situations, however, a court will find shareholders, directors, or officers personally liable for corporate obligations through a remedy commonly known as piercing the corporate veil. A corporate entity will be disregarded where it would otherwise present an obstacle to the protection of private rights, or where the corporation is merely the alter ego or business conduit of the governing or dominant personality.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
[HN13] Illinois courts apply a two-part test to determine whether to pierce the corporate veil: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences.

*Bankruptcy Law > State Insolvency Laws*
*Business & Corporate Law > Corporations > Directors & Officers > General Overview*
*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > Alter Ego > Corporate Formalities*
[HN14] To determine if there is sufficient unity of interest and ownership between the corporation and its shareholders to warrant piercing the corporate veil, Illinois courts do not rely upon a single factor but examine a number of variables, including: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation at the time; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) whether the corporation is a mere facade for the operation of dominant stockholders. The court may also consider whether the dominant individuals commingled corporate funds with personal funds or preferred themselves over creditors. When such variables are coupled with some element of injustice or fundamental unfairness, the corporation will be considered as an aggregate of persons both in equity and law and its officers, directors, and

shareholders will be held liable for the corporation's debts and obligations.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
*Business & Corporate Law > Corporations > Shareholders > Shareholder Duties & Liabilities > Controlling Shareholders > General Overview*
*Trademark Law > Subject Matter > Labels, Packaging & Trade Dress*
[HN15] General and conclusory allegations will not support a claim for piercing the corporate veil when there are no allegations of any deficiencies in the corporate structure which even hint that it may be a facade for the operation of dominant stockholders.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
[HN16] Some element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest must be present in order to disregard the corporate fiction.

*Business & Corporate Law > Corporations > Shareholders > Disregard of Corporate Entity > General Overview*
*Business & Corporate Law > General Partnerships > Management Duties & Liabilities > Causes of Action > General Overview*
[HN17] Illinois courts have pierced corporate veils to avoid injustice when failure to do so would: unfairly enrich one of the parties, allow former partners to ignore obligations, or uphold a corporate arrangement to keep assets in a liability-free corporation while placing liabilities on an asset-free corporation.

*Civil Procedure > Pleading & Practice > Pleadings > Amended Pleadings > General Overview*
[HN18] Although *Fed. R. Civ. P. 15* provides that leave to amend shall be freely given, the court has discretion to deny such leave when there is undue delay, bad faith, dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opponent, or where the amendment would be futile.

1996 U.S. Dist. LEXIS 19275, *1

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*

[HN19] *Fed. R. Civ. P. 8(c)* requires that a party set forth any affirmative defense in a responsive pleading. Because affirmative defenses are pleadings, they are subject to all pleading requirements of the Federal Rules of Civil Procedure. Under *Fed. R. Civ. P. 8(a)*, the pleadings must set forth a short and plain statement of the nature of the defense.

*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*

[HN20] Under *Fed. R. Civ. P. 9(b)*, an affirmative defense involving fraud or mistake must state with particularity the circumstances involving the fraud or mistake.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Defects of Form*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > Immaterial Matters*
*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > Scandalous Matters*

[HN21] A motion to strike under *Fed. R. Civ. P. 12(f)* is the appropriate means to challenge an insufficient or defective defense. Under *Rule 12(f)*, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter. Motions to strike defenses, however, are generally not favored and may be granted only if the defense is patently defective and could not succeed under any set of circumstances. Nonetheless, a motion to strike insufficient defenses serves a useful purpose by eliminating insufficient defenses and saving the time and expense that otherwise would be spent litigating issues that will not affect the outcome of the case. An affirmative defense will not be stricken if it is sufficient as a matter of law or if it presents questions of law or fact.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*
*Civil Procedure > Dismissals > General Overview*

[HN22] Affirmative defenses subject to a motion to strike are examined by a three-part test. First, the court will determine whether the matter is appropriately pleaded as an affirmative defense. Only matters that deserve a clear "no" answer will be stricken to make the pleadings more precise. If a matter may remain as an affirmative defense, the court will determine whether the matter is appropriately pleaded under the requirements of *Fed. R. Civ. P. 8* and *Fed. R. Civ. P. 9*. Any defense inadequately pleaded will be dismissed without prejudice to enable defendants to correct that technical deficiency. Any matter permitted to stand as an affirmative defense will be tested under a standard identical to *Fed. R. Civ. P. 12(b)(6)*. If it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the complaint, the matter will be stricken as legally insufficient.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*
*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*

[HN23] Striking an affirmative defense on technical grounds does not necessarily preclude the party from asserting or arguing its substantive merits later in the case.

*Civil Procedure > Pleading & Practice > Motion Practice > Content & Form*
*Civil Procedure > Pleading & Practice > Pleadings > Rule Application & Interpretation*

[HN24] All motions must set forth with particularity the grounds therefor and the relief requested. *Fed. R. Civ. P. 7(b)(1)*; U.S. Dist. Ct. N. Dist. Ill., E. Div. Local R. 12(c).

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Affirmative Defenses*

[HN25] A true affirmative defense raises a matter outside the scope of plaintiff's prima facie case and is thus a matter not raised by a simple denial.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Dismiss*

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*

[HN26] A *Fed. R. Civ. P. 12(b)(6)* motion is the proper vehicle for a defendant to challenge the sufficiency of a plaintiff's particular claim.

*Trademark Law > Infringement Actions > Defenses > General Overview*
*Trademark Law > Infringement Actions > Remedies > General Overview*
*Trademark Law > Protection of Rights > Registration > Incontestability > General Overview*

[HN27] Once a trademark becomes incontestable it may not be cancelled on functionality grounds, but only on the basis of the seven statutorily enumerated grounds in set forth in *15 U.S.C.S. § 1064*.

*Trademark Law > Infringement Actions > Defenses > General Overview*

[HN28] Functionality is a public policy defense separate and apart from customer recognition which prevents perpetual utility patent protection.

*Antitrust & Trade Law > Clayton Act > Defenses*
*Antitrust & Trade Law > Robinson-Patman Act > Defenses*
*Trademark Law > Protection of Rights > Registration > Incontestability > General Overview*

[HN29] Fraud is one of the statutorily enumerated defenses to a suit for infringement of an incontestable trademark registration. *15 U.S.C.S. § 1115(b)(1)*. It involves a willful withholding from the United States Patent and Trademark Office (PTO) by an applicant or registrant of material information or fact which, if disclosed to the PTO, would have resulted in the disallowance of the registration sought or to be maintained. There must be a deliberate attempt to mislead the PTO into registering the mark.

*Trademark Law > Infringement Actions > Defenses > General Overview*

[HN30] Functionality is not a proper basis for a claim of fraud on the United States Patent and Trademark Office (PTO). It is not a material fact per se which can be withheld from the PTO.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Trademark Law > Infringement Actions > Defenses > General Overview*

[HN31] An affirmative defense involving allegations of trademark fraud must be stated with particularity in accordance with *Fed. R. Civ. P. 9(b)*. A general allegation without an accompanying recitation of detail is insufficient. Further, the pleading must contain an explicit rather than a mere implied expression of the factual circumstances alleged to constitute fraud.

*Trademark Law > Federal Unfair Competition Law > Trade Dress Protection > General Overview*
*Trademark Law > Infringement Actions > Defenses > General Overview*

[HN32] A particular trade dress is functional if it is something that other producers of the product in question would have to have as part of the product in order to be able to compete effectively in the market.

*Civil Procedure > Pleading & Practice > Defenses, Demurrers, & Objections > Motions to Strike > General Overview*
*Civil Procedure > Pleading & Practice > Pleadings > Heightened Pleading Requirements > Fraud Claims*
*Trademark Law > Infringement Actions > Defenses > General Overview*

[HN33] Mere legal conclusions that a design is functional are insufficient, particularly when it is the basis for a claim of trademark fraud which must be pled with particularity under *Fed. R. Civ. P. 9(b)*.

*Antitrust & Trade Law > Sherman Act > Defenses*
*Trademark Law > Infringement Actions > Defenses > General Overview*
*Trademark Law > Protection of Rights > Registration > Incontestability > Continuing Use Requirement*

[HN34] An incontestable trademark registration may be challenged on any of the grounds set forth in *15 U.S.C.S. § 1064* including that the mark is generic. A defendant is free to argue that a mark should never have become incontestable because the mark is generic for the goods. *15 U.S.C.S. § 1065(4)*.

*Trademark Law > Protection of Rights > Registration > Principal Register*

[HN35] A trademark applicant has a duty to disclose the fact that a design is generic at the time of application to the United States Patent and Trademark Office (PTO). Failure to do so may constitute fraud on the PTO.

**COUNSEL:** For NORTHWESTERN CORPORATION, THE, plaintiff: Robert Morton Ward, Lewis T. Steadman, Jr., Robert James Depke, Hill, Steadman & Simpson, Chicago, IL.

For GABRIEL MANUFACTURING CO., INC., defendant: Jerome William Pope, John Maurice Bowler, Winston & Strawn, Chicago, IL. Thomas A. Canova, Darren W. Saunders, Berj A. Terzian, Peter D. Vogl, Brian M. Rothery, Pennie & Edmonds, New York, NY. For ASHLAND CORPORATION OF DELAWARE, defendant: Thomas A. Canova, (See above). Darren W. Saunders, (See above). Berj A. Terzian, (See above). Peter D. Vogl, (See above). Brian M. Rothery, (See above). For G.V. NATIONAL, INC., defendant: Thomas A. Canova, (See above). Darren W. Saunders, (See above). Berj A. Terzian, (See above). Peter D. Vogl, (See above). Brian M. Rothery, (See above).

For GABRIEL MANUFACTURING CO., INC., counter-claimant: Jerome William Pope, John Maurice Bowler, Winston & Strawn, Chicago, IL. Thomas A. Canova, Darren W. Saunders, Berj A. Terzian, Peter D. Vogl, Brian M. Rothery, Pennie & Edmonds, New York, NY. For ASHLAND CORPORATION OF DELAWARE, counter-claimant: Thomas A. Canova, (See above). Darren W. Saunders, (See above). [*2] Berj A. Terzian, (See above). Peter D. Vogl, (See above). Brian M. Rothery, (See above). For G.V. NATIONAL, INC., counter-claimant: Thomas A. Canova, (See above). Darren W. Saunders, (See above). Berj A. Terzian, (See above). Peter D. Vogl, (See above). Brian M. Rothery, (See above).

For NORTHWESTERN CORPORATION, THE, counter-defendant: Lewis T. Steadman, Robert Morton Ward, Robert James Depke, Hill, Steadman & Simpson, Chicago, IL. For RICHARD K BOLEN, counter-defendant: Lewis T. Steadman, Jr., Hill, Steadman & Simpson, Chicago, IL.

**JUDGES:** Wayne R. Andersen, United States District Judge

**OPINION BY:** Wayne R. Andersen

**OPINION**

*MEMORANDUM OPINION AND ORDER*

Defendants Gabriel Manufacturing Co., Inc. ("GMCI"), Ashland Corporation of Delaware ("AshDel"), and G.V. National, Inc. ("National") have filed a seven-count amended counterclaim against plaintiff Northwestern Corporation ("Northwestern") and its president, Richard K. Bolen (even though the amended counterclaim, insofar as it applies to Mr. Bolen, who is not a plaintiff in this action, should be captioned a third-party complaint, it will hereinafter be referred to as the "amended counterclaim"). Northwestern now moves to dismiss [*3] Counts III-VII of the amended counterclaim pursuant to *Fed.R.Civ.P. 12(b)* and *(c)* and to strike defendants' affirmative defenses pursuant to *Fed.R.Civ.P. 12(f)*. Mr. Bolen has filed a similar motion to dismiss the amended counterclaim in its entirety and to strike defendants' affirmative defenses. For the following reasons, the motions are granted in part and denied in part.

*BACKGROUND*

The well-pleaded allegations of the amended counterclaim, which the Court treats as true and views in a light most favorable to defendants for purposes of this motion, are as follows. This action is for trademark infringement and unfair competition under the Lanham Act, *15 U.S.C. § 1051 et seq.* The parties are competing providers of coin-operated bubble gum vending machines. Plaintiff Northwestern manufactures the "Model 60" coin-operated vending machine comprised of a four-sided globe, rectangular case, and inverted front panel. Defendant GMCI designs, develops, and manufactures parts for a similar product, the "Ashland" vending machine, which defendant AshDel assembles and defendant National then distributes throughout the country.

On October 27, 1959, Northwestern acquired United [*4] States Patent Design No. 186,466 covering its Model 60 machine. That design patent expired on April 27, 1962. On August 13, 1986, Northwestern applied to the United States Patent and Trademark Office ("PTO") to register the product configuration of the Model 60 as a trademark. On September 8, 1987, the PTO issued

Trademark Registration No. 1,456,428 for the shape and configuration of the Model 60.

On March 31, 1995, Northwestern filed the instant action for trademark infringement and unfair competition under the Lanham Act, *15 U.S.C. § 1051 et seq.*, against defendants GMCI, AshDel, and National. Specifically, Northwestern alleges, among other things, that the Ashland machine, manufactured and distributed by defendants, infringes the Federal Trademark Registration No. 1,456,248 for the product configuration of the Model 60.

On December 12, 1995, defendants filed an answer and a nine-count counterclaim against Northwestern and its president, Mr. Bolen. [1] The counterclaim asserted functionality and improper subject matter for trademark registration, generic design for coin-operated bubble gum vending machines, fraud on the PTO, unlawful extension of an expired design patent, and [*5] antitrust violations under the Sherman Act. Defendants sought injunctive and declaratory relief including cancellation of Northwestern's trademark pursuant to *15 U.S.C. §§ 1064(3)* and *1119*. Additionally, defendants sought monetary relief for fraud, treble damages under the Sherman Act, costs, and attorneys fees.

> 1    Because Mr. Bolen is not a plaintiff in Northwestern's trademark infringement action against defendants, the counterclaim should have been captioned a third-party complaint.

Northwestern subsequently filed a motion to dismiss Counts I, II, IV, V, VI, VII, VIII, and IX of the counterclaim. Mr. Bolen filed a similar motion to dismiss the entire counterclaim. On May 8, 1996, we granted Northwestern's motion in part and dismissed Counts I, II, V, VI, VII, VIII, and IX thereby leaving Counts III and IV as the only viable counterclaims against Northwestern. *See Northwestern Corp. v. Gabriel Mfg. Co., Inc., 1996 U.S. Dist. LEXIS 6137*, No. 95 C 2004, 1996 WL 251433, at *8 (N.D.Ill. May 8, 1996). The Memorandum Opinion of May 8, 1996, [*6] did not address Mr. Bolen's motion to dismiss. [2]

> 2    At a status conference on March 27, 1996, we expressed concern over Mr. Bolen's personal liability in his capacity as president of Northwestern. We also suggested that defendants question Mr. Bolen at his upcoming deposition (April 8 and 9) concerning facts which might

serve as a basis for piercing the corporate veil and holding him personally liable.

On May 24, 1996, defendants filed an amended answer and counterclaim naming Northwestern and its president, Mr. Bolen, as "counterclaim defendants." The amended counterclaim contains seven individual counts. [3] Specifically, Count I alleges that the Model 60 design is a generic configuration for coin-operated vending machines. Counts II-IV allege fraud on the PTO based on Northwestern's and Mr. Bolen's alleged misrepresentations regarding genericness (Count II), functionality (Count III), and non-use of a trademark in interstate commerce (Count IV). Counts V and VI allege that Northwestern's and Mr. Bolen's activities [*7] in unlawfully obtaining and enforcing its alleged trademark constitute violations of the antitrust laws. Finally, Count VII alleges that Northwestern misrepresented the source of its goods by permitting its registered trademark to be used by other entities without notice that Northwestern is the owner of the trademark. Defendants again seek both injunctive and declaratory relief including cancellation of Northwestern's trademark pursuant to *15 U.S.C. §§ 1064(3)* and *1119*. Additionally, defendants seek monetary relief for fraud, treble damages under the Sherman Act, costs, and attorneys fees.

> 3    Counts I and II of the amended counterclaim reassert the third and fourth counts from the original answer and counterclaim, respectively.

The amended answer and counterclaim also contains eight affirmative defenses to Northwestern's complaint for trademark infringement. The first affirmative defense asserts that Northwestern's complaint fails to state a claim upon which relief can be granted. The second and third affirmative [*8] defenses assert functionality and fraud on the PTO because Northwestern was aware that the design was functional at the time of registration, respectively. Similarly, the fourth and fifth affirmative defenses assert genericness (fourth) and fraud on the PTO because Northwestern was aware that the design was generic at the time of registration (fifth). The sixth and seventh affirmative defenses assert unlawful extension of an expired design patent (sixth) and fraud on the PTO because Northwestern was aware that it was attempting to extend unlawfully its exclusive use of an expired design patent at the time of registration (seventh). Lastly, the eighth affirmative defense asserts that Northwestern's misuse of its trademark constitutes a violation of *Section*

*2* of the Sherman Antitrust Act, *15 U.S.C. § 2.*

Northwestern now moves to dismiss Counts III-VII of the amended counterclaim for failure to state a claim upon which relief can be granted pursuant to *Fed.R.Civ.P. 12(b)(6)* or, in the alternative, for a judgment on the pleadings pursuant to *Fed.R.Civ.P. 12(c),* arguing that defendants are merely reasserting counterclaims identical to those previously dismissed by this Court. Northwestern [*9] also moves to strike defendants' affirmative defenses.

Mr. Bolen has filed a similar motion to dismiss the amended counterclaim in its entirety contending that it is devoid of any allegations that he acted individually outside the scope of his capacity as corporate president of Northwestern. He further contends that there are no allegations that he is the alter ego of Northwestern which would justify piercing the corporate veil. Mr. Bolen also moves to strike defendants' affirmative defenses because they are directed only at Northwestern.

### DISCUSSION

#### I. *Motions To Dismiss and for Judgment on the Pleadings*

[HN1] The relevant standard for a motion to dismiss a counterclaim is identical to the standard for a motion to dismiss a complaint. *Fed.R.Civ.P. 12(b).* In deciding a motion to dismiss, the court must assume the truth of all facts alleged in the counterclaim, construing the allegations liberally and viewing them in the light most favorable to the defendant/counter-plaintiff. *Wilson v. Formigoni, 42 F.3d 1060, 1062 (7th Cir. 1994); McMath v. City of Gary, Ind., 976 F.2d 1026, 1031 (7th Cir. 1992).* "Dismissal is properly granted if it is clear that no relief could [*10] be granted under any set of facts that could be proved consistent with the allegations." *Cushing v. City of Chicago, 3 F.3d 1156, 1159 (7th Cir. 1993)(quoting Hishon v. King & Spalding, 467 U.S. 69, 73, 81 L. Ed. 2d 59, 104 S. Ct. 2229 (1984)).*

[HN2] A *Rule 12(c)* motion for judgment on the pleadings is "designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1367 (1990); *see also Zucker v. American Greetings Corp., 1995 U.S. Dist. LEXIS 9301,* No. 94 C 1844, 1995 WL 398933, at *1 (N.D.Ill. June 30, 1995); *Alexander v. City of Chicago, 994 F.2d 333, 336 (7th Cir. 1993)*; *Flora v. Home Federal Sav. and Loan Ass'n, 685 F.2d 209, 211 (7th Cir. 1982).* A motion under *Rule 12(c)* is subject to the same standard as a *Rule 12(b)(6)* motion to dismiss. *United States v. Wood, 925 F.2d 1580 (7th Cir. 1991)*; *see also Thomason v. Nachtrieb, 888 F.2d 1202, 1204 (7th Cir. 1989).* "Accordingly, the motion should not be granted unless it appears [*11] beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Thomason, 888 F.2d at 1204; see also Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).* The Court must also view the facts in a light most favorable to the non-moving party. *Craigs, Inc. v. General Elec. Capital Corp., 12 F.3d 686, 688 (7th Cir. 1993).*

#### A. *Northwestern*

Northwestern moves to dismiss Counts III-VII of the amended counterclaim arguing that defendants are merely reasserting counterclaims identical to those previously dismissed by this Court. For purposes of this motion, we assume familiarity with our previous opinion, *see Northwestern Corp.*, 1996 WL 251433, and address each count in turn.

##### 1. *Fraudulent Misrepresentations Regarding Functionality: Count III*

Count III alleges that the "activity of Northwestern and Richard K. Bolen in registering their design in view of their known false statements as to the non-functional nature of the design constituted a fraud on the U.S. Patent and Trademark Office." (Am. Countercl. P 20). Count III further alleges that "counterclaim plaintiffs are entitled to a declaration that said Trademark [*12] is invalid, void and unenforceable; that under *15 U.S.C. § 1064(3),* counterclaim plaintiffs are entitled to cancellation of the registration due to such fraud; and that counterclaim plaintiffs are likely to be damaged by continued registration of the alleged Trademark." (Am. Countercl. P 21).

Notwithstanding additional detail regarding the functional nature of the Model 60, this count is virtually identical to Count II of the original counterclaim which we previously dismissed. *See Northwestern Corp.*, 1996 WL 251433, at *5-6. We refuse to address its deficiencies in detail again here. Put simply, defendants may not seek cancellation of Northwestern's incontestible registration

on functionality grounds. *Id.* at 2-4. [HN3] Functionality is a traditional affirmative defense to an action for trademark infringement on which the defendant bears the burden of proof. *Computer Care v. Service Systems Enterprises, Inc., 982 F.2d 1063, 1068 (7th Cir. 1992)*; *Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 20 (7th Cir. 1992)*; *Service Ideas, Inc. v. Traex Corp., 846 F.2d 1118 (7th Cir. 1988)*; *see also Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 72 [*13] L. Ed. 2d 606, 102 S. Ct. 2182 (1982)*(White, J. concurring; "Functionality is a defense to a suit under § 43(a) of the Lanham Act."); *Health o meter, Inc. v. Terraillon Corp., 873 F. Supp. 1160, 1174 (N.D.Ill. 1995)*, *appeal dismissed, 52 F.3d 342 (Fed.Cir. 1995)*. Defendants have already pled functionality as an affirmative defense to this suit.

In addition, Count III alleges fraud which "involves a willful withholding from the Patent and Trademark Office by an applicant or registrant of material information or fact which, if disclosed to the Office, would have resulted in the disallowance of the registration sought or to be maintained." *First International Services Corp. v. Chuckles, Inc., 5 U.S.P.Q.2D (BNA) 1628, 1633 (T.T.A.B. 1988)*(*quoting Smith International, Inc. v. Olin Corp., 209 U.S.P.Q. 1033, 1043-44 (T.T.A.B. 1981)*(citations omitted)); *see also Marshak v. Sheppard, 666 F. Supp. 590, 598 (S.D.N.Y. 1987)*. [HN4] There must be a deliberate attempt to mislead the PTO into registering the mark. *Schwinn Bicycle Co. v. Murray Ohio Mfg. Co., 339 F. Supp. 973, 983 (M.D.Tenn. 1971)*, *aff'd on other grounds, 470 F.2d 975 (6th Cir. 1972)*.

We have previously determined [*14] that functionality is not a proper basis for a claim of fraud on the PTO. *See Northwestern Corp.*, 1996 WL 251433, at *5-6. It is not a material fact per se which can be withheld from the PTO. Rather, [HN5] functionality is a traditional public policy defense to an action for trademark infringement. *Computer Care, 982 F.2d at 1068*; *Abbott Laboratories, 971 F.2d at 20*; *Service Ideas, 846 F.2d 1118*; *see also* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 7.26[1] at 7-117 and [3][d] at 7-133 (3d ed. 1996). This judicially-created doctrine prevents trademark law from imposing unacceptable competitive burdens on competitors by making them unable "reasonably to replicate important nonreputation-related product features." *Qualitex Co. v. Jacobson Prods. Co., 131 L.*

Ed. 2d 248, 115 S. Ct. 1300, 34 U.S.P.Q.2D (BNA) 1161, 1165 (1995)*. Again, defendants have properly pled functionality as an affirmative defense to this suit. For the reasons stated in our Memorandum Opinion of May 8, 1996, Count III of the amended counterclaim is hereby dismissed in its entirety.

## 2. Fraudulent Registration of a Non-Used Trademark: Count IV

Count IV alleges that [*15] Northwestern and Mr. Bolen stated in the application for trademark registration that "the trademark was... and is now in use in commerce." (Am. Countercl. P 24). Count IV further alleges that the "design at issue was not and has never been used in interstate commerce as a trademark or source identifier, Northwestern and Mr. Richard Bolen knew when the subject trademark application was filed, that the design never was used as a trademark, that Northwestern did not have rights in the mark sought to be registered, and that their statements to the contrary were false. Northwestern's knowledge and intentional false representations made in an attempt to register as its trademark a design it had knowingly never used as a trademark constituted fraud on the United States Patent and Trademark Office." (Am. Countercl. P 25).

Northwestern argues that Count IV fails to state a claim upon which relief can be granted because defendants have already admitted that the mark was, and is, used in commerce. We agree. A fundamental cenet of federal trademark registration is that use must precede registration because without use, there is no "trademark" to be recorded. 2 *McCarthy on Trademarks* § 19.07[1] [*16] at 19-25. Thus, [HN6] in order to obtain a federal registration, a trademark owner must file with the PTO a verification that the mark is in use in commerce. *See 15 U.S.C. § 1051(a)(1)(A)*. "Commerce" simply means all commerce which may be regulated by Congress. *15 U.S.C. § 1127*. "The term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in the mark." *Id.*; *see also* 2 *McCarthy on Trademarks* § 19.07[1] at 19-25 ("The 'use' necessary is in the 'ordinary course of trade,' not just token use."). [HN7] A mark shall be deemed to be in use in commerce when it is placed on the goods or their containers or the displays associated therewith and the goods are sold or transported in commerce. *Id.*

Here, defendants allege that the "design at issue was not and has never been used in interstate commerce as a

trademark or source identifier." (Am. Countercl. P 25). Defendants, however, have already admitted that they have purchased Model 60 vending machines which have been placed in several states in the United States including Illinois. (Am. Answer P 17). Defendants now argue that the design was not used as a trademark [*17] or source identifier. This argument misconstrues the statutory requirements under the Lanham Act. The statue merely requires the use of the mark in commerce. *See 15 U.S.C. § 1127*. The "use in commerce" statement does not, contrary to defendants' assertions, guarantee that the public will recognize the mark as a source identifier or that the mark will not be invalidated by a court in the future. Defendants' reliance on *Electrical Information Publications, Inc. v. C-M Periodicals, Inc., 163 U.S.P.Q. 624, 629 (N.D.Ill. 1969)* is misplaced. The court did not address whether the design at issue was used as a trademark or source identifier but whether the registrations were fraudulently procured because the plaintiff's declaration of five consecutive years of use was false.

Defendants further assert that Northwestern has made false statements regarding its exclusive usage statement in the trademark application. (Def.s' Mem. Opp'n Northwestern's Mot. Strike and Dismiss at 9). There is no mention of a statement of "exclusive usage" in Count IV of the amended counterclaim and, therefore, we need not address it. As defendants are fully aware, they may not amend their counterclaim using [*18] briefs in opposition to a motion to dismiss. If defendants wish to do so, they may file the appropriate motion.

Accordingly, Count IV fails to state a claim upon which relief can be granted and is therefore dismissed in its entirety.

3. *Violation of Sherman Act/Antitrust Laws: Counts V & VI*

Count V alleges that "Northwestern's and Richard K. Bolen's activities in unlawfully obtaining and enforcing its alleged Trademark were undertaken in an attempt and with the specific intent to restrain competition and to monopolize the market for coin-operated bulk vending machines in the United states. Such actions by Northwestern constitute a violation of *Section 2* of the Sherman Antitrust Act. *15 U.S.C. § 2*." (Am. Countercl. P 40). Similarly, Count VI alleges that "Northwestern's and Mr. Richard Bolen's aforesaid conduct in obtaining and enforcing its Trademark is unlawful and constitutes a misuse of Northwestern's trademark, and counterclaim plaintiffs are likely to be damaged by continued registration of Northwestern's Trademark Registration No. 1,456,428 in that Northwestern's misuse tends to impair counterclaim plaintiffs' ability to pursue their business." (Am. Countercl. P 44). [*19] Count VI further alleges that the "alleged Trademark is invalid, void and unenforceable as a result of Northwestern's and Richard K. Bolen's misuse of the alleged Trademark in violation of the antitrust laws." (Am. Countercl. P 45).

Trademark monopolization or attempted monopolization claims often fall into one of two general categories. The first involves the use of an illegally obtained trademark and focuses on the power of the trademarked product to monopolize a relevant economic market solely as a consequence of its illegal registration. *See* 4 *McCarthy on Trademarks* § 31.26[2][d] at 31-141. The other, and more common, claim for attempted monopolization concerns the aggressive use or enforcement of a valid trademark in suits for over-zealous enforcement of a trademark or bad faith infringement suits. *Id.* at §§ 31.26[3][a]-[c] at 31-143 to 31-147.

In the present case, we do not interpret Counts V and VI as bad faith infringement claims or suits for over-zealous enforcement of a valid trademark. Both claims clearly focus on Northwestern's and Mr. Bolen's alleged activities in "unlawfully obtaining and enforcing its alleged trademark" or illegal registration [*20] to monopolize a relevant economic market. (*See* Am. Countercl. PP 37-41, 44). According to defendants, Northwestern's trademark was unlawfully or illegally obtained because it is the subject of an expired design patent. (*See* Am. Countercl. PP 28-29, 35, 37, 39-40). Defendants also recycle their previous arguments that it is unlawful to obtain federal trademark registration for a product configuration which is the subject of an expired design patent. (*See* Def.s' Mem. Opp'n Northwestern's Mot. Dismiss and Strike at 10-11).

Northwestern contends, and we agree, that defendants are attempting to resurrect the previously dismissed counterclaim for "unlawful extension of an expired design patent." *See Northwestern Corp.*, 1996 WL 251433, at *4-5. In *Kohler Co. v. Moen Inc., 12 F.3d 632 (7th Cir. 1993)*, the Seventh Circuit explicitly held that perpetual trademark protection under the Lanham Act for a product configuration or design is not the equivalent of impermissible perpetual patent protection.

*Id. at 643.* In reaching this conclusion, the Court noted that patent and trademark protection are distinct areas of law which do not conflict with one another. *Id. at [\*21] 637.* [HN8] "The keystone of patent law is originality. In exchange for making public an innovation in utility or design, the patent laws grant the innovator a temporary monopoly, after which the innovation passes into the public domain." *Id. at 637* (*quoting Merchant & Evans, Inc. v. Roosevelt Bldg. Products Co., Inc., 963 F.2d 628 (3d Cir. 1992)).* For instance, design patents are limited in duration to fourteen years. 35 U.S.C. § 137. Trademark protection, on the other hand, only precludes competitors from using marks that are likely to confuse the public. *Kohler, 12 F.3d at 637.* It is dependent only on public reaction to the mark in the marketplace and, unlike a patent, may continue indefinitely as long as the mark is used to distinguish and identify. *Id.* However, trademarks are not perpetual monopolies. "Others can produce designs similar to the trademark so long as there is no likelihood of consumer confusion." *Id. at 643.* Thus, courts have consistently held that a product's different qualities can be protected simultaneously, or successively, by more than one of the statutory means for protection of intellectual property. *Id. at 638; see also Application of [\*22] Mogen David Wine Corp., 51 C.C.P.A. 1260, 328 F.2d 925, 930 (C.C.P.A. 1964)*(Trademark rights that happen to continue beyond expiration of a patent on the same product do not extend the patent grant because the two forms of protection "exist independently... under different law and for different reasons.").

Accordingly, [HN9] it is not unlawful to obtain federal trademark registration for a product configuration which is the subject of an expired design patent. Any attempt by defendants to base an antitrust counterclaim--or any other type of counterclaim--on this claim of "unlawful extension of an expired design patent" must result in dismissal pursuant to the reasoning in *Kohler*. For the reasons stated in our Memorandum Opinion of May 8, 1996, Counts V and VI of the amended counterclaim fail to state a claim upon which relief can be granted and are hereby dismissed in their entirety.

### 4. *Misrepresentation of Source: Count VII*

Count VII alleges that "Northwestern has permitted its registered Trademark to be used by other entities, including Parkway A&A, G.V. National, Folz, Curtis,

and H&R, without any notice that Northwestern is the owner of the trademark and that it is being [\*23] used with the permission and for the benefit of Northwestern." (Am. Countercl. P 47). Count VII further alleges that "such use by other entities with the consent of Northwestern misrepresents the source of the goods and has the effect of confusing customers, consumers and others in the market that the source of the goods include other entities and Northwestern and further that the same product configuration may be used by any other entity or competitor in the dispensing-machine industry." (Am. Countercl. P 48). Additionally, Count VII alleges that defendants are entitled to cancellation of the trademark registration due to the misrepresentation of source and are likely to be damaged by continued registration of the alleged trademark. (Am. Countercl. P 49).

In short, Count VII challenges Northwestern's alleged licensing of its trademark or what defendants refer to as "private labeling." According to defendants, "Northwestern sells its Model 60 with the registered trade name 'Northwestern' prominently displayed on the product chute door. Northwestern also sells its Model 60 to its largest customers and independent distributors with their names molded into the product chute doors (known [\*24] as 'private labeling'). The machines which were sold with Northwestern's customers' and distributors' names did not contain any notice that Northwestern owned or was in any way affiliated with the machines." (Def.s' Mem. Opp'n Northwestern's Mot. Dismiss and Strike at 13). This practice, defendants argue, "misrepresents the source" of the goods and entitles them to cancellation of Northwestern's trademark. Northwestern argues that Count VII fails to state a claim upon which relief may be granted because a trademark owner may license others to use its trademark without notice that Northwestern is the licensor. Again, we agree.

[HN10] Trademark licensing is permitted under the Lanham Act so long as the licensor maintains adequate control over the nature and quality of goods and services sold under the mark by the licensee. 2 *McCarthy on Trademarks* § 18.14[1] at 18-64. Here, defendants do not contend that Northwestern fails to maintain control over the quality of the goods sold under its licensed mark. [4] On the contrary, defendants acknowledge that Northwestern itself continues to manufacture the Model 60 but "unlawfully" places the names of its largest distributors on the chute doors [\*25] of the machines instead of its own name. Contrary to defendants'

assertions, however, there is no necessity for the name of the licensor to appear on licensed uses of a mark owned by the licensor. 2 *McCarthy on Trademarks* § 18.14[4] at 18-69. [HN11] Under the Lanham Act, the function of a trademark is to identify a single, albeit anonymous, source of the goods. *See 15 U.S.C. § 1127; Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149 (9th Cir. 1963), cert. denied, 374 U.S. 830, 10 L. Ed. 2d 1053, 83 S. Ct. 1870 (1963); Menzies v. International Playtex, Inc., 204 U.S.P.Q. 297, n.10 (T.T.A.B. 1979); Processed Plastic Co. v. Warner Communications, Inc., 675 F.2d 852 (7th Cir. 1982);* 3 *McCarthy on Trademarks* § 3.03[2] at 3-12 to 3-13. The public need not know the name of the trademark owner so long as consumers associate the mark with a single, anonymous source. *Premier Dental Products Co. v. Darby Dental Supply Co., Inc., 794 F.2d 850, 856 (3d Cir. 1986)(citing Coty, Inc. v. Le Blume Import Co., 292 F. 264, 267 (S.D.N.Y. 1923), aff'd, 293 F. 344 (2d Cir. 1923), cert. denied, 479 U.S. 950 (1986); see also Mastercrafters Clock &* [*26] *Radio Co. v. Vacheron & Constantin-LeCoultre Watches Inc., 221 F.2d 464 (2d Cir. 1955), cert. denied, 350 U.S. 832, 100 L. Ed. 743, 76 S. Ct. 67 (1955).* Thus, there is no requirement that a trademark be used in association with the name of the trademark owner. *Pneutek, Inc. v. Scherr, 211 U.S.P.Q. 824, 832 (T.T.A.B. 1981)(citing Tetra Pak Company, Inc. v. Schneider, 125 U.S.P.Q. 460, 461 (T.T.A.B. 1960); E.I. du Pont De Nemours & Co. v. Celanese Corp. of America, 35 C.C.P.A. 1061, 167 F.2d 484 (C.C.P.A. 1948)).* Licensed uses may properly contain only the licensed mark and the name of the licensee. 3 *McCarthy on Trademarks* § 3.03[2] at 3-12 to 3-13 (*citing General Motors Corp. v. Gibson Chemical & Oil Corp., 786 F.2d 105 (2d Cir. 1986))*.

> 4    This practice is sometimes referred to as "naked licensing" or the uncontrolled licensing of a mark whereby the licensee can place the mark on any type or quality of goods causing the mark to lose any significance it may have. 2 *McCarthy on Trademarks* § 18.15 at 18-71. Defendants do not make such a claim here.

[*27] The cases on which defendants rely are distinguishable and do not entitle to them to cancellation of Northwestern's trademark. *See R. M. Smith Inc. v. Collins, Ltd., 219 U.S.P.Q. 465 (W.D.Pa. 1983); Alexander Binzel Corp. v Nu-Tecsys Corp., 785 F. Supp. 719 (N.D.Ill. 1992); Filter Dynamics Intern., Inc. v. Astron Battery, Inc., 19 Ill. App. 3d 299, 311 N.E.2d 386*

*(1974); J. R. Clark Co. v. Murray Metal Products Co., 219 F.2d 313 (5th Cir. 1955).* In those decisions, the courts addressed whether unregistered trade dress had established secondary meaning after being used for private label sales. The instant case, on the other hand, involves the alleged infringement of an incontestible federal trademark registration. Secondary meaning, as Northwestern correctly indicates, is no longer an issue here.

Accordingly, we reject defendants' assertion that Northwestern's "private labeling" or licensing "misrepresents the source" of the goods and is somehow unlawful. Northwestern's motion to dismiss Count VII of the amended counterclaim is therefore granted. Count VII is hereby dismissed in its entirety.

B. *Richard K. Bolen*

Mr. Bolen moves to dismiss the amended counterclaim [*28] in its entirety for failure to state a claim upon which relief can be granted or, in the alternative, for a judgment of the pleadings. Before reaching the merits of this motion, we must dispel any potential confusion created by our previous Memorandum Opinion. Defendants indicate that the previous opinion did not dismiss any of the original counterclaims asserted against Mr. Bolen. (Def.s' Mem. Opp'n Bolen's Mot. Strike and Dismiss at 1); *see also Northwestern Corp.*, 1996 WL 251433. Defendants are technically correct. The previous opinion dismissed only the counterclaims asserted against Northwestern even though the same counterclaims were asserted against Mr. Bolen. *See Northwestern Corp.*, 1996 WL 251433, at *8.

Defendants interpreted this omission, or failure to address the claims against Mr. Bolen, to mean that we "found their arguments persuasive regarding Richard Bolen's personal liability as a result of his fraudulent actions." (Def.s' Mem. Opp'n Bolen's Mot. Strike and Dismiss at 7 n.6). On the contrary, we made no such determination. In fact, the opposite is true. There is no reason why those original counterclaims which failed to state a claim against Northwestern [*29] would be any more successful against Mr. Bolen.

The same rationale applies to Mr. Bolen's present motion. In Part I.A. of this opinion, we dismissed Counts III, IV, V, VI, and VII of the amended counterclaim for failure to state a claim against Northwestern. For the same reasons, those counts also fail to state a claim upon

which relief can be granted against Mr. Bolen. That leaves only Counts I and II. Because Count I contains no allegations with respect to Mr. Bolen, it is also dismissed. (*see* Am. Countercl. PP 9-11). The only remaining count as to Mr. Bolen is therefore Count II.

Even if this were not the case, Mr. Bolen's motion to dismiss must still be granted in its entirety because, up until this point, the entire analysis presupposes that defendants may hold him personally liable as an officer and shareholder of Northwestern. That, however, is not the case when, as here, defendants have provided no justification for piercing the corporate veil and holding an officer and shareholder personally liable.

[HN12] Under most circumstances, a corporation is a legal entity that exists separate and apart from its shareholders, directors, and officers, who are not generally liable for [*30] the corporation's debts and obligations. *Ted Harrison Oil Co., Inc. v. Dokka, 247 Ill. App. 3d 791, 617 N.E.2d 898, 901, 187 Ill. Dec. 441 (1993)*; *McCracken v. Olson Companies, Inc., 149 Ill. App. 3d 104, 500 N.E.2d 487, 490, 102 Ill. Dec. 594 (1986).* [5] One of the primary purposes of doing business as a corporation is to insulate shareholders from unlimited liability for corporate activity. *Import Sales, Inc. v. Continental Bearings Corp., 217 Ill. App. 3d 893, 577 N.E.2d 1205, 1212 (1991)*. In certain situations, however, a court will find shareholders, directors, or officers personally liable for corporate obligations through a remedy commonly known as "piercing the corporate veil." *Kaeser & Blair, Inc. v. Willens, 845 F. Supp. 1228, 1232-34 (N.D.Ill. 1993)*(interpreting Illinois law); *Ted Harrison Oil Co., 247 Ill. App. 3d 791, 617 N.E.2d at 901*. A corporate entity will be disregarded where it would otherwise present an obstacle to the protection of private rights, or where the corporation is merely the alter ego or business conduit of the governing or dominant personality. *Hystro Products, Inc. v. MNP Corp., 18 F.3d 1384, 1390 (7th Cir. 1994)*(interpreting Illinois [*31] law); *Ted Harrison Oil, 247 Ill. App. 3d 791, 617 N.E.2d at 901*.

5    Because Northwestern is an Illinois corporation, and because any alleged fraud would also have occurred in Illinois, we apply Illinois law in determining whether defendants have sufficiently alleged a claim for piercing the corporate veil with respect to Mr. Bolen. The parties do not dispute that Illinois law applies

here.

[HN13] Illinois courts apply a two-part test to determine whether to pierce the corporate veil: (1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must exist such that adherence to the fiction of a separate corporate existence would sanction a fraud, promote injustice, or promote inequitable consequences. *Hystro Products, Inc., 18 F.3d at 1388-89*; *Ted Harrison Oil Co., 247 Ill. App. 3d 791, 617 N.E.2d at 901*. To determine whether defendants have pled facts sufficient to pierce the corporate veil and hold Mr. Bolen [*32] personally liable, we analyze the allegations in the amended counterclaim with respect to each prong of the test.

1. *Unity of Interest*

[HN14] To determine whether there is sufficient unity of interest and ownership between the corporation and its shareholders to warrant piercing the corporate veil, Illinois courts do not rely upon a single factor but examine a number of variables, including: (1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation at the time; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) whether the corporation is a mere facade for the operation of dominant stockholders. *See, e.g.*, *Ted Harrison Oil Co., 247 Ill. App. 3d 791, 617 N.E.2d at 902*; *Webb v. Webb, 180 Ill. App. 3d 619, 536 N.E.2d 206, 208, 129 Ill. Dec. 522 (1989)*. The court may also consider whether the dominant individuals commingled corporate funds with personal funds or preferred themselves over creditors. *See, e.g.*, *Ted Harrison Oil Co., 247 Ill. App. 3d 791, 617 N.E.2d at 902*. When such variables are coupled with some element [*33] of injustice or fundamental unfairness, the corporation will be considered as an aggregate of persons both in equity and law and its officers, directors, and shareholders will be held liable for the corporation's debts and obligations. *Id.*

In the present case, the amended counterclaim, which we take as true for purposes of this motion, is devoid of any of the above factors which might indicate that there is such unity of interest and ownership that the separate personalities of Northwestern and Mr. Bolen no longer exist. Indeed, defendants merely allege that Mr. Bolen, as

the president of Northwestern, applied to register the product configuration of the Model 60 as a trademark. In their response brief, defendants also assert that Mr. Bolen is the controlling shareholder of Northwestern. (Def.'s' Mem. Opp'n Bolen's Mot. Strike and Dismiss at 6). These [HN15] general and conclusory allegations will not support a claim for piercing the corporate veil when, as here, there are no allegations of any deficiencies in the corporate structure which even hint that it may be a facade for the operation of dominant stockholders.

### 2. Promotion of Injustice

Defendants must also allege facts sufficient [*34] to establish that adherence to the fiction of separate identities would sanction a fraud or promote injustice. *Hystro, 18 F.3d at 1390*. In *Sea-Land Services, Inc. v. Pepper Source, 941 F.2d 519 (7th Cir. 1991)*, the Seventh Circuit stated that, although the "promote injustice" test requires something less than an affirmative showing of fraud, it requires something more than the mere prospect of an unsatisfied judgment. *Id. at 522-23*. "Courts that properly have pierced the corporate veils to avoid 'promoting injustice' have found that, unless [they] did so, some wrong beyond the creditor's inability to collect would result." *Id. at 524*. That is, [HN16] "some element of unfairness, something akin to fraud or deception, or the existence of a compelling public interest must be present in order to disregard the corporate fiction." *Pederson v. Paragon Pool Enterprises, 214 Ill. App. 3d 815, 574 N.E.2d 165, 169, 158 Ill. Dec. 371 (1991)*.

The Seventh Circuit also found that [HN17] Illinois courts have pierced corporate veils to avoid injustice when failure to do so would: unfairly enrich one of the parties, *B. Kreisman & Co. v. First Arlington Nat. Bank of Arlington Heights, 91 Ill. App. 3d [*35] 847, 415 N.E.2d 1070, 47 Ill. Dec. 757 (1980)*; allow former partners to ignore obligations, *Gromer, Wittenstrom & Meyer, P.C. v. Strom, 140 Ill. App. 3d 349, 489 N.E.2d 370, 95 Ill. Dec. 149 (1986)*; or uphold a corporate arrangement to keep assets in a liability-free corporation while placing liabilities on an asset-free corporation, *Van-Dorn Co. v. Future Chemical and Oil Corp., 753 F.2d 565, 569 (7th Cir. 1985)*. *Sea-Land, 941 F.2d at 524*. Considering *Sea-Land* after remand, the court found that a corporate owner who used his several corporations to avoid responsibilities to creditors was unjustly enriched and that the corporate veil was properly pierced.

*Sea-Land Services, Inc. v. Pepper Source, 993 F.2d 1309, 1312 (7th Cir. 1993)*.

Here, there are no allegations in the amended counterclaim concerning the potential for an unsatisfied judgment or other inequities which would unfairly enrich one of the parties. On the contrary, defendants have alleged that Northwestern has the financial ability to withstand lengthy legal proceedings against smaller, weaker competitors. (Am. Countercl. P 41). Moreover, we have not found, and nor do defendants allege any, compelling [*36] interest or inequities beyond the possibility of an unsatisfied judgment which would justify piercing the corporate veil. In sum, there are no allegations, conclusory or otherwise, that the corporation is alter ego of Mr. Bolen.

Defendants now proffer an additional theory for holding Mr. Bolen personally liable which is distinguishable from "piercing the corporate veil." (Def.'s' Mem. Opp'n Bolen's Mot. Strike and Dismiss at 7). Specifically, defendants argue that Mr. Bolen "committed multiple frauds in registering and enforcing Northwestern's alleged trademark and, under existing law, is personally accountable for his unlawful and *ultra vires* actions and conduct." (Def.'s' Mem. Opp'n Bolen's Mot. Strike and Dismiss at 6). In support of this argument, defendants cite *In re Russie, 10 Bankr. 832, 834 (Bankr.N.D.Ill. 1981)*, *Trak Microcomputer Corp. v. Wearne Bros., 628 F. Supp. 1089, 1093 (N.D.Ill. 1985)*, and *In re Interstate Agency, Inc., 760 F.2d 121, 125 (6th Cir. 1985)*. Again, we disagree.

The cases on which defendants rely are inapposite and do not support the argument that Mr. Bolen may held personally liable for his role in registering Northwestern's trademark. [*37] *Russie* involved a "check kiting" scheme committed by a debtor in bankruptcy. Similarly, *Trak Microcomputer Co.* was a RICO case in which corporate officers were accused of falsifying financial statements in soliciting investors for the corporation. *In re Interstate Agency* addressed the application of Michigan law. None of these cases is dispositive in the instant case. Defendants have not cited, and nor have we discovered any, authority for holding a corporate officer personally liable for signing a trademark application on behalf of the corporation.

Accordingly, defendants have provided no justification for holding Mr. Bolen personally liable in this case. We refuse to disregard the corporate fiction on

the basis of defendants' conclusory allegations of fraud alone. Because the amended counterclaim is devoid of any allegations to support piercing the corporate veil, Mr. Bolen's motion to dismiss is granted in its entirety. We hereby dismiss Mr. Bolen as a party to this suit.

In the event that Mr. Bolen's motion were granted, defendants have indicated their intention to request leave to amend the amended counterclaim once again to plead facts showing that the corporation [*38] is the alter ego of Mr. Bolen. (Def.s' Mem. Opp'n Bolen's Mot. Strike and Dismiss at 7 n.6). For purposes of judicial economy, we address this request now rather than await the next round of motions and supporting briefs.

On March 27, 1996, we rendered our oral decision on Northwestern's motion to dismiss defendants' original counterclaim. During this hearing, we expressed concern about Mr. Bolen's personal liability in this case, particularly since the original counterclaim was devoid of any allegations that would justify piercing the corporate veil. Consequently, we granted defendants leave to file an amended counterclaim to allege facts, if any, which would remedy this deficiency. We also suggested that defendants question Mr. Bolen at his upcoming deposition concerning facts which might serve as a basis for piercing the corporate veil. In response, defendants' counsel stated that he intended to do exactly that.

On April 8 and 9, defendants deposed Mr. Bolen as both a witness and a possible defendant. On May 24, defendants filed the instant amended answer and counterclaim which, similar to its predecessor, was devoid of any allegations which might serve as a basis for piercing [*39] the corporate veil. Despite our suggestion and express permission, it does not appear that defendants even attempted to cure deficiencies in counterclaim with respect to this issue.

[HN18] Although *Fed.R.Civ.P. 15* provides that leave to amend shall be "freely given," the Court has discretion to deny such leave when there is undue delay, bad faith, dilatory motive, a repeated failure to cure deficiencies, undue prejudice to the opponent, or where the amendment would be futile. *Bower v. Jones, 978 F.2d 1004, 1008 (7th Cir. 1992)(citing Foman v. Davis, 371 U.S. 178, 183, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962)).* Here, defendants have failed explain their repeated failure to cure deficiencies in the counterclaim even after we expressed our concerns and granted defendants permission to do so. Moreover, we find no basis for

retaining Mr. Bolen as a party to this lawsuit. We, therefore, will deny any request by defendant.

II. *Motions To Strike Affirmative Defenses*

[HN19] *Rule 8(c)* requires that a party set forth any affirmative defense in a responsive pleading. Fed.R.Civ.p 8(c). Because affirmative defenses are pleadings, they are subject to all pleading requirements of the Federal Rules of [*40] Civil Procedure. *Heller Financial, Inc. v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th Cir. 1989).* Under *Rule 8(a)*, the pleadings must set forth a "short and plain statement" of the nature of the defense. *Fed.R.Civ.P. 8(a); see also Bobbitt v. Victorian House, Inc., 532 F. Supp. 734, 737 (N.D.Ill. 1982).* Moreover, [HN20] under *Rule 9(b)*, an affirmative defense involving fraud or mistake must state with "particularity" the circumstances involving the fraud or mistake. *Fed.R.Civ.P. 9(b).*

[HN21] A motion to strike under *Rule 12(f)* is the appropriate means to challenge an insufficient or defective defense. *Van Schouwen v. Connaught Corp., 782 F. Supp. 1240, 1245 (N.D.Ill. 1991).* Under *Rule 12(f)*, "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." *Fed.R.Civ.P. 12(f).* Motions to strike defenses, however, are generally not favored and may be granted only if the defense is patently defective and could not succeed under any set of circumstances. *Carpenter v. Ford Motor Co., 761 F. Supp. 62, 65 (N.D.Ill. 1991); see also Heller Financial, Inc., 883 F.2d at 1294* (affirmative defenses will be stricken [*41] only when they are insufficient on the face of the pleadings) (*citing United States v. 416.81 Acres of Land, 514 F.2d 627, 631 (7th Cir. 1975)).* "Nonetheless, a motion to strike insufficient defenses serves a useful purpose by eliminating insufficient defenses and saving the time and expense that otherwise would be spent litigating issues that will not affect the outcome of the case." *United States v. Walerko Tool and Engineering Corp., 784 F. Supp. 1385, 1387-1388 (N.D.Ind. 1992).* An affirmative defense will not be stricken if it is sufficient as a matter of law or if it presents questions of law or fact. *Heller Financial, Inc., 883 F.2d at 1294.*

In *Bobbitt v. Victorian House, Inc., 532 F. Supp. 734 (N.D.Ill. 1982),* District Judge Milton I. Shadur outlined [HN22] a three-part test for examining affirmative defenses subject to a motion to strike:

(1) initially the Court will determine whether the matter is appropriately pleaded as an affirmative defense. Only matters that deserve a clear "no" answer will be stricken to make the pleadings more precise.

(2) If a matter may remain as an affirmative defense the Court will determine whether the matter is appropriately [*42] pleaded under the requirements of *Rules 8* and *9*. Any defense inadequately pleaded will be dismissed without prejudice to enable defendants to correct that technical deficiency.

(3) Any matter permitted to stand as an affirmative defense will be tested under a standard identical to *Rule 12(b)(6)*. If it is impossible for defendants to prove a set of facts in support of the affirmative defense that would defeat the Complaint, the matter will be stricken as legally insufficient.

*Id.* at 737; *see also Tome Engenharia E. Transporrtes, Ltd. v. Malki, 1996 U.S. Dist. LEXIS 4585*, No. 94 C 7427, 1996 WL 172286, at *9-10 (N.D.Ill. April 11, 1996); *Cohn v. Taco Bell Corp., 1995 U.S. Dist. LEXIS 5532*, No. 92 C 5852, 1995 WL 247996, at *1 (N.D.Ill. April 24, 1995); *Heller Financial, Inc., 883 F.2d at 1295* (holding that where defendant's affirmative defenses omitted a short and plain statement of the facts and failed completely to allege the necessary elements of the claims, such defenses were "nothing but bare bones conclusory allegations" which should be stricken). Additionally, [HN23] striking an affirmative defense on technical grounds does not necessarily preclude the party from asserting or arguing its substantive merits later [*43] in the case. *Malki*, 1996 WL 172286, at *10 (*citing Instituto Nacional De Comercializacion Agricola (Indeca) v. Continental Illinois Nat. Bank & Trust co., 576 F. Supp. 985, 988 (N.D.Ill. 1983)*; *Bobbit, 532 F. Supp. at 737-38*).

A. *Northwestern*

At the outset, it is unclear which affirmative defenses Northwestern is challenging. The written motion refers generally to defendants' "affirmative defenses." (*See* Pl.'s Mot. Strike and/or Dismiss Def.s' Amended Affirmative Defenses and Countercl. III-VII). Northwestern's supporting brief, however, addresses only the second, third, sixth, seventh and eighth affirmative defenses. [HN24] All motions must set forth with particularity the grounds therefor and the relief requested. *See Fed.R.Civ.P. 7(b)(1)*; Local Rule 12(C). Because the motion itself defines the boundaries of the Court's inquiry, and not the supporting briefs, we address each of the eight affirmative defenses in turn. 6

6 Once again, for purposes of judicial economy, we address all of the affirmative defenses now rather than await the next round of motions.

[*44] 1. *First Affirmative Defense*

Defendants assert as their first affirmative defense that "plaintiff's complaint fails to state a claim upon which relief may be granted." (Am. Answer at 7). This defense is no more than a recitation of the standard for a motion to dismiss under *Fed.R.Civ.P. 12(b)(6)*. It is not a proper affirmative defense under *Rule 8(c)*. [HN25] A true affirmative defense "raises a matter outside the scope of plaintiff's prima facie case and is thus a matter not raised by a simple denial." *Babbitt, 532 F. Supp. at 736* (*citing* 2A *Moore's Federal Practice* P 8.27[3] at 8-250, 8-254; 5 Wright and Miller, *Federal Practice and Procedure* § 278 at 351-52); *see also In re Olympia Brewing Co. Securities Litigation*, No. 77 C 1206, 1985 WL 3928, at *2 (N.D.Ill. Nov. 13, 1985)("A true affirmative defense is a defense which rests upon matters outside the pleading); *Malki*, 1996 WL 172286, at *10 (affirmative defense raises matters outside of the scope of plaintiff's prima facie case). This defense fails to do so.

In addition, defendants have answered the complaint and denied that Northwestern is entitled to the relief requested. The first affirmative defense, [*45] however, is a bare bones, conclusory allegation that Northwestern fails to state a claim. Significantly, it fails to notify plaintiff of any specific infirmities in the complaint. [HN26] A *Rule 12(b)(6)* motion is the proper vehicle for a defendant to challenge the sufficiency of a plaintiff's particular claim. *See, e.g., Olympia Brewing Co.*, 1985 WL 3928, at *2. If defendants seriously question the adequacy of Northwestern's complaint, they could have filed the appropriate motion. The first affirmative defense is accordingly stricken. *See, e.g., Malki*, 1996 WL 172286, at *10 (striking affirmative defense merely

asserting failure to state a claim upon which relief can be granted); *Flasza v. TNT Holland Motor Exp., Inc.,* 155 F.R.D. 612, 614 (N.D.Ill. 1994)(same); *Olympia Brewing Co.,* 1985 WL 3928, at *2 (same).

### 2. *Second Affirmative Defense*

The second affirmative defense provides that the "alleged trademark design is functional in that its primary purpose is either utilitarian or aesthetic." (Am. Answer at 7). It is well-established in this circuit that functionality is a traditional affirmative defense to an action for trademark infringement on which the defendant [*46] bears the burden of proof. *Computer Care,* 982 F.2d at 1068; *Abbott Laboratories,* 971 F.2d at 20; *Service Ideas,* 846 F.2d 1118; *see also Inwood Laboratories,* 456 U.S. 844, 72 L. Ed. 2d 606, 102 S. Ct. 2182 (White, J. concurring; "Functionality is a defense to a suit under § 43(a) of the Lanham Act."); *Health o meter,* 873 F. Supp. at 1174.

Northwestern argues that functionality may not be asserted as an affirmative defense because it is not one of the enumerated defenses set forth in *15 U.S.C. § 1115.* In support of this argument, Northwestern cites *Shakespeare Co. v. Silstar Corp. of America, Inc.,* 9 F.3d 1091 (4th Cir. 1993), cert. denied, 128 L. Ed. 2d 864, 114 S. Ct. 2134 (1994). Northwestern further argues that the use of "functionality" as a defense undermines the Supreme Court's holding in *Park ' N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 83 L. Ed. 2d 582, 105 S. Ct. 658 (1985). Northwestern's reliance on these cases is misplaced.

In *Shakespeare,* the Fourth Circuit held that [HN27] once a trademark becomes incontestible it may not be cancelled on functionality grounds, but only on the basis of the seven statutorily enumerated grounds [*47] in set forth in *15 U.S.C. § 1064.* 9 F.3d at 1092. The court did not hold that functionality may not be asserted as an affirmative defense to a suit for trademark infringement. Indeed, on remand, the district court denied Shakespeare's relief, in part, on a fair use defense based on the functional nature of the trademark. *Shakespeare Co. v. Silstar Corp. of America, Inc.,* 906 F. Supp. 997, 1015-16 (D.S.C. 1995). Similarly, in *Park 'N Fly, Inc.,* the Supreme Court did not address the use of functionality as an affirmative defense but rather held that an action for infringement of an incontestable trademark registration may not be defended on the grounds that the mark is merely descriptive. *469 U.S. at 205.*

We, of course, recognize that functionality is not one of the enumerated defenses in *15 U.S.C. § 1115(b).* It is a public policy created by court decisions which trumps all evidence of actual consumer identification of source and all evidence of actual consumer confusion caused by an imitator. 1 *McCarthy on Trademarks* § 7.26 at 7-114; *In re Morton-Norwich Products, Inc.,* 671 F.2d 1332, 1336-37 (C.C.P.A. 1982). Put simply, [HN28] functionality is a public policy defense separate [*48] and apart from customer recognition which prevents perpetual utility patent protection. 1 *McCarthy on Trademarks* §§ 7.26[1] at 7-117 and [3][d] at 7-133; *see also Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* 489 U.S. 141, 164, 103 L. Ed. 2d 118, 109 S. Ct. 971 (1989)(reproduction of a functional attribute is a legitimate competitive activity); *Inwood Labs Inc. v. Ives Labs, Inc.,* 456 U.S. 844, 857 n.20, 72 L. Ed. 2d 606, 102 S. Ct. 2182 (1982)(by establishing that uniform colors established functional purpose, petitioners offered legitimate reason for copying). The Supreme Court has outlined the traditional policy concerns underlying this defense:

> The functionality doctrine prevents trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature. It is the province of patent law, not trademark law, to encourage invention by granting inventors a monopoly over new product designs or functions for a limited time, *35 U.S.C. §§ 154, 173,* after which competitors are free to use the innovation. If a products functional features could be used as trademarks, however, a monopoly [*49] over such features could be obtained without regard to whether they qualify as patents and could be extended forever (because trademarks may be renewed in perpetuity).

*Qualitex Co.,* 115 S. Ct. 1300, 34 U.S.P.Q.2D (BNA) at 1163. Accordingly, Northwestern may not use trademark law to establish a perpetual monopoly on functional features of its product. The motion to strike defendants' second affirmative defense is therefore denied.

### 3. *Third Affirmative Defense*

The third affirmative defense provides that "Northwestern was aware at the time it filed and prosecuted its application to register the design depicted therein that such design was functional and made knowing and false representations regarding the functionality of the design, and that such knowledge and false representations to the U.S. Patent and Trademark Office in registering its design constitutes a fraud on the U.S. Patent and Trademark Office." (Am. Answer at 7).

[HN29] Fraud is one of the statutorily enumerated defenses to a suit for infringement of an incontestible trademark registration. *15 U.S.C. § 1115(b)(1)*. It "involves a willful withholding from the Patent and Trademark Office by an applicant or registrant [*50] of material information or fact which, if disclosed to the Office, would have resulted in the disallowance of the registration sought or to be maintained." *First International Services Corp., 5 U.S.P.Q.2D (BNA) at 1633 (quoting Smith International, Inc., 209 U.S.P.Q. at 1043-44* (citations omitted)); *see also Marshak, 666 F. Supp. at 598*. There must be a deliberate attempt to mislead the PTO into registering the mark. *Schwinn Bicycle Co., 339 F. Supp. at 983*.

We have previously determined that [HN30] functionality is not a proper basis for a claim of fraud on the PTO. *See Northwestern Corp.*, 1996 WL 251433, at *5-6. It is not a material fact per se which can be withheld from the PTO. Rather, functionality is a traditional public policy defense to an action for trademark infringement. *Computer Care, 982 F.2d at 1068; Abbott Laboratories, 971 F.2d at 20; Service Ideas, 846 F.2d 1118; see also* 1 *McCarthy on Trademarks §§ 7.26[1]* at 7-117 and [3][d] at 7-133. This judicially-created doctrine prevents trademark law from imposing unacceptable competitive burdens on competitors by making them unable "reasonably to replicate important nonreputation-related [*51] product features." *Qualitex, 115 S. Ct. 1300, 34 U.S.P.Q.2D (BNA) at 1165*. Defendants have properly pled functionality as an affirmative defense to this suit.

Moreover, [HN31] an affirmative defense involving allegations of trademark fraud must be stated with particularity in accordance with *Fed.R.Civ.P. 9(b)*. *See Oreck Corp. v. Thomson Consumer Electronics, Inc., 796 F. Supp. 1152, 1159 (S.D.Ind. 1992)*. A general allegation without an accompanying recitation of detail is insufficient. *Id*. Further, the pleading must contain an

explicit rather than a mere implied expression of the factual circumstances alleged to constitute fraud. *King Automotive, Inc. v. Speedy Muffler King, Inc., 667 F.2d 1008 (C.C.P.A. 1981)*; 4 *McCarthy on Trademarks § 31.21[4]* at 31-125. The third affirmative defense, however, is insufficient to support a claim of trademark fraud involving functionality.

[HN32] A particular trade dress is "functional" if "it is something that other producers of the product in question would have to have as part of the product in order to be able to compete effectively in the market." *W.T. Rogers Co., Inc. v. Keene, 778 F.2d 334, 346 (7th Cir. 1985)*; *see also Schwinn Bicycle* [*52] *Co. v. Ross Bicycles, Inc., 870 F.2d 1176, 1189 (7th Cir. 1989)*; *see also Computer Care, 982 F.2d at 1071 (7th Cir. 1992)*(for example, the oval shape of a football is a functional feature which competitors must incorporate into their product to compete effectively). Thus, defendants must not only point to certain advantages of the Model 60 design, but also demonstrate that depriving them of these advantages will have a materially adverse impact upon their ability to compete effectively in the gum-ball vending machine market. *Abbott, 971 F.2d at 20*; *W.T. Rogers, 778 F.2d at 346*.

Here, defendants make only conclusory allegations that Northwestern's design is functional without any supporting facts. Specifically, defendants make no allegations concerning specific advantages in Northwestern's design or how these advantages will adversely impact their ability to compete in the vending machine market. Further, defendants do not allege how producing a distinct machine would raise their production and market costs. [HN33] Mere legal conclusions that a design is functional are insufficient, particularly when it is the basis for a claim of trademark fraud which must be pled with particularity [*53] under *Fed.R.Civ.P. 9(b)*. Northwestern's motion to strike the third affirmative defense is therefore granted.

4. *Fourth Affirmative Defense*

The fourth affirmative defense provides that the "alleged trademark is a design which is descriptive and used to identify the type of goods. This design has become generic for coin-operated vending machines and therefore cannot and does not serve as a trademark." (Am. Answer at 8). [HN34] An incontestible trademark registration may be challenged on any of the grounds set forth in *15 U.S.C. § 1064* including that the mark is

generic. A defendant is free to argue that a mark should never have become incontestable because the mark is generic for the goods. *See 15 U.S.C. § 1065(4).* Accordingly, defendants' assertion that the mark is generic for coin-operated vending machines is a proper affirmative defense. The motion to strike the fourth affirmative defense is denied.

5. *Fifth Affirmative Defense*

The fifth affirmative defense asserts that "Northwestern was aware at the time it filed and prosecuted the application to register the design depicted therein that the design was generic for coin-operated bulk vending machines, and that such knowledge [*54] and activity in registering its design constitutes a fraud on the U.S. Patent and Trademark Office." (Am. Answer at 8).

[HN35] A trademark applicant has a duty to disclose the fact that a design is generic at the time of application to the PTO. *See Deflecta-Shield Corp. v. Kar-Rite Corp., 229 U.S.P.Q. 743, 747 (N.D.Ill. 1986); Bart Schwartz Intern. Textiles, Ltd. v. F.T.C., 48 C.C.P.A. 933, 289 F.2d 665 (C.C.A.P. 1961); G. Levor & Co. v. Nash, Inc., 123 U.S.P.Q. 234 (T.T.A.B. 1959).* Failure to do so may constitute fraud on the PTO. *Id.; see also* 4 *McCarthy on Trademarks* § 31.21[3][a] at 31-106. Northwestern's motion to strike defendants' fifth affirmative defense is denied.

6. *Sixth and Seventh Affirmative Defenses*

The sixth affirmative defense asserts that "by its trademark, Northwestern is attempting unlawfully to extend its exclusive use of a coin-operated vending machine which is covered by expired U.S. Design Patent Des. No. 186, 466 in violation of United States Patent law and Policy." (Am. Answer at 9). The seventh affirmative defense provides that "Northwestern was aware that it was attempting to unlawfully extend its expired design patent when [*55] it filed and prosecuted its application for the alleged Trademark Registration No. 1,456,428, and such knowledge and wilful misconduct constitutes fraud on the United States Patent and Trademark Office." (Am. Answer at 9).

These affirmative defenses are identical to Counts V and VI of the original counterclaim which we previously dismissed. *See Northwestern Corp.,* 1996 WL 251433, at *4-5, 7. We refuse to address them in detail again here. In *Kohler Co. v. Moen Inc.,* the Seventh Circuit explicitly held that perpetual trademark protection under the Lanham Act for a product configuration or design is not the equivalent of impermissible perpetual patent protection. *12 F.3d at 643.* A product's different qualities can be protected simultaneously, or successively, by more than one of the statutory means for protection of intellectual property. *Id. at 638; see also Application of Mogen David Wine Corp., 328 F.2d at 930.* Under *Kohler,* it is not unlawful to obtain trademark protection for a product configuration which is the subject of an expired design patent. *12 F.3d at 643.* The sixth and seventh affirmative defenses are therefore stricken.

7. *Eighth Affirmative Defense*

[*56] The eighth and final affirmative defense asserts that "Northwestern and Richard K. Bolen applied to register the alleged Trademark registration No. 1,456,428 in bad faith and with knowledge that it was not a valid mark, and as part of a concerted effort to monopolize, restrain and thwart competition or otherwise deny access to the market for coin-operated bubble gum vending machines." (Am. Answer at 9). The eighth affirmative defense further alleges that "such conduct in restraining competition is a misuse of its trademark, and further such conduct constitutes a violation of *Section 2* of the Sherman Antitrust Act, *15 U.S.C. § 2* and Northwestern's violation of the antitrust laws by its unlawful use of its trademark constitutes misuse." (Am. Answer at 10).

A Violation of the antitrust laws is a proper defense to an action for trademark infringement under the Lanham Act. *15 U.S.C. § 1115(b)(7).* However, boiler-plate allegations that Northwestern has somehow violated *section 2* of the Sherman Act because it is able to withstand lengthy, expensive litigation against smaller, weaker competitors are not sufficient. This defense is similar to Counts VIII and IX of the original counterclaim [*57] which we dismissed for lack of sufficient allegations of the relevant product and geographic market, the probability of obtaining monopoly power, predatory intent and conduct, and potential harm to consumers. *See Northwestern Corp.,* 1996 WL 251433, at *9. The eighth affirmative defenses is therefore stricken without prejudice to enable defendants to correct these technical deficiencies. However, we remind defendants that this defense may not be based, either directly or impliedly, on any theory related to defendants' claim of "unlawful extension of an

expired design patent." *See Northwestern Corp.*, 1996 WL 251433, at *4-5, 7.

B. *Richard K. Bolen*

Mr. Bolen also moves to strike defendants' affirmative defenses pursuant to *Fed.R.Civ.P. 12(f)*. However, Mr. Bolen is not a party to the action for trademark infringement which Northwestern initiated against defendants. The affirmative defenses have been asserted only against Northwestern in this action. Mr. Bolen therefore has no standing to strike defenses which have not been asserted against him in a suit to which he is not a party. His motion to strike is therefore denied.

III. *Sanctions*

Finally, Northwestern and Mr. [*58] Bolen request sanctions in the form of costs and attorney's fees for having to respond to what they call defendants' "bogus" claims. (Pl.'s Mem. Supp. Mot. Strike and/or Dismiss at 8); (Bolen's Mem. Supp. Mot. Strike and/or Dismiss at 8). Because we do not find that all of defendants' claims are "bogus", i.e., asserted in bad faith or to delay this litigation, the request for an award of costs and attorney's fees is denied. However, any additional repetition or duplication of claims or arguments previously foreclosed by this Court will result in an award of sanctions against defendants.

**CONCLUSION**

For all of the foregoing reasons, Northwestern's

motion to dismiss Counts III, IV, V, VI, and VII of defendants' amended counterclaim is granted. Counts III, IV, V, VI, and VII are hereby dismissed in their entirety. Counts I and II are therefore the only remaining amended counterclaims asserted against Northwestern. Mr. Bolen's motion to dismiss the amended counterclaim in its entirety is granted. Mr. Bolen is hereby dismissed as a party to this suit. Any request by defendant for leave to amend their counterclaim as to Mr. Bolen will be denied.

Northwestern's motion to strike [*59] defendants' first, third, sixth, seventh, and eighth affirmative defenses is granted. The first, third, sixth, and seventh affirmative defenses are hereby stricken with prejudice. The eighth affirmative defense is stricken without prejudice to enable defendants to correct any technical deficiencies. Northwestern's motion to strike defendants' second, fourth, and fifth affirmative defenses is denied. Mr. Bolen's motion to strike defendants' affirmative defenses is also denied.

Northwestern's and Mr. Bolen's request for an award of costs and attorney's fees is also denied.

It is so ordered.

Wayne R. Andersen

United States District Judge

Dated: *December 10, 1996*

LEXSEE 2008 U.S. APP LEXIS 9631



Analysis
As of: May 20, 2008

### LOUIS W. MILLER AND RICHARD J. ROYALS, Plaintiffs-Appellants, v. AMERICAN AIRLINES, INC., Defendant-Appellee.

### No. 07-1518

### UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

*2008 U.S. App. LEXIS 9631; 103 Fair Empl. Prac. Cas. (BNA) 268*

**November 7, 2007, Argued**
**May 5, 2008, Decided**

**PRIOR HISTORY:**  [*1]
    Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 03 C 7756. Sidney I. Schenkier, Magistrate Judge.
*Miller v. Am. Airlines, Inc., 2007 U.S. Dist. LEXIS 9532 (N.D. Ill., Feb. 6, 2007)*

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN1] The United States Court of Appeals for the Seventh Circuit reviews a district court's grant of summary judgment de novo, viewing the record and all reasonable inferences drawn from it in the light most favorable to the party opposing the motion.

*Civil Procedure > Summary Judgment > Standards > Genuine Disputes*
*Civil Procedure > Summary Judgment > Standards > Legal Entitlement*
*Civil Procedure > Appeals > Standards of Review > De Novo Review*
[HN2] Summary judgment is appropriate only when the

materials before the court demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Fed. R. Civ. P. 56(c)*.

*Labor & Employment Law > Discrimination > Age Discrimination > Proof > Burdens of Proof*
[HN3] To prevail on an Age Discrimination in Employment Act (ADEA), *29 U.S.C.S. § 621 et seq.*, claim, plaintiffs must prove that they were discriminated against in the terms and conditions of their employment because of their age, *29 U.S.C.S. § 623*. To succeed in an ADEA claim, plaintiffs must establish that they would not have received adverse treatment but for their employer's motive to discriminate on the basis of their age. Such plaintiffs do not have to show that their age was the sole motivation for the employer's decision; it is sufficient if age is a determining factor or a "but for" element in the decision.

*Civil Procedure > Alternative Dispute Resolution > Mandatory ADR*
*Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > Enforcement*
*Transportation Law > Air Transportation > Licensing & Registration*
*Transportation Law > Rail Transportation > General Overview*

[HN4] The Railway Labor Act (RLA), *45 U.S.C.S. § 151 et seq.*, provides for mandatory arbitration over labor disputes arising out of the interpretation of collective bargaining agreements in the railway and airline industries. The RLA defines two categories of disputes: "major disputes" that relate to the formation of collective bargaining agreements or efforts to secure them and "minor disputes" that grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions. Where a claim is subject to the arbitration provisions of the RLA, the United States Court of Appeals for the Seventh Circuit is bound by the arbitrator's interpretation of a collective bargaining agreement. Only the arbitral boards convened under the aegis of the RLA have the authority to determine the rights conferred by a collective bargaining agreement in the airline industry.

*Civil Procedure > Alternative Dispute Resolution > Mandatory ADR*
*Labor & Employment Law > Discrimination > Age Discrimination > Enforcement*
*Labor & Employment Law > Discrimination > Disability Discrimination > Enforcement*
[HN5] Generally, a plaintiff can file an Age Discrimination in Employment Act (ADEA), *29 U.S.C.S. § 621 et seq.*, lawsuit in federal court that may be in some way related to a collective bargaining agreement that is subject to mandatory arbitration under the Railway Labor Act (RLA), *45 U.S.C.S. § 151 et seq.* However, if the success of the claim is dependent upon an interpretation of the collective bargaining agreement's terms, a court cannot consider it. The best way to harmonize the RLA and the Americans with Disabilities Act (ADA) is to allow a plaintiff employee to bring an ADA claim in federal court against his employer (even if his employment is governed by a collective bargaining agreement which is subject to the RLA), unless the resolution of his ADA claim requires the court to interpret the collective bargaining agreement's terms as a potentially dispositive matter. Dismissal is appropriate where a particular interpretation of the collective bargaining agreement is potentially dispositive of a plaintiff's claim.

*Labor & Employment Law > Collective Bargaining & Labor Relations > Enforcement*
*Labor & Employment Law > Discrimination > General Overview*

*Labor & Employment Law > Discrimination > Age Discrimination > Defenses & Exceptions > Bona Fide Occupational Qualifications*
*Labor & Employment Law > Employment Relationships > Employment Contracts > General Overview*
*Labor & Employment Law > Employment Relationships > Employment Contracts > Conditions & Terms > Compensation*
[HN6] An employee has both a contractual right by virtue of a collective bargaining agreement (or other employment contract) and a statutory right to be free from discrimination, A legitimate claim of entitlement is one that is legally enforceable--one based on statutes or regulations or contracts containing explicitly mandatory language that links specified substantive predicates to prescribed outcomes. Property interests in employment may be created by express or implied contracts, municipal ordinances, or state laws. Absent express language guaranteeing positions of comparable pay, an employer has no duty under the Age Discrimination in Employment Act, *29 U.S.C.S. § 621 et seq.*, to give another job to an employee validly disqualified from holding his present job.

*Labor & Employment Law > Discrimination > Age Discrimination > Exhaustion of Remedies*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > Filing of Charges*
[HN7] A plaintiff generally cannot bring a claim in an Age Discrimination in Employment Act (ADEA), *29 U.S.C.S. § 621 et seq.*, lawsuit that was not alleged in an Equal Employment Opportunity Commission (EEOC) charge, and, while not a jurisdictional requirement, it is a prerequisite with which a plaintiff must comply before filing suit. This requirement is to ensure that the employer has notice about the particular challenged conduct and provides an opportunity for settlement of the dispute. A plaintiff, however, may proceed on a claim not explicitly mentioned in his EEOC charge if the claim is like or reasonably related to the EEOC charges and the claim in the complaint reasonably could be expected to grow out of an EEOC investigation of the charge. At the very least, the claims should involve the same conduct and implicate the same individuals in order to be considered reasonably related to the allegations in the EEOC complaint. Generally, the United States Court of Appeals for the Seventh Circuit applies a liberal standard in determining if new claims are reasonably related to

Case 1:08-cv-02036    Document 11-9    Filed 05/20/2008    Page 3 of 7

Page 3

2008 U.S. App. LEXIS 9631, *1; 103 Fair Empl. Prac. Cas. (BNA) 268

those claims mentioned in an EEOC charge.

*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > Filing of Charges*

[HN8] The rule that a plaintiff may bring only those claims in her Equal Employment Opportunity Commission (EEOC) charge is meant both to give the EEOC and the employer an opportunity to settle the dispute and to give the employer fair notice of the conduct about which the employee is complaining. A plaintiff cannot make conclusory statements of discrimination in an EEOC charge and then file suit on whatever facts or legal theory she may later decide upon.

*Civil Procedure > Appeals > Reviewability > Preservation for Review*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies > Filing of Charges*

[HN9] Where a claim is not properly alleged in an Equal Employment Opportunity Commission charge, the United States Court of Appeals for the Seventh Circuit need not reach the merits of the argument on that claim.

**COUNSEL:** For LOUIS W. MILLER, RICHARD J. ROYALS, Plaintiffs - Appellants: John S. Bishof, Jr., Chicago, IL USA.

For AMERICAN AIRLINES, INCORPORATED, Incorporated, Defendant - Appellee: Cheryl Tama Oblander, Cardelle B. Spangler, WINSTON & STRAWN, Chicago, IL USA.

**JUDGES:** Before POSNER, WOOD, and WILLIAMS, Circuit Judges.

**OPINION BY:** WILLIAMS

**OPINION**

WILLIAMS, *Circuit Judge.* Plaintiffs Louis Miller and Richard Royals, ages eighty and seventy-five years old respectively, have sued their former employer, American Airlines, Inc. for failing to offer them a position with salary comparable to that of their previous job of flight engineer, which they held until May of 2002. Because the arbitrator determined that the collective bargaining agreement did not entitle the plaintiffs to

positions of equal pay and the plaintiffs also have not shown that their age was the reason that they were offered inferior positions, summary judgment was appropriate on their claims under the Age Discrimination in Employment Act ("ADEA"). Additionally, the plaintiffs cannot challenge the facial validity [*2] of the collective bargaining agreement because this claim was not properly raised in their charges filed with the Equal Employment Opportunity Commission ("EEOC"). Therefore, we affirm the grant of summary judgment in favor of American Airlines in its entirety.

**I. BACKGROUND**

In the 1950s, the plaintiffs began working as flight engineers for American Airlines. American Airlines historically operated aircrafts that required three individuals in the cockpit--the captain, first officer, and the flight engineer. As technology became more advanced, there was less need for flight engineers to occupy the third seat in the cockpit. Additionally, airlines began hiring certified pilots, rather than flight engineers, to occupy the third seat. In 1964, American Airlines and its two employee unions entered into a collective bargaining agreement, the Tripartite Agreement ("Agreement"), that preserved the rights of then-current flight engineers to occupy the third seat of a three crew aircraft, but also recognized the right of American Airlines to no longer hire flight engineers. In the years following the agreement, American Airlines began to retire its three-crew aircraft, and in 1983, the Agreement [*3] was amended to reflect this change. The new provision, Supplement U, provides that:

In the event a surplus of flight engineers exists, each flight engineer so affected, who is qualified or trainable, will be guaranteed placement within the Company [American Airlines] . . . . At the time of his placement, the employee's monthly salary will be fixed based on the average of his earnings for the previous twelve (12) months as a flight engineer. If the employee's average monthly earnings as a flight engineer exceed the total monthly compensation actually earned in his new job, the employee will be paid such flight engineer's guaranteed monthly earnings. Such guarantee will be in effect until his normal flight engineer retirement date, and

Case 1:08-cv-02036    Document 11-9    Filed 05/20/2008    Page 4 of 7

Page 4

2008 U.S. App. LEXIS 9631, *3; 103 Fair Empl. Prac. Cas. (BNA) 268

thereafter, his salary will be governed by
the compensation plan applicable to the
new position.

Supplement U was negotiated due to concerns that new
technology would make flight engineers obsolete prior to
the vesting of their pensions. The provision was designed
to ensure that flight engineers would continue to receive
the flight engineer rate of pay until the "normal flight
engineer retirement date," which the American Airlines'
Retirement Benefit Plan [*4] sets as age sixty-five.

In May 2002, American Airlines grounded the last of
its three crew airplanes, and the plaintiffs and one other
individual were the only three active flight engineers at
the time. Prior to the grounding of the fleet, American
Airlines sent the three remaining flight engineers a letter
offering them staff assistant positions in its publications
department, positions which paid $ 100,000 less than
their salaries as flight engineers. At that time of this offer,
plaintiff Royals was seventy years old and plaintiff Miller
was seventy-five years old.

The plaintiffs filed charges with the EEOC against
American Airlines, alleging that they were discriminated
against because of their age in violation of the ADEA, 29
U.S.C. § 621 et seq., when the defendant did not offer
them a position of comparable salary which, they
maintained, was required by Supplement U of the
Tripartite Agreement. The plaintiffs filed suit, and the
district court initially found that the plaintiffs' claims
involved a minor dispute over terms in a collective
bargaining agreement and therefore were preempted by
the Railway Labor Act ("RLA"), 45 U.S.C. § 151 et seq.
The district court then ordered the [*5] case stayed until
the parties completed arbitration.

During arbitration, the plaintiffs filed a grievance
with American Airlines, making essentially the same
allegations that they made in their ADEA complaint. The
arbitrator determined that the grievance was untimely
because it was filed more than 90 days after the
occurrence being grieved. The arbitrator further
determined that American Airlines was not obligated by
Supplement U to offer alternative employment at a salary
comparable to that of a flight engineer. The American
Airlines' Retirement Benefit Plan provides that the
normal retirement age is sixty-five, and the arbitrator
found that the plaintiffs were only guaranteed flight
engineer pay until that age.

Following the arbitration decision, the district court
granted the defendant's motion for summary judgment.
The district court adopted the arbitrator's findings that
Supplement U did not guarantee flight engineer pay past
the age of sixty-five. It also found that the plaintiffs'
claim that Supplement U was facially discriminatory fell
outside the scope of their EEOC charge, and even if the
merits could be reached, the claim failed because there
was no evidence that Supplement [*6] U was motivated
by a discriminatory purpose. The plaintiffs appeal.

## II. ANALYSIS

### A. Summary judgment was appropriate on the ADEA claim because there was no guarantee of comparable pay after the age of sixty-five.

[HN1] We review the district court's grant of
summary judgment *de novo*, viewing the record and all
reasonable inferences drawn from it in the light most
favorable to the party opposing the motion. *Peirick v. Ind.
Univ.-Purdue Univ. Indianapolis Athletic Dep't, 510 F.3d
681, 687 (7th Cir. 2007)*. [HN2] Summary judgment is
appropriate only when the materials before the court
demonstrate "that there is no genuine issue as to any
material fact and that the moving party is entitled to a
judgment as a matter of law." *Fed. R. Civ. P. 56(c)*.
[HN3] To prevail on their ADEA claim, the plaintiffs
must prove that they were discriminated against in the
terms and conditions of their employment because of
their age, *29 U.S.C. § 623*. *Hoffmann v. Primedia Special
Interest Publ'ns., 217 F.3d 522, 525 (7th Cir. 2000)* ("To
succeed in an ADEA claim, a plaintiff must establish that
he would not have received adverse treatment but for his
employer's motive to discriminate on the basis of his
age.") (internal citations [*7] omitted). The plaintiffs do
not have to show, however, that their age was the sole
motivation for the employer's decision; it is sufficient if
age was a "determining factor" or a "but for" element in
the decision. *Anderson v. Stauffer Chem. Co., 965 F.2d
397, 400 (7th Cir. 1992)*.

The plaintiffs' first claim can be characterized as an
"as applied" challenge to Supplement U. The plaintiffs
contend that American Airlines discriminated against
them in the terms and conditions of their employment by
failing to provide them with comparable pay as required
by Supplement U of the Tripartite Agreement.
Supplement U states in relevant part that: "Such
guarantee [of a flight engineer's guaranteed monthly
earnings] will be in effect until his *normal flight engineer*

Case 1:08-cv-02036    Document 11-9    Filed 05/20/2008    Page 5 of 7

Page 5

2008 U.S. App. LEXIS 9631, *7; 103 Fair Empl. Prac. Cas. (BNA) 268

*retirement date* and, thereafter, his salary will be governed by the compensation plan applicable to the new position." [*8] (Emphasis added.) In the arbitration proceedings, the arbitrator interpreted this sentence to mean that following the termination of the flight engineer positions, the collective bargaining agreement did not guarantee positions of comparable pay to the plaintiffs after they reached normal retirement age of sixty-five.

The district court deferred to the arbitrator's interpretation of this key language, correctly finding that resolution of the plaintiffs' ADEA claim is dependent upon the interpretation of Supplement U of the Agreement and therefore governed by the arbitration provisions of the RLA. [HN4] The RLA provides for mandatory arbitration over labor disputes arising out of the interpretation of collective bargaining agreements in the railway and airline industries. *Hawaiian Airlines v. Norris, 512 U.S. 246, 252-53, 114 S. Ct. 2239, 129 L. Ed. 2d 203 (1994)*. The RLA defines two categories of disputes: "major disputes" that "relate to 'the formation of collective [bargaining] agreements or efforts to secure them'" and "minor disputes" that "grow out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions." *Id.* The plaintiffs' allegation that Supplement [*9] U requires a specific rate of pay after the age of sixty-five is dependent upon interpreting the phrase "normal flight engineer retirement date." Thus, this particular claim was subject to the arbitration provisions of the RLA, and we are bound by the arbitrator's interpretation that Supplement U does not obligate American Airlines to provide comparable pay after employees have reached the normal flight engineer retirement date. *See Tice v. Am. Airlines, Inc., 288 F.3d 313, 318 (7th Cir. 2002)* ("only the arbitral boards convened under the aegis of the Railway Labor Act have the authority to determine the rights conferred by a collective bargaining agreement in the airline industry").

This is not to suggest, however, that employees are always precluded from bringing an ADEA claim in federal court if the dispute involves a collective bargaining agreement. [HN5] Generally, a plaintiff can file an ADEA lawsuit in federal court that may be in some way related to a collective bargaining agreement. However, if the success of the claim is dependent upon an interpretation of the collective bargaining agreement's terms, the court cannot consider it. *See Brown v. Illinois Cent. R.R., 254 F.3d 654, 664 (7th Cir. 2001)* [*10]

("[T]he best way to harmonize these two statutes [the RLA and the ADA] is to allow a plaintiff employee to bring an ADA claim in federal court against his employer (even if his employment is governed by a collective bargaining agreement which is subject to the RLA), unless the resolution of his ADA claim requires the court to interpret the collective bargaining agreement's terms as a potentially dispositive matter."); *Tice, 288 F.3d at 317* (providing that dismissal is appropriate where "a particular interpretation of the collective bargaining agreement is potentially dispositive of a the plaintiff's claim").

Here, the plaintiffs' claim was dependent upon the phrase "normal flight engineer retirement date" in Supplement U. The arbitrator's interpretation of this phrase in the collective bargaining agreement to mean that the plaintiffs were entitled to flight engineer pay only until the normal flight engineer retirement date and his subsequent conclusion that such pay was not required to continue following this date eviscerated the plaintiffs' ADEA claims. *See Tice, 288 F.3d at 317.*

The plaintiffs contend that the arbitrator's determinations have no bearing on their ADEA claim because [*11] their claim is premised on the idea that Supplement U creates a "benefit" that is part of the employment relationship, a benefit that was withheld from the plaintiffs on the basis of their age. This issue, according to the plaintiffs, was not before the arbitrator nor was it considered by the district court. There is no evidence, however, that the plaintiffs had a contractual right to comparable pay after the age of sixty-five under Supplement U, or in their words, that they were entitled to a "benefit" created by virtue of the employment relationship. While [HN6] "an employee has both a contractual right by virtue of a collective bargaining agreement (or other employment contract), and a statutory right to be free from discrimination," *Tice, 288 F.3d at 317*, the plaintiffs point to no language in Supplement U, express or implied, that can support their argument that American Airlines has discriminated against them by denying them positions of comparable pay. The express language of Supplement U, which guarantees flight engineer pay only until normal retirement age, provides that salary will then "be governed by the compensation plan applicable to the new position," language that is clearly [*12] contrary to their position. *See Miller v. Crystal Lake Park Dist., 47 F.3d 865, 867 (7th Cir. 1995)* ("A 'legitimate claim of

Case 1:08-cv-02036    Document 11-9    Filed 05/20/2008    Page 6 of 7

Page 6

2008 U.S. App. LEXIS 9631, *12; 103 Fair Empl. Prac. Cas. (BNA) 268

entitlement' is one that is legally enforceable--one based on statutes or regulations [or contracts] containing 'explicitly mandatory language' that links 'specified substantive predicates to prescribed outcomes.'") (internal citations omitted); *Hohmeier v. Leyden Cmty. High Sch. Dist. 212, 954 F.2d 461, 464 (7th Cir. 1992)* ("Property interests in employment may be created by express or implied contracts, municipal ordinances or state laws."). Absent express language guaranteeing positions of comparable pay, "an employer [has] no duty [under the ADEA] to give another job to an employee validly disqualified from holding his present job." *Tice, 288 F.3d at 315*. Accordingly, we find that summary judgment was appropriate on the plaintiffs' "as applied" challenge to Supplement U.

**B. The plaintiffs' facial discrimination claim was not properly alleged in their EEOC charges.**

Assuming *arguendo* that we can reach the issue of whether Supplement U is facially discriminatory since, unlike the "as applied" challenge, the arbitrator's interpretation of Supplement U is not necessarily [*13] dispositive of a facial challenge to this provision, *see Brown, 254 F.3d at 664*, the plaintiffs' facial challenge to Supplement U is still not properly before the court. [HN7] A plaintiff generally cannot bring a claim in an ADEA lawsuit that was not alleged in the EEOC charge, and, while not a jurisdictional requirement, it is a prerequisite with which a plaintiff must comply before filing suit. *Cheek v. W. & S. Life Ins. Co., 31 F.3d 497, 500 (7th Cir. 1994)*. This requirement is to ensure that the employer has notice about the particular challenged conduct and provides an opportunity for settlement of the dispute. *Id.* (citations omitted). A plaintiff, however, may proceed on a claim not explicitly mentioned in his EEOC charge "if the claim is like or reasonably related to the EEOC charges, and the claim in the complaint reasonably could be expected to grow out of an EEOC investigation of the charge." *Id.* (*citing Peters v. Renaissance Hotel Operating Co., 307 F.3d 535, 551 (7th Cir. 2002)* (internal quotations and citations omitted)). At the very least, the claims should involve the same conduct and implicate the same individuals in order to be considered "reasonably related" to the allegations [*14] in the EEOC complaint. *See Cheek v. Peabody Coal Co., 97 F.3d 200, 202-03 (7th Cir. 1996)*.

Generally, we apply a liberal standard in determining if new claims are reasonably related to those claims

mentioned in the EEOC charge. *Farrell v. Butler Univ., 421 F.3d 609, 616 (7th Cir. 2005)*. Here, the plaintiffs checked the ADEA box on their EEOC charge and stated that they were "subjected to different terms and conditions of employment" because they were "not offered a position with a comparable salary as required by the Tri-Partite Agreement." It is true that their claim that the Tripartite Agreement is facially discriminatory involves the same parties and the same facts as the other claim, and the plaintiffs checked the relevant box. *See Cheek, 97 F.3d at 200*. Nevertheless, their argument that the Tripartite Agreement *requires* that they be given positions of comparable pay and they were denied these positions because they were "beyond normal retirement age" conveys that at most, the plaintiffs are alleging that Supplement U is being applied in a disparate manner. To now challenge Supplement U as facially discriminatory, which is a much broader claim than that alleged in the EEOC charge, [*15] is also inconsistent with the plaintiffs' allegations that American Airlines failed to do something that Supplement U required. *Cf. Farrell, 421 F.3d at 616* (finding that plaintiff's statements in her EEOC charge encompassed a claim of disparate impact where she stated "I believe that there is an inherent or deliberate bias against women faculty and, in this case, only two women from the entire faculty would have met the criteria for the award, yet many more men would have been eligible."). To allow the plaintiffs to proceed on their facial challenge to Supplement U would take the "reasonably related" requirement much further than intended.

Additionally, the allegations in the plaintiffs' EEOC charges were not enough to put American Airlines on notice that the plaintiffs were planning to lodge a facial challenge against Supplement U. *Geldon v. S. Milwaukee Sch. Dist., 414 F.3d 817, 819 (7th Cir. 2005)* ([HN8] the rule that a plaintiff may bring only those claims in her EEOC charge is "meant both to give the EEOC and employer an opportunity to settle the dispute and to give the employer fair notice of the conduct about which the employee is complaining."). In their respective EEOC charges, [*16] the plaintiffs state, very generally, that they were subjected to different terms and conditions of employment based on age. They now seek to use this language as an opening to pursue a legal theory that is certainly related, but not foreseeable from the allegations made in the charge. *See, e.g., Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002)* (stating that a plaintiff cannot make conclusory statements of discrimination in

2008 U.S. App. LEXIS 9631, *16; 103 Fair Empl. Prac. Cas. (BNA) 268

her EEOC charge and then file suit on whatever facts or legal theory she may later decide upon). The EEOC charges filed by the plaintiffs allege behavior that is considerably more narrow than what the plaintiffs assert here; there is no notice to American Airlines that it may have to defend Supplement U against a facial challenge. Therefore, we find that the plaintiffs' [HN9] claim that Supplement U was facially discriminatory was not properly alleged in the EEOC charge, and we need not reach the merits of this argument.

## III. CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment in favor of American Airlines is AFFIRMED.

LEXSEE 487 F. SUPP 1343



Caution
As of: May 20, 2008

**C. R. Johnson et al., Plaintiffs v. American Airlines, Inc., Defendant.**

**Civ. A. No. CA-3-80-434-D**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OF TEXAS, DALLAS DIVISION**

*487 F. Supp. 1343; 1980 U.S. Dist. LEXIS 12046; 29 Fair Empl. Prac. Cas. (BNA) 327; 23 Fair Empl. Prac. Cas. (BNA) 1514; 23 Empl. Prac. Dec. (CCH) P30,973*

**May 9, 1980**

**COUNSEL:** [**1] Raymond C. Fay, Alan M. Serwer, Haley, Bader & Potts, Chicago, Ill., for plaintiffs.

Laurence A. Carton, Gardner, Carton & Douglas, Chicago, Ill. (James A. Velde, Gardner, Carton & Douglas, Chicago, Ill., of counsel), for defendant.

**OPINION BY:** HILL

**OPINION**

[*1343] ORDER

Came on for consideration plaintiffs' Motion to Strike a Portion of the Answer of Defendant. The court has considered the motion and the briefs of the parties and is of the opinion that the motion should be granted.

I. Background

The plaintiffs in this case are former commercial airline pilots who were forced to retire following their sixtieth birthdays. Before reaching age sixty, the plaintiffs were first pilots (also known as captains or pilots in command). Also in the cockpit of large commercial aircraft during each flight are second pilots and flight officers or flight engineers. Flight engineers, in contrast to pilots, are permitted to work beyond their sixtieth birthdays.

Plaintiffs sought to continue their employment with American in the position of flight officer/flight engineer. This request was refused by defendant American Airlines, Inc. ("American"). In response to this refusal, plaintiffs [**2] filed charges with the Equal Employment Opportunity Commission ("EEOC") alleging that American had discriminated against them on the basis of age in violation of the Age Discrimination in Employment Act ("ADEA"), *29 U.S.C. § 623*. They filed this lawsuit on July 3, 1979.

Defendant's answer includes a paragraph which reads as follows:

> 29. The relief sought by the plaintiffs would in effect permit them at age 60 to down bid to the position of flight officer, a position provided for in the collective bargaining agreement between American and the Allied Pilots Association. Plaintiffs have failed to exhaust their applicable remedies within the Allied Pilots Association or under the Railway Labor Act as a condition precedent to bringing suit.

(emphasis added) Plaintiffs have moved to strike the second sentence of Paragraph 29 from American's

487 F. Supp. 1343, *1343; 1980 U.S. Dist. LEXIS 12046, **2;
29 Fair Empl. Prac. Cas. (BNA) 327; 23 Fair Empl. Prac. Cas. (BNA) 1514

answer.

[*1344]  II. Motions to Strike Generally

Plaintiffs' motion to strike is brought under *Rule 12(f) of the Federal Rules of Civil Procedure*, which provides that "the court may order stricken from any pleading any insufficient defense." Such motions are to be granted only when the defense in issue is invalid as a matter of law. [**3] The motion admits all well pleaded facts, but matters outside the pleadings are normally not considered.

Although it has been said that 12(f) motions are "not favored" by the courts because of their potential as a dilatory tactic, they are "nonetheless "a useful and appropriate tool' for weighing the legal implications to be drawn from uncontroverted facts." United States v. 416.*81 Acres of Land, 514 F.2d 627, 631 (7th Cir. 1975)*, quoting 5 Wright and Miller, Federal Practice and Procedure: Civil, § 1381 (1969). Here, even accepting as true the facts alleged by defendant as the basis for its exhaustion defense, the defense of failure to exhaust union remedies is insufficient as a matter of law.

III. Exhaustion Requirements and Civil Rights

American contends, through the questioned paragraph of its answer, that plaintiffs' ADEA claims cannot be maintained without first establishing, through union procedures, their right to be flight officers on retirement. Plaintiffs, however, urge that they have complied with the prerequisites to suit contained in the ADEA and that no other procedural prerequisites may be imposed on them.

Air carriers such as American and airline pilots such [**4] as the plaintiffs are subject to certain provisions of the Railway Labor Act. See *45 U.S.C. §§ 151-52*, 154-63, and 181-87. The act makes it the duty of the carriers and their employees to maintain collective bargaining agreements and to attempt to settle all disputes arising out of the agreements. One such agreement relevant to this case is the Tripartite Agreement of 1965, which was entered into between American, the Allied Pilots Association ("APA"), and the Flight Engineers' International Association ("FEIA") pursuant to the Railway Labor Act.

The Tripartite Agreement arose out of a long-standing dispute between pilots and flight engineers

as to who would fill the third cockpit crew position of large aircraft. Under the Tripartite Agreement, all flight engineers then employed were guaranteed priority in the third cockpit position until retirement, and all third crew members hired after July 1, 1964, were required to be pilots represented by the APA. It also provides that no flight engineer is to be furloughed or continued in furlough while any pilot or flight officer (pilot) is serving as a third crew member. The Tripartite Agreement was approved by the Secretary of Labor [**5] and the National Mediation Board on March 8, 1965. American maintains that the plaintiffs' claims to the position of third crew member are contrary to the Tripartite Agreement.

The interaction between the exhaustion requirements of union grievance procedures and civil rights statutes arises frequently. Only one reported case, however, appears to have considered the combination of the ADEA and Railway Labor Act, and the conclusions of that case are somewhat ambiguous. In *Criswell v. Western Air Lines, Inc., 23 Fair Empl. Prac. Cas. (BNA) 1511*, 21 E.P.D. P 30,466 (C.D.Cal. 1979), the plaintiffs did submit grievances to the Western Airlines Pilots System Board of Adjustment ("System Board") based on the defendant's refusal to award them bids as DC-10 second officers; these grievances were denied. The court, while accepting the System Board's interpretation of the collective bargaining agreement, nevertheless denied defendant's motion for summary judgment, noting that "whether age was a substantial and determinative factor in the denial of the downbids remains a matter for litigation because of the genuine issues of material fact concerning the application and impact of the Pilot [**6] Agreement." Id. Thus the court appears to have foreclosed the possibility that the System Board's decision on the plaintiffs' entitlement to the position sought would bar plaintiffs' suit.

[*1345]  Absent controlling decisions under the ADEA, the court must turn to Title VII of the Civil Rights Act of 1964 and the Fair Labor Standards Act for analogy. *Marshall v. Goodyear Tire & Rubber Co., 554 F.2d 730 (5th Cir. 1977)*. The leading case discussing the relationship between arbitration and *Title VII is Alexander v. Gardner-Denver Co., 415 U.S. 36, 94 S. Ct. 1011, 39 L. Ed. 2d 147 (1974)*, which held that the federal policy favoring arbitration does not establish that an arbitrator's resolution of a contractual claim is dispositive of a statutory claim under Title VII. *Id. at 45, n.6, 94 S. Ct. at 1018, n.6.* The Court noted that

487 F. Supp. 1343, *1345; 1980 U.S. Dist. LEXIS 12046, **6;
29 Fair Empl. Prac. Cas. (BNA) 327; 23 Fair Empl. Prac. Cas. (BNA) 1514

Title VII does not speak expressly to the relationship between federal courts and the grievance-arbitration machinery of collective-bargaining agreements. It does, however, vest federal courts with plenary powers to enforce the statutory requirements; and it specifies with precision the jurisdictional prerequisites that an individual must satisfy [**7] before he is entitled to institute a lawsuit.

*Id. at 47, 94 S. Ct. at 1019.* See also *Smallwood v. National Can Co., 583 F.2d 419 (9th Cir. 1978); Waters v. Wisconsin Steel Works, 502 F.2d 1309, 1316 (7th Cir. 1974)* ("Moreover, an exhaustion of remedies requirement does not appear to apply to claims for relief brought under any of the civil rights acts.").

The reason for placing decreased priority on arbitration in civil rights cases was explained by the Seventh Circuit:

> While we recognize that there is a burden placed on the defendant who must defend in two different fora, we also note that there may be crucial differences between the two processes and the remedy afforded by each. Also, as with unfair labor practice cases . . . the arbitrator may consider himself bound to apply the contract and not give the types of remedy which are available under the statute.

*Bowe v. Colgate-Palmolive Co., 416 F.2d 711, 715 (7th Cir. 1969).* See also *Alexander, supra, 415 U.S. at 53, 94 S. Ct. at 1022; Leone v. Mobil Oil Corp., 173 U.S. App. D.C. 204, 523 F.2d 1153, 1155-59 (D.C.Cir. 1975)* (historical analysis of judicial deference to grievance procedures and exceptions thereto [**8] for "pervasive statutory schemes").

Courts have expressly considered the effect of the federal civil rights acts on the Railway Labor Act requirements. In *Piva v. Xerox Corp., 376 F. Supp. 242 (N.D.Cal.1974)*, it was held that no exhaustion was required:

> It was argued, by those who sought to circumscribe the effect of the new law,

that resort to federal courts under Title VII should be precluded by appropriate deference to other institutions . . . . For example, it was argued that an employee must resort to the institutions provided by the (Railway Labor Act) before a suit could properly be maintained under Title VII . . . . These arguments, however, have been consistently rejected; and the clear principle has emerged that Title VII rights are independent of rights created by other statutes or by contract, and that where remedies overlap, a plaintiff may select the avenue of relief that seems to him most appropriate.

*Id. at 246.* The same conclusion was reached earlier by another court, which noted that the "Railway Labor Act is not basically a fair employment practice act nor has it been utilized as such." *Bremer v. St. Louis Southwestern R. Co., 310 F. Supp. 1333, 1336 [**9] (E.D.Mo. 1969).* When the plaintiff seeks to assert a contractual right under the collective bargaining agreement or to resolve a minor labor dispute, exhaustion is required. *Id. at 1336.* But when the plaintiff asserts separate federal statutory rights, the exhaustion requirement is not applicable. Id. See also *Phillips v. Carborundum Co., 361 F. Supp. 1016, 1020 (W.D.N.Y. 1973)* ("(R)emitting an employee to arbitration is favored only when the employee's substantial rights are derived from the collective bargaining agreement. When the employee asserts rights derived from federal statute, the presumption of comprehensiveness of the arbitral remedy is . . . rebutted.").

This is the import of the cases cited by American. All held the plaintiff's claim to [*1346] be essentially a question of interpretation of the collective bargaining agreement or a minor contract dispute. See *Andrews v. Louisville & Nashville R. Co., 406 U.S. 320, 92 S. Ct. 1562, 32 L. Ed. 2d 95 (1972); Machinists v. Central Air Lines, 372 U.S. 682, 689, 83 S. Ct. 956, 960, 10 L. Ed. 2d 67 (1963); Pennsylvania R. Co. v. Day, 360 U.S. 548, 550, 79 S. Ct. 1322, 1323, 3 L. Ed. 2d 1422 (1959); Brown v. American [**10] Airlines, Inc., 593 F.2d 652 (5th Cir. 1979); Magnuson v. Burlington Northern, Inc., 576 F.2d 1367 (9th Cir. 1978),* cert. denied, *439 U.S. 930, 99 S. Ct. 318, 58 L. Ed. 2d 323 (1979); Sanchez v. Eastern Airlines, Inc., 574 F.2d 29 (1st Cir. 1978).* The thrust of plaintiffs' complaint in this case, however, is not

487 F. Supp. 1343, *1346; 1980 U.S. Dist. LEXIS 12046, **10;
29 Fair Empl. Prac. Cas. (BNA) 327; 23 Fair Empl. Prac. Cas. (BNA) 1514

a contract right but the right not to suffer from discrimination based on age. The fact that this determination may necessitate, as a collateral matter, the interpretation of a collective bargaining agreement does not require that plaintiffs pursue the union grievance procedure prior to bringing their ADEA claim.

In *McKinney v. Missouri-Kansas-Texas R. Co., 357 U.S. 265, 78 S. Ct. 1222, 2 L. Ed. 2d 1305 (1958)*, the plaintiff sued to enforce his rights as a veteran under the Universal Military Training and Service Act. The Supreme Court held that he was not obliged to pursue the grievance procedures of the collective bargaining agreement or the Railway Labor Act prior to bringing suit in district court:

> The rights petitioner asserts are rights created by federal statute even though their determination may necessarily involve interpretation of a collective bargaining agreement. [**11] Although the statute does not itself create a seniority system, but accepts that set forth in the collective bargaining agreement, it requires the application of the principles of that system in a manner that will not deprive the veteran of the benefits . . . for which Congress has provided. Petitioner sues not simply as an employee under a collective bargaining agreement, but as a veteran asserting special rights bestowed upon him in furtherance of a federal policy to protect those who have served in the Armed Forces.

*Id. at 268-69, 78 S. Ct. at 1225*. This reasoning was applied to a claim based on the Equal Pay provisions of the Fair Labor Standards Act in *Phillips v. Carborundum Co., supra, at 1021*.

American seeks to distinguish the Title VII exhaustion cases by noting that in those cases the defendants tried to force exhaustion of collective bargaining remedies for racial discrimination, the same conduct for which the plaintiffs sued under Title VII, while in this case the question to be arbitrated is the collateral issue of entitlement to flight engineer status. This distinction, however, works against rather than in favor of defendant's position. The Supreme Court [**12] noted in *Alexander, supra*, that an arbitrator's decision is

entitled to greater weight when "provisions in the collective-bargaining agreement . . . conform substantially with Title VII" and when the arbitral decision "gives full consideration to an employee's Title VII rights." *Id., 415 U.S. at 60, n.21, 94 S. Ct. at 1025, n. 21*. Conversely, therefore, an arbitrator's decision on a collateral issue, excluding the allegations of age discrimination, would be entitled to even less weight than the arbitral determination at issue in Alexander, and there would be less rather than greater reason to require plaintiffs to exhaust their union remedies prior to filing their lawsuit.

Procedurally, this case is in a different posture from Alexander. There, plaintiff had arbitrated and lost; the defendant argued that this barred his claim. Here, American seeks to force plaintiffs to grieve their claim, arguing that should plaintiffs lose before the System Board "this controversy would be disposed of." As a practical matter, however, the posture of American and Gardner-Denver are the same: both urge that a decision adverse to plaintiff's position resulting from a union procedure precludes a [**13] federal district court from finding otherwise. This is not the law. "Courts should be ever mindful that Congress, in enacting Title VII (and the ADEA), thought it necessary to provide a judicial forum for the ultimate resolution of [*1347] discriminatory employment claims. It is the duty of courts to assure the full availability of this forum." *Alexander, supra, at 60, n.21, 94 S. Ct. at 1025, n.21*.

This is not to say that American cannot urge in defense that the refusal to allow plaintiffs to become flight engineers was based on the Tripartite Agreement, or some other factor not due to their age. See, e.g., Answer, PP 26, 27. The court merely holds that no exhaustion is required prior to bringing suit, and that therefore the second sentence of paragraph 29 of American's answer is clearly invalid as a matter of law and thus insufficient.

For these reasons, the court holds that even taking as true the facts alleged in American's answer, there is no requirement that plaintiffs exhaust their applicable remedies within the Allied Pilots Association or under the Railway Labor Act as a condition precedent to bringing suit. Therefore, plaintiffs' motion to strike is granted.

[**14] It is so ORDERED.

LEXSEE 376 F. SUPP 242



Analysis
As of: May 20, 2008

**Jacqueline R. Piva, Plaintiff, v. Xerox Corporation, Defendant**

**No. 73 1337 WTS**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA**

*376 F. Supp. 242; 1974 U.S. Dist. LEXIS 8728; 8 Fair Empl. Prac. Cas. (BNA) 4; 7 Empl. Prac. Dec. (CCH) P9362*

**May 1, 1974**

**LexisNexis(R) Headnotes**

*Civil Procedure > Jurisdiction > Jurisdictional Sources > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview*
*Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Time Limitations > General Overview*
[HN1] Title VII of the Civil Rights Act of 1964 specifies two jurisdictional prerequisites that an individual must fulfill before he is entitled to file a lawsuit: first, he must file a charge of discrimination with the Equal Employment Opportunity Commission within a certain number of days (originally 90, now 180) following the occurrence of the unlawful employment practice; and second, he must file a complaint in federal court within a specified period (originally 30 days, now 90 days) following his receipt of a "right to sue" letter from the commission. If both these prerequisites are met, the federal court is vested with jurisdiction, no matter how much time has elapsed between the filing of the charge and the filing of the complaint.

*Civil Rights Law > Practice & Procedure > Limitation*
Periods
*Governments > Legislation > Statutes of Limitations > Extension & Revival*
*Governments > Legislation > Statutes of Limitations > Time Limitations*
[HN2] State statutes of limitation do not apply to proceedings under Title VII of the Civil Rights Act of 1964 (the Act) since Title VII of the Act contains a built-in limitation period, namely, § 706(e) of the Act, *42 U.S.C.S. 2000e-5(e)*, which provides, in part, that if the Equal Employment Opportunity Commission fails to effect a remedy, it shall so notify the party aggrieved, and a civil suit may, within 30 days thereafter, be brought against the respondent named in the charge. This 30-day period is jurisdictional and cannot be extended.

*Civil Rights Law > Practice & Procedure > Limitation Periods*
*Governments > Legislation > Statutes of Limitations > General Overview*
*Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > Equitable Relief*
[HN3] Title VII of the Civil Rights Act of 1964 (Title VII) contains its own limitation period, and that, therefore, Title VII suits are not subject to the bar of state statutes of limitation. This result appears to us to be consistent with the clear language of Title VII of the Civil

376 F. Supp. 242, *; 1974 U.S. Dist. LEXIS 8728, **;
8 Fair Empl. Prac. Cas. (BNA) 4; 7 Empl. Prac. Dec. (CCH) P9362

Rights Act of 1964 (specifically, § 706(e) of Title VII); with the great weight of authority; with the steady refusal of federal courts to construct technical procedural barriers to the hearing of Title VII claims on their merits; with the oft-quoted statement that administration of a claim by the Equal Employment Opportunity Commission can never result in detriment to the charging party; and with the congressional policy in favor of utilizing administrative processes to the fullest while at the same time insuring eventual access to federal courts.

***Labor & Employment Law > Collective Bargaining & Labor Relations > General Overview***
***Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview***
***Labor & Employment Law > Equal Pay > Federal & State Interrelationships***
[HN4] Title VII of the Civil Rights Act of 1964, the first comprehensive federal legislation in the field of employment discrimination, overlaps, to some extent, the Equal Pay Act, the National Labor Relations Act, and the Railway Labor Act.

***Civil Procedure > Remedies > General Overview***
***Civil Rights Law > Civil Rights Acts > Civil Rights Act of 1964***
***Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > General Overview***
[HN5] Rights under Title VII of the Civil Rights Act of 1964 are independent of rights created by other statutes or by contract, and where remedies overlap, a plaintiff may select the avenue of relief that seems to him most appropriate.

***Civil Procedure > Alternative Dispute Resolution > General Overview***
***Labor & Employment Law > Collective Bargaining & Labor Relations > Arbitration > General Overview***
***Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > Remedies > Alternative Dispute Resolution***
[HN6] Title VII of the Civil Rights Act of 1964 (Title VII), which vests federal courts with plenary power to enforce the statutory requirements, specifies with precision the jurisdictional prerequisites that an individual must meet before bringing a suit; those requirements are met when plaintiff filed a timely charge

with the Equal Employment Opportunity Commission and received and acted on the commission's statutory notice of right to sue; and nothing in the statutory scheme suggests that a prior arbitral decision either forecloses an individual's right to sue or divests federal courts of jurisdiction. Moreover, legislative enactments in the field of employment discrimination have long evinced a general intent to accord parallel or overlapping remedies against discrimination, and that the legislative history of Title VII, in particular, manifests a congressional intent to allow an individual to pursue independently his rights under Title VII and other applicable state and federal statutes.

***Civil Rights Law > Civil Rights Acts > Civil Rights Act of 1964***
***Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview***
[HN7] Title VII of the Civil Rights Act of 1964 was intended to supplement, rather than supplant, existing legislation in the field.

***Civil Rights Law > Civil Rights Acts > Civil Rights Act of 1964***
***Labor & Employment Law > Discrimination > Title VII of the Civil Rights Act of 1964 > General Overview***
***Labor & Employment Law > Equal Pay > Federal & State Interrelationships***
[HN8] The existence of a less comprehensive statute under which plaintiff's equal pay claim is potentially cognizable does not foreclose her from pursuing that claim under Title VII of the Civil Rights Act of 1964 (Title VII), especially where that claim is but one of several claims (all cognizable under Title VII) alleging wide-ranging practices of discrimination, and is but part of a comprehensive remedy sought by plaintiff to eliminate those practices.

**JUDGES:** [**1] Sweigert, D.J.

**OPINION BY:** SWEIGERT

**OPINION**

   [*244] SWEIGERT, District Judge.

   This suit, pursuant to Title VII of the Civil Rights Act of 1964, complains of discrimination in employment on the basis of sex. Plaintiff, Jacqueline Piva, a woman,

376 F. Supp. 242, *244; 1974 U.S. Dist. LEXIS 8728, **1;
8 Fair Empl. Prac. Cas. (BNA) 4; 7 Empl. Prac. Dec. (CCH) P9362

alleges that defendant, Xerox Corporation, her former employer, discriminated against her unlawfully by, inter alia, paying her less than it paid male employees for performing substantially the same work; requiring her to perform at a higher level than male employees in the same classification and with the same experience and training; and discharging her because of her sex.

Defendant moves to dismiss the complaint on the grounds that plaintiff's claims are barred by the statute of limitations and that the suit lacks equity.

Plaintiff was employed by Xerox Corporation from May 1, 1964 until her discharge on or about June 16, 1970. Within 90 days of the discharge, plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission (hereinafter "Commission"). On July 26, 1973, at plaintiff's request, the Commission advised her by letter that an administrative remedy to her complaint had not been accomplished and that [*2] she was entitled to institute a civil action in the appropriate federal court within 90 days. This suit was instituted on August 2, 1973, well within that period.

[HN1] Title VII of the Civil Rights Act of 1964 specifies two jurisdictional prerequisites that an individual must fulfill before he is entitled to file a lawsuit: first, he must file a charge of discrimination with the Commission within a certain number of days (originally 90, now 180) following the occurrence of the unlawful employment practice; and second, he must file a complaint in federal court within a specified period (originally 30 days, now 90 days) following his receipt of a "right to sue" letter from the Commission. If both these prerequisites are met, the federal court is vested with jurisdiction, no matter how much time has elapsed between the filing of the charge and the filing of the complaint. *Cunningham v. Litton Industries, 413 F.2d 887 (9th Cir. 1969).*

In the instant case, defendant concedes that plaintiff has met both time periods and that this court, therefore, has jurisdiction. However, defendant contends that the instant action is nevertheless barred by the statute of limitations, "for it is a commonplace [**2] that a court may have jurisdiction although the particular claim presented to the Court is subject to a plea of limitations." (D. Memo in Support of Mo. to Dismiss, p. 3). Defendant's argument is that Title VII does not contain an express statute of limitations and that the time periods mentioned above do not amount to one; that in the

absence of such a provision, the federal court must borrow from the law of the state in which it sits the analogous statute of limitations; that in the instant case, the analogous statute is § 338(1) of the Calif. Code of Civil Procedure, providing a limitation period of three years; that this period having been exceeded in the pending case, the action is barred.

In support of this position, defendant cites *Walton v. Kellogg Co., 2 E.P.D. P10,250 (W.D. Tenn. 1970),* in which the court, proceeding on the assumption that Title VII does not contain an over-all limitation period; held that Title VII actions were subject to the bar of the analogous state statute of limitations. Other courts, however, have reached the opposite conclusion. In *Jackson v. Cutter* [*245] *Laboratories, 338 F. Supp. 882 (E.D. Tenn. 1970),* the court held that [HN2] state statutes [**4] of limitation do *not* apply to Title VII proceedings since Title VII contains a built-in limitation period, namely, Section 706(e) of the Act, *42 U.S.C. 2000e-5(e),* which provides, in pertinent part, that if the Commission fails to effect a remedy, it shall so notify the party aggrieved, and "a civil suit may, within 30 days thereafter, be brought against the respondent named in the charge." The court notes that this 30-day period [1] is jurisdictional and cannot be extended. Moreover, this limitation period serves a dual function: "first, it insures that an aggrieved individual will not file a suit until the Commission has had an opportunity to attempt conciliation. Second, it insures that an aggrieved individual will not be precluded from suit by inaction on the part of the Commission." *Jackson, supra, at p. 885*

1 Now 90 days.

The result reached in *Jackson, supra,* appears to this court to be consistent with, and indeed, logically compelled by, a number of cases which have held that there are [**5] *but two* jurisdictional requirements to the bringing of a Title VII suit (and have thus implicitly rejected the contention urged by defendant herein, that Title VII has a limitation period and is, therefore, regulated by state statutes). *Cunningham v. Litton Industries, supra* (9th Cir. 1969); *Miller v. International Paper, 408 F.2d 283 (5th Cir. 1969); Choate v. Caterpillar Tractor, 402 F.2d 357 (7th Cir. 1968); Sanders v. Dobbs Houses, 431 F.2d 1097 (5th Cir. 1970).* These courts, in disposing of arguments which sought to interpose procedural roadblocks to the bringing of Title VII suits, have pointed out that an aggrieved employee

Case 1:08-cv-02036    Document 11-11    Filed 05/20/2008    Page 4 of 6

Page 4
376 F. Supp. 242, *245; 1974 U.S. Dist. LEXIS 8728, **5;
8 Fair Empl. Prac. Cas. (BNA) 4; 7 Empl. Prac. Dec. (CCH) P9362

has little or no control over the speed with which the Commission will act on his charge; [2] that the administration of a charge is likely to take several years rather than the several months originally anticipated by Congress; and that the administration of a charge by the Commission can *never result in detriment to the charging party. ( Miller, supra)*. In light of these facts, and of the desire of the courts and of Congress to give the fullest possible effect to administrative procedures for resolving Title VII disputes ( *Sanchez v. Standard Brands,* [**6] *431 F.2d 455 (5th Cir. 1970))*, it would indeed be anomalous to require a plaintiff to cut short the administrative process in order to protect himself from the running of a state statute of limitations.

    2   Commission regulations permit the charging party to demand a right-to-sue letter if, after 180 days, the Commission has been unable to resolve the dispute administratively. Defendant contends that plaintiff, in order to avoid the bar of the California statute of limitations, was required to demand such a letter within three years of the discharge. However, nothing in the regulations (or, for that matter, in the statutory scheme of Title VII) supports this contention; the regulations merely provide that an employee eager to pursue his claim need not wait interminably for final word from the Commission; not that an employee who wishes to utilize the administrative process to the fullest must cut short that process in order to protect his right to sue.

This court, therefore, finding itself in agreement with [**7] *Jackson, supra,* and the cited immediately above authorities, holds that [HN3] Title VII contains its own limitation period, and that, therefore, Title VII suits are not subject to the bar of state statutes of limitation. This result appears to us to be consistent with the clear language of Title VII of the Civil Rights Act of 1964 (specifically, Section 706[e]); with the great weight of authority; with the steady refusal of federal courts to construct technical procedural barriers to the hearing of Title VII claims on their merits ( *Sanchez v. Standard Brands, supra*); with oft-quoted statement that administration of a claim by the Commission can never result in detriment to the charging party; and with the congressional policy in favor of utilizing administrative processes to the fullest while at the same time insuring eventual access to federal courts.

    [*246] Defendant next contends that insofar as this suit seeks equal pay for equal work, it lacks equity and must be dismissed. Defendant argues that it is a prerequisite to a suit in equity (such as a Title VII proceeding) that there be no adequate remedy at law, ( *Dairy Queen v. Wood, 369 U.S. 469, 8 L. Ed. 2d 44, 82 S.* [**8] *Ct. 894*); that with respect to plaintiff's equal pay claim, federal and state equal pay laws have at all relevant times provided plaintiff with a complete legal remedy; that therefore, plaintiff was required to bring an action for equal pay under those statutes, which would have afforded defendant the right to jury trial, rather than under Title VII; and that the limitation period on the equal pay laws now having run, plaintiff is foreclosed from pursuing the equal pay claim in this proceeding. This argument is unconvincing.

[HN4] Title VII of the Civil Rights Act of 1964, the first comprehensive federal legislation in the field of employment discrimination, overlaps, to some extent, the Equal Pay Act, the National Labor Relations Act, and the Railway Labor Act. In the early years of Title VII's existence, it was argued by those who sought to circumscribe the effect of the new law, that resort to federal courts under Title VII should be precluded by appropriate deference to other institutions already dealing with employment discrimination and to judicial decisions in actions brought under other anti-discrimination statutes. For example, it was argued that an employee must resort to [**9] the institutions provided by the R.L.A. before a suit could properly be maintained under *Title VII Bremer v. St. Louis S.W.R.R., 310 F. Supp. 1333 (E.D. Mo. 1969)*; and it was also contended that an employee who had originally elected to pursue his grievance under another statute, or under a collective bargaining agreement, was precluded from later proceeding under Title VII. ( *Norman v. Missouri Pacific R.R., 414 F.2d 73 (8th Cir. 1969)* and *Taylor v. Armco Steel Corp., 429 F.2d 498 (5th Cir. 1970)* (on proceeding under another statute); [3] *Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969)*, and *Alexander v. Gardner-Denver Co., 415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011, 42 U.S. Law Week 4214* (Feb 19, 1974) (on proceeding under a collective bargaining agreement)). These arguments, however, have been consistently rejected; and the clear principle has emerged that [HN5] Title VII rights are *independent* of rights created by other statutes or by contract, and that where remedies overlap, a plaintiff may select the avenue of relief that seems to him most appropriate. ( *Bremer, supra*, and other cases

cited immediately above). (See, generally, Title VII and the Multiple Approaches [**10] to Eliminating Employment Discrimination, Hebert, Stanley P. and Reischel, Charles L., N.Y.U. Law Review, Volume 46 No. 3 (May, 1971). Thus, in the instant case, where plaintiff's claim is cognizable under both the equal pay laws and Title VII, she may pursue her claim under the latter statute as part of a comprehensive action, if she so chooses, provided only that she fulfill the two jurisdictional prerequisites to the bringing of a Title VII suit, i.e., timely filing of a charge with the Commission and filing of suit within 90 days of notice from the Commission of the right to proceed. Plaintiff herein having met both these requirements, this action is in no way barred and must proceed to a hearing on the merits.

> 3    In *Norman, supra*, the court allowed train porters to attack their job classification under Title VII on the ground that it was racially discriminatory even though other proceedings under the R.L.A. involving substantially identical issues had determined the issue adversely to the porters. And in *Taylor, supra*, the Fifth Circuit similarly sustained an action under Title VII against a seniority system which had previously been held to be nondiscriminatory in a suit brought under the N.L.R.A.

[**11] A recent decision by the United States Supreme Court supports the conclusion here reached. In *Alexander v. Gardner-Denver Co., 415 U.S. 36, 39 L. Ed. 2d 147, 94 S. Ct. 1011, 42 U.S. Law Week 4214* (Feb 19, 1974), a case [*247] involving the relationship between federal courts and the grievance-arbitration machinery of collective bargaining agreements, the Court held that an employee's submission of a claim to final arbitration under such an agreement could not foreclose his right to a trial de novo under Title VII. In reaching this holding, the Court pointed out that [HN6] Title VII, which vests federal courts with "plenary power to enforce the statutory requirements" specifies with precision the jurisdictional prerequisites that an individual must meet before bringing a suit; that in the instant case, those requirements were met when plaintiff filed a timely charge with the Commission and received and acted on the Commission's statutory notice of right to sue; and that nothing in the statutory scheme suggests that a prior arbitral decision either forecloses an individual's right to sue or divests federal courts of jurisdiction. Moreover, the court noted that legislative enactments [**12] in the

field of employment discrimination have long evinced a general intent to accord parallel or overlapping remedies against discrimination, and that the legislative history of Title VII, in particular, "manifests a congressional intent to allow an individual *to pursue independently* his rights under Title VII and other applicable state and federal statutes." ( *Alexander, 94 S. Ct. at 1019*). emphasis added.

During Congressional debates on Title VII, an amendment was proposed to make Title VII the exclusive remedy for most unlawful employment practices. Congress rejected this amendment, preferring, in light of the range and complexity of discriminatory employment practices, to keep open *all* possible avenues of relief. (110 Cong. Rec. 13650-13652) (See also interpretive memo of Senator Joseph Clark, 110 Cong. Rec. 7207 (1964)). Thus, it has often been stated that [HN7] Title VII was intended to supplement, rather than supplant, existing legislation in the field. Here, however, defendant suggests that Title VII, rather than either supplementing or supplanting the equal pay laws, is to be *supplanted by them*. This suggestion flies in the face of the Congressional policy [**13] to keep available *all* channels of relief and is, hereby, rejected.

Moreover, Congress's purpose in enacting Title VII was to provide a comprehensive federal cause of action against employment discrimination, (earlier piecemeal legislation in the field having proved inadequate to combat the evil.) This purpose would clearly be defeated were plaintiffs to be required to sever from comprehensive Title VII complaints any claims potentially cognizable under other, narrower statutes.

We hold, therefore, that [HN8] the existence of a less comprehensive statute under which plaintiff's equal pay claim was potentially cognizable does not foreclose her from pursuing that claim under Title VII, especially where, as here, that claim is but one of several claims (all cognizable under Title VII) alleging wide-ranging practices of discrimination, and is but part of a comprehensive remedy sought by plaintiff to eliminate those practices.

Defendant's final argument is that an equal pay claim is strictly a legal claim for damages, and that plaintiff cannot cloak it with an equity label and treat it on the equity side, thereby depriving defendant of a right to jury trial. ( *Dairy Queen, supra* [**14] .) Defendant calls our attention to a recent U.S. Supreme Court decision, *Curtis*

376 F. Supp. 242, *247; 1974 U.S. Dist. LEXIS 8728, **14;
8 Fair Empl. Prac. Cas. (BNA) 4; 7 Empl. Prac. Dec. (CCH) P9362

*v. Loether, 415 U.S. 189, 94 S. Ct. 1005, 39 L. Ed. 2d 260, 42 U.S.L.W. 4260*, in which it was held that the *Seventh Amendment* guarantees a right to jury trial in an action under Section 812 of the Civil Rights Act of 1968 for racial discrimination in renting, the court noting that such a suit was a damages action to enforce "legal rights" within the meaning of the Court's *Seventh Amendment* decisions, and that the relief sought -- actual and punitive damages -- was the traditional form of relief offered in courts of law. The *Curtis* opinion, however, does not dictate a result different from the one we have [*248] reached here. That Court did not go so far as to say that

any award of monetary relief must necessarily be "legal" relief; and it specifically declined to express a view on the jury trial issue in the context of Title VII proceedings. However, the Court did point out that Courts of Appeal have characterized monetary relief under Title VII as an integral part of an equitable remedy (a form of restitution), and that the statutory language on which this characterization is based contrasts [**15] sharply with the language of Section 812 of the 1968 Act.

For the foregoing reasons, defendant's motion to dismiss the complaint is hereby denied.

LEXSEE 310 F. SUPP 1333



Caution
As of: May 20, 2008

### Mary A. BREMER, Plaintiff v. ST. LOUIS SOUTHWESTERN RAILROAD COMPANY, Defendant

### No. 69 C 1(1)

### UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI, EASTERN DIVISION

### 310 F. Supp. 1333; 1969 U.S. Dist. LEXIS 13663; 13 Fed. R. Serv. 2d (Callaghan) 404; 2 Fair Empl. Prac. Cas. (BNA) 509; 62 Lab. Cas. (CCH) P9402; 2 Empl. Prac. Dec. (CCH) P10,173

### December 23, 1969

**COUNSEL:** [**1] Husch, Eppenberger, Donohue, Elson & Cornfeld, Stephen W. Skrainka and Thomas M. Carney, St. Louis, Mo., for plaintiff. Alan C. Kohn, Coburn, Croft, Kohn & Herzog, St. Louis, Mo., for defendant.

**OPINION BY:** HARPER

**OPINION**

[*1334] MEMORANDUM OPINION AND ORDER

Plaintiff brings this suit for injunctive relief and damages pursuant to *28 U.S.C.A. § 1343*, alleging that her statutory right to be free from discrimination in employment because of her sex under Title VII of the Civil Rights Act of 1964 (the Act), *42 U.S.C.A. § 2000e-5(e)* and *(f)* has been violated. This matter is presently before the court on motion by the defendant, St. Louis Southwestern Railroad Company (Railroad), to dismiss or in the alternative for summary judgment. Defendant asserts several grounds in support of its motion which basically presents two contentions: One, that this court lacks jurisdiction because plaintiff [*1335] failed to exhaust administrative remedies under her collective bargaining agreement and the Railway Labor

Act, *45 U.S.C.A. § 153*; and two, that this court lacks jurisdiction because plaintiff failed to comply with *42 U.S.C.A. § 2000e-5(a)* and *(b)* requiring timely filing of a charge [**2] of unlawful employment practice in writing, under oath, with the Federal Equal Employment Opportunity Commission (EEOC) as a prerequisite to the institution of a civil suit.

Plaintiff's amended complaint alleges the following facts: Plaintiff obtained initial seniority under defendant's agreement with the Order of Railroad Telegraphers on October 1, 1943, and from that date to the present has worked as a telegrapher, clerk-telegrapher, agent and agent-telegrapher for defendant. Plaintiff is presently an agent-telegrapher at Caruthersville, Missouri. In March, 1966, defendant sought bids for the position of Clerk-Telegrapher 'ST' at the St. Louis General Office in St. Louis, Missouri. Plaintiff bid on that position and was senior bidder in amount of seniority. On April 8, 1966, the position was awarded to a male applicant with seniority dating from August 7, 1955.

On April 23, 1966, plaintiff lodged a charge in the form of a letter with the EEOC in Washington, D.C., alleging that she was denied the position because of discrimination on account of her female sex. On May 4, 1966, plaintiff's charge was referred to an filed with the

Missouri Commission on Human Rights at Jefferson [**3] City, Missouri. On September 2, 1966, plaintiff requested the EEOC to proceed to determine her case. Plaintiff filed an amended charge on November 16, 1966. On September 1, 1967, the Missouri Commission advised plaintiff that the state investigation had terminated with a finding of no probable cause and that a request for reconsideration could be made within thirty days. On April 1, 1968, the EEOC determined that reasonable cause did exist, and on December 3, 1968, advised plaintiff that efforts at conciliation of her charge had failed. Thereafter, on January 2, 1969, plaintiff filed her complaint in the present action.

Defendant's primary contention is that plaintiff's suit is barred because she failed to exhaust contractual and administrative remedies available under the Railway Labor Act.

Section 3, First (i) of the Railway Labor Act, *45 U.S.C.A. § 153*, First (i) provides:

'The disputes between an employee * * * and a carrier * * * growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier [**4] designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred * * * by either party to the appropriate division of the Adjustment Board * * *.'

Plaintiff and defendant are parties and subject to the labor agreement between defendant and its employees represented by the Order of Railroad Telegraphers, of which Article 13-1 provides in part:

'13-1. Except as per Article 13-2 permanent vacancies and permanent additional positions shall be bulletined to all employees on the division; bulletin to show location, position, hours of service and rate of pay and the senior employee covered by this agreement making written application within ten (10) days from date of bulletin, if competent, shall be assigned.'

Defendant contends that Article 13-1 means that a refusal to assign because of plaintiff's female sex would be a violation of the Agreement. In that event, Article 27, as amended in 1954, of the Agreement provides that an employee who has a grievance is entitled to a hearing and

succeeding appeals up to and including appeal to and hearing by the National Railroad Adjustment Board under the provisions of the Railway Labor Act, [**5] *45 U.S.C.A. § 151 et seq.*

[*1336] The Federal law pertaining to exhaustion of remedies is clear in cases where an employee asserts a contract grievance or minor labor dispute subject to the ultimate jurisdiction of the Railroad Adjustment Board. Thus, in *Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965)*, where an employee brought a suit for breach of contract for severance pay, the Supreme Court stated that federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the agreed-upon contract grievance procedure. Similarly, two recent Eighth Circuit cases held that exhaustion of available administrative procedures was necessary before equitable relief could be sought in the federal courts.

In *Howard v. St. Louis-San Francisco Railway Company, 361 F.2d 905 (8th Cir. 1966)*, Negro train porters were denied relief in seeking to be reclassified as brakemen. The court held that only the Mediation Board had power to make class or craft determination, and absent a change in classification the issues presented a minor labor dispute with ultimate jurisdiction in the Railroad Adjustment Board.

And [**6] in *Neal v. System Board of Adjustment (Missouri Pacific Railroad), 348 F.2d 722 (8th Cir. 1965)*, employees alleging racial discrimination in the abolition of existing positions and the establishment of new positions were denied equitable relief against the union and its officers because of failure to exhaust available administrative remedies.

There is no doubt that the contractual and statutory provisions constitute a system which may be utilized by plaintiff in asserting her rights under the collective bargaining agreement. And were plaintiff asserting a contractual right under the collective agreement, or a minor labor dispute, she would be foreclosed from judicial relief under the above-cited cases.

However, plaintiff contends that while she may have certain rights under the collective bargaining agreement, she is asserting statutory rights under Title VII, and therefore, the principle of exhaustion is not applicable.

It is the opinion of the court that the case of *Norman*

*v. Missouri Pacific Railroad, 414 F.2d 73 (8th Cir. 1969)* is controlling. That case involved claims of racial discrimination under Title VII of the Act by train porters against the railroad and railway brakemen. [**7] The court recognizes that the facts are different from the present case, but the broad basis of the holding on the issue of whether the plaintiffs were required to exhaust remedies under the Railway Labor Act before seeking judicial relief makes the Norman case controlling. The court in Norman, states, pages 82-83:

'Title VII of the Civil Rights Act of 1964 by its express terms makes racial and other discrimination in employment and employment opportunities unlawful. This statute creates additional grounds for complaints based upon racially discriminatory practices of an employer. If the Supreme Court would give effect to a state anti-discrimination statute as in *Colorado Anti-Discrimination Commission v. Continental Airlines, Inc.,* supra, (372 U.S. 714, 83 S.Ct. 1022, 10 L.Ed.2d 84), it would likely give effect to a federal statute barring racial discrimination in employment as is set forth in Title VII 703 of the Civil Rights Act of 1964. The Railway Labor Act is not basically a fair employment practice act nor has it been utilized as such. Its basic purpose is to foster and promote collective bargaining between employees and employers with a provision for continuity of service [**8] to the public while setting up a detailed and elaborate procedure for the resolution of major and minor disputes that occur in the operation of the railroads. On the other hand Title VII of the Civil Rights Act specifically prohibits racial and other discrimination in employment and employment opportunities.

'We, therefore, do not think the plaintiffs are confined to their administrative [*1337] remedies, which appear without further examination to be inadequate, under the Railway Labor Act. The enactment of Title VII provides a more extensive and broader ground for relief, specifically oriented towards the elimination of discriminatory employment practices based upon race, color, religion, sex or national origin. Title VII is cast in broad, all-inclusive terms setting up statutory rights against discrimination based inter alia upon race. The rights granted by this Title are enforceable by individuals in the District Courts, provided, of course, proper administrative channels are utilized as set forth in the act. *Jenkins v. United Gas Corporation, 400 F.2d 28* (5 Cir. 1968); *Oatis v. Crown*

*Zellerbach Corp., 398 F.2d 496* (5 Cir. 1968). Failure to process a complaint through [**9] the administrative procedures required by the Act is ground for dismissal. *Stebbins v. Nationwide Mutual Insurance Company, 382 F.2d 267* (4 Cir. 1967), cert. denied *390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968).*

'The plaintiffs here are not attempting to require that the parties bargain in good faith to implement the statutory policy embodied in the Railway Labor Act but are seeking immediate determination of practices made unlawful by Title VII. As contended by the amicus, we do not think that Congress intended to render the railroads immune from the efforts of their employees to pursue their statutory rights under Title VII. The railroads should not be allowed to escape the provisions of 703 calling for the elimination of discriminatory employment practices by relying upon the provisions of the Railway Labor Act, any more than certified bargaining representatives may evade injunctive relief correcting invidious racial practices in disregard of their statutory responsibilities by relying on the Norris-LaGuardia Act. *Virginian Railway Company v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789 (1937).*

'(Brotherhood of) Railroad Trainmen v. Howard, supra, (343 U.S. [**10] 768, 72 S.Ct. 1022, 96 L.Ed. 1283), and *Howard v. St. Louis-San Francisco Railway Co., 361 F.2d 905* (8 Cir. 1966) are concerned with questions of jurisdictional disputes between the train porters and brakemen, while the plaintiffs here seek not a determination of bargaining representative but the termination by the Railroad of racially discriminatory practices respecting assignment, classification, terms and conditions of employment. These are statutory rights, not contractual rights embodied in collective bargaining agreements.

'Surely Congress in the enactment of Title VII had in mind the granting of a new and enlarged basis for elimination of racial and other discriminations in employment. Title VII clearly is not a codification of existing law but is an enactment of a broad principle prohibiting discrimination against any individual 'with respect to his compensation, terms, conditions or privileges of employment, because of * * * race, color, religion, sex, or national origin."

It is clear that Title VII of the Act creates additional grounds for complaints based upon the discrimination in

310 F. Supp. 1333, *1337; 1969 U.S. Dist. LEXIS 13663, **10;
13 Fed. R. Serv. 2d (Callaghan) 404; 2 Fair Empl. Prac. Cas. (BNA) 509

an employer's employment practices. And the language of the Norman case clearly encompasses [**11] discriminatory practices based upon sex. Causes of action arising under Title VII are not foreclosed by a failure to pursue administrative remedies.

Nor is this court of the opinion that a finding that the administrative remedies are inadequate is essential under Norman. While the administrative remedies in the Norman case were found to be inadequate, it is in no way clear that such a finding is necessary to the holding of the case. Rather, the contrary is indicated. The court stated at page 82: 'Arguably some types of racial complaints might be cognizable by the National [*1338] Railroad Adjustment or Mediation Board or the courts.' Further, in the detailed and specific procedures necessary for the institution of a civil action set out in Title VII of the Act, neither the processing of a grievance through contractual machinery nor a finding of inadequacy thereof is noted as a condition precedent to a civil suit.

Plaintiff is not barred from bringing this action under Title VII of the Civil Rights Act of 1964 by her failure to pursue contractual and administrative remedies.

In its motion to dismiss, defendant asserts that plaintiff has failed to process her complaint according [**12] to the procedures required by *§ 2000e-5(a) and (b)* of the Act in three particulars: One, failure to file a timely charge with the EEOC; two, failure to verify the charge filed with the EEOC; and three, failure to request reconsideration of the Missouri Commission decision. The rules and regulations of the EEOC (29 C.F.R. 1601 et seq.) issued under the authority of *42 U.S.C.A. § 2000e-12* negate defendant's contentions.

Under *42 U.S.C.A. 2000e-5(b)* no charge of an unlawful employment practice under Title 42 may be filed before the expiration of sixty days after proceedings have been commenced under state or local law, unless such proceedings have been earlier terminated. The unlawful employment practice plaintiff complains of in the present case occurred on April 8, 1966; plaintiff first notified the EEOC by letter on April 23, 1966; state proceedings were commenced on May 4, 1966, and terminated on September 1, 1967; plaintiff requested the EEOC to assume jurisdiction on September 2, 1966, and on November 16, 1966, plaintiff filed an amended complaint with the EEOC.

Plaintiff's letter of April 23rd to the EEOC contained all of the elements of a charge required by § 706(a) of [**13] the Act and *29 C.F.R. 1601.11.* However, under § 706(b), *42 U.S.C.A. § 2000e-5(b),* the EEOC could not accept jurisdiction over the complaint until sixty days after the commencement of the state proceedings. *IBEW Local No. 5 v. EEOC, 398 F.2d 248* (3 Cir. 1968).

Section 1601.12 of the regulations governs referrals to state and local authorities. Prior to its amendment in November, 1968, that section provided that the EEOC would not accept a charge for filing when it appeared that state or local proceedings had not been commenced, but would assist the aggrieved person in complying with § 706(b). 30 Fed.Reg. 8407 (1967). Accordingly, the EEOC referred the charge to the Missouri Commission on May 4th. At the conclusion of the sixty-day period, the EEOC notified the plaintiff that her right to invoke the federal authority had matured and asked if she desired that the Commission initiate proceedings under Title VII. All of this was done in accordance with the established procedure and regulations of the EEOC. On September 2nd, the plaintiff did request the EEOC to assert its jurisdiction. It is, therefore, September 2, 1966, on which the plaintiff's charge was filed. The present [**14] language of § 1601.12(b) recognizes the then existing procedures and explicitly states that the deferred charge is deemed filed with the EEOC upon the notification of the termination of the state proceedings or sixty days, whichever occurs first. Plaintiff was required to request the EEOC to assert jurisdiction; and such was done on September 2, 1966; whereas the present amended regulation provides that the charge is automatically deemed filed unless notified to the contrary.

On November 16, 1966, when the EEOC was ready to begin its investigation, the plaintiff was contacted for the purpose of putting her charge on the Commission's standard form and verified. This amended charge related back to the date of the filing on September 2, 1966. The fact that the original letter of April 23rd was not verified is not significant in view of the procedures and regulations of the EEOC. Most charges [*1339] are received by the EEOC in the form of unverified letters. The subsequent verification of charges is and has been the standard practice of the EEOC. See, GC Opinion, November 10, 1965, CCH Employment Practice Guide P1255.65; and *29 C.F.R. § 1601.11(b).* The complaint is not [**15] required to be dismissed because the charge was verified by amendment subsequent to the filing. *Weeks v. Southwestern Bell Telephone Co., 408 F.2d 228*

(5 Cir. 1969); *Choate v. Caterpillar Tractor Co., 402 F.2d 357* (7 Cir. 1968). The court finds that the plaintiff has satisfied the requirements of filing a timely, verified charge.

Plaintiff's failure to request reconsideration of the Missouri Commission's decision does not deprive this court of jurisdiction. There is no provision in the Act which makes termination of state proceedings, much less reconsideration, a prerequisite to action by the EEOC or judicial relief, and defendant has cited no authority in support of its contention. Section 706(b) *42 U.S.C.A. § 2000e-5(b)* requires the EEOC to defer to the state agency for a maximum period of sixty days. After the expiration of sixty days, the EEOC may assert its own jurisdiction. Section 706(b) *42 U.S.C.A. § 2000e-5(e)* gives plaintiff the right to seek judicial relief thirty days after the EEOC notifies her that conciliation efforts have failed. On the face of the Act, the only time the termination of state proceedings is a jurisdictional prerequisite to judicial relief [**16] is when such proceedings terminate within the sixty-day period provided by *42 U.S.C.A. 2000e-5(b)*. Here the Missouri Commission proceedings did not terminate until September 1, 1967, a year after the maximum deferral period. Even if the termination of state proceedings were required, a motion for reconsideration is not required in exhausting administrative remedies. *Levers v. Anderson, 326 U.S. 219, 66 S.Ct. 72, 90 L.Ed. 26 (1945).*

It is the opinion of the court that plaintiff has stated a cause of action under Title VII of the Civil Rights Act of 1964 and that the action is not barred.

Although it has not been brought to the attention of the court by either party, there is a further point which merits discussion. The question to be considered is whether the Order of Railroad Telegraphers and the individual now holding the position of Clerk-Telegrapher 'ST' at the St. Louis General Office for which plaintiff bid are parties who should be joined if feasible within the meaning of *Rule 19 of the Federal Rules of Civil Procedure*.

Under *Rule 19*, the court must order joinder of certain designated persons if joinder is feasible. Specifically, the rule requires the joinder of a person [**17] if in his absence complete relief cannot be accorded among those already parties, or he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence

may as a practical matter impair or impede his ability to protect that interest or leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. *Rule 19* further provides that if the joinder of persons so described is not feasible, the court shall determine whether the action should proceed among the parties before it, or should be dismissed, the absent persons being regarded as indispensable.

The relief sought by plaintiff in this action is the elimination of discrimination against her on the basis of her sex, including damages and giving her the position which she bid for and which is now held by another individual.

Prior to the enactment of the Civil Rights Act of 1964, disputes of this nature were unquestionably solely within the province of the Railroad Adjustment Board. Title VII of the Act has created an additional remedy, without eliminating the prior one, and plaintiff has stated a [**18] cause of action under the Act. The problem that arises in this set of circumstances is one of possible inconsistencies [*1340] and fragmentation. There is only one job in dispute. The individual now holding that job and the union representing him are not now parties to this suit. Any judgment in this suit is not binding upon those not parties to this suit. If plaintiff were to prevail, the individual in the disputed position may well decide to initiate and pursue proceedings for reinstatement under the collective bargaining agreement and the Railway Labor Act, with the possibility of an inconsistent result. At best there would be fragmentation and duplication of proceedings. At worst there would be confusion, a multiplicity of proceedings involving the same facts, and two persons entitled to one position.

The court is aware that no complaint has been filed against the absent parties with the EEOC. See, *Mickel v. South Carolina State Employment Service, 377 F.2d 239* (4 Cir. 1967). However, in the interest of uniformity and in consideration of the time, effort and expense involved in duplication, with the possibility of inconsistent results, it is the opinion of the court [**19] that the entire matter should be disposed of in one proceeding; either in this action or in administrative proceedings under the collective bargaining agreement and the Railway Labor Act. Accordingly, plaintiff, having initiated this action under Title VII of the Civil Rights Act of 1964, will be given thirty days to join the Order of Railroad

310 F. Supp. 1333, *1340; 1969 U.S. Dist. LEXIS 13663, **19;
13 Fed. R. Serv. 2d (Callaghan) 404; 2 Fair Empl. Prac. Cas. (BNA) 509

Telegraphers and the individual now holding the disputed position.

Therefore, it is ordered that the plaintiff shall within thirty days join the Order of Railroad Telegraphers and the individual holding the disputed position. Upon the plaintiff complying with this order the defendant's motion to dismiss or in the alternative for summary judgment will be overruled in all particulars. If within the said thirty days the plaintiff does not comply with this order, at that time the court will dismiss this cause under proper order.